IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,      )
                               )
          Plaintiff,           )
                               )      CR No. 23-305
                               )      Washington, D.C.
          vs.                  )      May 24, 2024
                               )      3:07 p.m.
JOSEPH FISHER,                 )
                               )
          Defendant.           )
_____)


TRANSCRIPT OF SENTENCING PROCEEDINGS
BEFORE THE HONORABLE RANDOLPH D. MOSS
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Government:          Shalin Nohria
                             United States
                             Attorney's Office
                             601 D Street NW
                             Suite Office 6.713
                             Washington, D.C. 20001
                             (202) 344-5763
                             Email: shalin.nohria@usdoj.gov


For the Defendant:           Joshua Robert Hanye
                             FEDERAL DEFENDER OFFICE
                             51 Sleeper Street
                             Boston, MA 02130
                             (617) 223-8061
                             Email: joshua_hanye@fd.org

APPEARANCES CONTINUED:

Probation Officer:          Andre Wilson

Court Reporter:             William P. Zaremba
                            Registered Merit Reporter
                            Certified Realtime Reporter
                            Official Court Reporter
                            U.S. District Court
                            for the District of Columbia
                            333 Constitution Avenue, NW
                            Washington, D.C. 20001
                            (202) 354-3249


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

P R O C E E D I N G S

1          COURTROOM DEPUTY:  Please be seated, everyone.

2          This is Criminal Case Number 23-305, United States

3  of America versus Joseph Fisher.

4          Would counsel please approach the podium, state

5  your name for the record, starting with government counsel.

6          MR. NOHRIA:  Good afternoon, Your Honor.

7  Shalin Nohria on behalf of the United States.

8          THE COURT:  Good afternoon.

9          MR. HANYE:  Good afternoon, Your Honor.

10  Josh Hanye from the Federal Defender office in Massachusetts

11  on behalf of Mr. Fisher.

12          THE COURT:  All right.  Good afternoon to you as

13  well.

14          So we're here this afternoon for the sentencing of

15  Mr. Fisher; he's pleaded guilty to eight counts:

16          Count 1, civil disorder, in violation of 18 U.S.C.

17  Section 231(a)(3);

18          Count 2, assaulting, resisting, or impeding

19  certain officers, in violation of 18 U.S.C.

20  Section 111(a)(1);

21          Count 3, entering and remaining in a restricted

22  building or grounds, in violation of 18 U.S.C.

23  Section 1752(a)(1);

24          Count 4, disorderly and disruptive conduct in a

1    restricted building or grounds, in violation of 18 U.S.C.

2    Section 1752(a)(2);

3              Count 5, engaging in physical violence in a

4    restricted building or grounds, in violation of 18 U.S.C.

5    Section 1752(a)(1);

6              Count 6, disorderly conduct in a Capitol Building,

7    in violation of 40 U.S.C. Section 5104(e)(2)(D);

8              Count 7, acts of physical violence in the Capitol

9    Grounds or Building, in violation of 40 U.S.C.

10   Section 5104(e)(2)(F);

11             And Count 8, parading, demonstrating, or picketing

12   in a Capitol Building, in violation of 40 U.S.C.

13   Section 5104(e)(2)(G).

14             I have received and reviewed the Presentence

15   Report and the sentencing recommendation from the Probation

16   Office; the Joint Statement of Offense, which was submitted

17   as part of the plea hearing; a sentencing memorandum from

18   the government, which includes the video exhibits, which

19   I have reviewed as well; and the sentencing memorandum from

20   Mr. Fisher, which includes many letters and commendations.

21             So let me start by asking Mr. Nohria, is it --

22             MR. NOHRIA:  "Nohria."

23             THE COURT:  "Nohria."

24             -- Mr. Nohria -- whether there are any additional

25   materials that you would request that I consider today?

1        MR. NOHRIA:  No, Your Honor.

2        THE COURT:  And, Mr. Hanye?

3        MR. HANYE:  Nothing else, Your Honor.

4        THE COURT:  All right.

5        So, Mr. Fisher, today's sentencing is going to

6   proceed through a number of steps.  I'm sure you're anxious

7   just to get to the bottom line, but we have to go through

8   all these steps so that I make sure that I know whether

9   there are disagreements about any of the relevant law or

10  facts, and if there is disagreement, I need to be able to

11  resolve that before I impose sentence.

12       So the first step will be for me to determine

13  whether you've reviewed the Presentence Report, for me to

14  resolve any outstanding issues with respect to the

15  Presentence Report.

16       I know that there is some -- there are some

17  disputes about the calculation of the appropriate

18  Guidelines Range, I'll wait and do that at the next step,

19  where I have to determine the proper Guidelines Range and

20  how they apply in your case, based on your criminal history,

21  and considering any mitigating or aggravating factors that

22  could warrant a departure.

23       The third step is for me to hear from the

24  government, to hear from your lawyer, to hear from you,

25  anyone else you'd like to address the Court.

1            And then the final step is for me to fashion a

2    just and fair sentence in light of the factors that Congress

3    has set forth in a statute, which is at 18 U.S.C.

4    Section 3553(a).  And then as part of that last step, I'll

5    actually impose the sentence.

6            So let's start with the Presentence Report.

7            The Presentence Report was filed with the Court on

8    May 16th, 2024.  Putting side for a moment the questions

9    relating to the proper calculation of the Guidelines Range,

10   let me ask the government, Mr. Nohria, are there any

11   objections the government has to any of the factual matters

12   set forth in the Presentence Report?

13           MR. NOHRIA:  No, Your Honor.

14           THE COURT:  Okay.

15           And, Mr. Hanye -- is it "Hanye"?

16           MR. HANYE:  It's "Hanye," Your Honor.

17           THE COURT:  All right, Mr. Hanye.  I'm being

18   equally incompetent with respect to the names of both

19   counsel.

20           Mr. Hanye, any objections that you have to any of

21   the factual matters set forth?

22           MR. HANYE:  No, Your Honor.

23           THE COURT:  All right.

24           And have you, Mr. Hanye, reviewed the Presentence

25   Report with Mr. Fisher?

1          MR. HANYE:  I have.

2          THE COURT:  Okay.

3          And, Mr. Fisher, have you had a chance to go

4    through the Presentence Report and review that?

5          THE DEFENDANT:  Yes, I have, Your Honor.

6          THE COURT:  And to discuss it with your lawyer?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  And do you feel as though you are

9    satisfied with the assistance of your lawyer in this case?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  And have you had enough time to talk

12    with him about the Presentence Report?

13          THE DEFENDANT:  Yes, I have, Your Honor.

14    Thank you.

15          THE COURT:  Okay.

16          So I will accept the Presentence Report, as well

17    as the Statement of Facts from the plea as my findings of

18    fact for purposes of today's sentencing.

19          The Presentence Report lays out the Probation

20    Office's calculation of the advisory Guidelines Range as

21    they apply in this case.

22          The Guidelines don't apply to Counts 6, 7, and 8,

23    because they're Class B misdemeanors; and for those, the

24    maximum statutory sentence is no more than six months in

25    prison and up to a fine of $5,000.

1          Turning to the relevant statutes to which

2    Mr. Fisher has pled guilty, the statutory maximum for civil

3    disorder, in violation of 18 U.S.C. Section 231(a)(3),

4    is five years of incarceration, three years of supervised

5    release, and $250,000 and a fine.

6          For Count 2, the statutory maximum for assaulting,

7    resisting, or impeding certain officers, in violation of

8    18 U.S.C. Section 111(a)(1), is eight years in prison,

9    three years of supervised release, and a fine of up to

10   $250,000.

11         For Count 3, the statutory maximum for knowingly

12   entering and remaining in a restricted building or grounds,

13   in violation of 18 U.S.C. Section 1752(a)(1), is up to a

14   year in prison and one year of supervised release, and a

15   fine of up to $100,000.

16         Count 4, the statutory maximum for knowingly and

17   intentionally engaging in disorderly and disruptive conduct

18   in a restricted building or grounds, in violation of

19   18 U.S.C. Section 1752(a)(2), is up to one year in prison,

20   up to one year of supervised release, and a $1,000 fine;

21         And for Count 5, the statutory maximum for

22   knowingly engaging in physical violence in a restricted

23   building or grounds, in violation of 18 U.S.C.

24   Section 1752(a)(4), is up to one year in prison, up to one

25   year of supervised release, and a fine of up to $1,000 --

1  $100,000.

2          So that brings us to the Guidelines, where I know

3  there are some disagreements on those issues.

4          And why don't I do this.  Why don't I start by

5  setting forth the Guidelines calculation as included in the

6  Presentence Report, and then I can hear from the parties

7  about any disagreements that they have with respect to that

8  calculation.

9          The Probation Office is of the view that Counts 1,

10  2, 4, and 5 should be grouped, because they involve the same

11  victim.  For those counts, the base -- as grouped, the

12  Base Offense Level would be 14.  There would be a two-level

13  enhancement because the victim was a government officer or

14  employee and the offense of conviction was motivated by such

15  status, which leads to an adjusted level of 20, and that's

16  for Count 1, 2, 4, and 5.

17          And then for the second group, according to the

18  Probation Office, that's Count 3, which is a violation of

19  18 U.S.C. Section 1752(a)(1), and the Base Offense Level for

20  that is 4.  There's a two-level enhancement because the

21  trespass occurred at a restricted building or grounds,

22  leading to an adjusted offense level of 6.

23          Because of the substantial difference in the

24  offense levels, the Court doesn't add any units based on the

25  grouping.

1          And then everyone agrees that Mr. Fisher has

2    accepted responsibility and has aided the prosecution by

3    timely providing notice of his intent to enter a plea of

4    guilty, and, therefore, avoiding the time and resources

5    necessary to prepare for trial.

6          And so with the three-point adjustment according

7    to the Probation Office, the total offense level is 17.  And

8    no one has identified any Criminal History points that

9    Mr. Fisher has.  And so if the total offense level is 17,

10   then his Guidelines Range would be between 24 and 30 months.

11          Why don't I start with Mr. Hanye.  Am I correct in

12   understanding that you agree with those calculations?

13          MR. HANYE:  Yes, Your Honor, that's correct.

14          THE COURT:  So let me hear from the government

15   then if you want to come up.

16          MR. NOHRIA:  Yes, Your Honor.

17          The government's main, I think the primary issue

18   to be resolved is the application of the dangerous weapon

19   adjustment, just because, if that's resolved in the

20   government's favor, I think it eases the rest of the

21   determinations.  For that, the government relies heavily on

22   *Denney*.

23          But I think it's most useful to start with what

24   the parties agree on --

25          THE COURT:  Okay.

1           MR. NOHRIA:  -- which is basically --

2           THE COURT:  Well, let's start with what the

3    standard is.  You want to point me to the right language in

4    the Guidelines for the enhancement?

5           MR. NOHRIA:  Yes, Your Honor.

6           THE COURT:  I want to make sure I'm --

7           MR. NOHRIA:  It's -- a dangerous weapon has the

8    meaning given in 1B1.1, Application Note 1, and includes any

9    instrument that is ordinarily used -- that is not ordinarily

10   used as a weapon.  Example, a car, a chair, or an ice pick,

11   if such instrument is involved in the offense with the

12   intent to commit bodily injury.

13          THE COURT:  Okay.

14          And I take it that the dispute then here is --

15   comes down to simply the question about whether the pushing

16   of the chair into the officer was done with the intent to

17   inflict bodily injury.  Is that fair?

18          MR. NOHRIA:  Exactly, Your Honor.

19          THE COURT:  Okay.

20          MR. NOHRIA:  So, Your Honor, I think it's

21   important to consider that in the *Denney* case, the defendant

22   intended to use the dangerous weapon with sufficient force

23   to dislodge an item from the officer's hands, and thereby

24   meant to cause him injury.

25          THE COURT:  So in *Denney* -- was actually my case,

1  so it makes it a little bit easier for me.

2          And in *Denney*, it wasn't a terribly hard finding

3  to make, because he actually, in the plea allocution,

4  admitted that he used a dangerous weapon.

5          MR. NOHRIA:  Yes, Your Honor.

6          But I think that goes to the -- whether the item

7  is -- in the ordinary course of the -- the item is --

8  whether it's dangerous or not.

9          But I think the Circuit Court also addressed the

10 intent finding, basically because Denney's argument was,

11 he had admitted that with respect to 111(b), but he

12 hadn't -- it wasn't for the purposes of intent to commit

13 bodily injury, and it was to essentially block -- or

14 dislodge the item from the officer's hands.

15         And I think that's similar to the argument that's

16 being made here, which is, Mr. Fisher's intent was to

17 obstruct the officer and not to cause bodily injury.

18         THE COURT:  I mean, the other thing that I found,

19 my recollection in *Denney*, was, not just that the officer

20 was hit with the PCP pipe, but also that -- the effort to

21 dislodge the chemical irritant spray gun from the officer's

22 hands was also something that was intended to cause bodily

23 injury, because the officer was, one, using that to protect

24 himself, but, two, someone could just pick it up and then

25 turn it on the officer.

1          MR. NOHRIA:  Understood, Your Honor.

2          And I guess that would go to the foreseeable

3    consequences of the action.

4          Here, I don't think that's as much of an issue,

5    because the application of force was directly to the body of

6    the officer in the course of his pursuit.  And so in terms

7    of the item being used against the officer, the chair

8    actually was used against the officer in that situation.

9          And I think that the *Denney* Circuit holding

10   essentially goes through how if you -- you can't get around

11   the finding of intent to cause bodily injury by essentially

12   arguing, well, my intent in applying that force to the

13   officer was not to cause him injury, it was to achieve some

14   other objective, because the two essentially merge.

15         If your intent is to physically hit the officer

16   with a chair or a bat or similar object to then cause a

17   secondary goal, in this case the officer not being able to

18   pursue the rioter, then the application of force, just by

19   the defendant's nature of having thought that that would

20   achieve the goal, goes to the -- Mr. Fisher's intent.

21         So essentially when Mr. Fisher goes behind that

22   cement pillar, waits there, the officer is running by him,

23   I think it's clear that his intent is to essentially prevent

24   the officer from reaching and apprehending the rioter.

25         And so when he shoves the chair into the officer,

1    it's clear that he believes he's using enough physical force

2    to achieve that goal by causing the officer -- essentially

3    by applying that physical force against the body of the

4    officer.

5              And I think as to the exact nature of the action,

6    you can see in the sort of a frame by frame where Mr. Fisher

7    is there, he moves slowly back, and he essentially shifts

8    the -- pushes the chair into the officer.

9              And I think it's important to note --

10             THE COURT:  It's very hard for me to see that

11   portion of it from the video; I've looked at this a number

12   of times.

13             You can see what Mr. Fisher is doing; you can't

14   really see the officer.

15             MR. NOHRIA:  I understand, Your Honor.

16             But I think that's resolved by the Joint Statement

17   of Offense, where it's not that Mr. Fisher pushed the chair

18   in front of the officer, it's that he pushed the chair into

19   the officer.

20             (Pause)

21             THE COURT:  Yeah, I see that, okay.

22             MR. NOHRIA:  And going to the second point that

23   I think Mr. Hanye had raised in the defense sentencing memo,

24   that, you know, Mr. Fisher's right hand swings back, and so

25   he wasn't maintaining the force of the chair against the

1    officer.  Obviously that's off camera.  What we know is he

2    pushed the chair into the officer and then they both are

3    essentially off-ramp for a second or two.

4            When they come on the frame, this, again, isn't a

5    situation where Mr. Fisher is sliding the chair forward a

6    few feet and remaining in his position behind the pillar.

7            You see him lean over, push the chair.  You know,

8    it goes immediately outside the view of the camera, but we

9    know from the Joint Statement of Offense that it's into the

10   officer.

11           And then Mr. Fisher comes back into the frame.

12   And when he's back in the frame, he's grappling with the

13   officer.  So, again, this is a direct application of

14   physical force from the chair.

15           And his intent is also clear from his actions

16   immediately after that.  He doesn't go to essentially help

17   the officer, he doesn't go to apprehend the rioter.  He

18   still is grappling with the officer grabbing him, they're

19   going back and forth.  And then the officer is actually hit

20   from behind by another rioter.  So I think all of those go

21   to Mr. Fisher's intent to cause bodily injury.

22           And I understand that his secondary goal was to

23   essentially assist the rioter and block the officer from

24   catching the rioter, but that's all part and parcel.

25           THE COURT:  Let's see.  It's in the comment note

1   is the definition that you're looking at -- commentary.

2   I'm just trying to figure out the definition you're using

3   here.

4            MR. NOHRIA:  For --

5            THE COURT:  I'm in 1B1.1.

6            MR. NOHRIA:  I'm just going to grab my laptop

7   really quick.

8            THE COURT:  Oh, sure.  That's fine.

9            (Pause)

10           THE COURT:  So I think the -- it's actually the

11  commentary to 2A2.2 that you're relying on, which refers to

12  1B1.1, but then says it also includes an instrument that is

13  not ordinarily used as a weapon; e.g., a car, a chair, or an

14  ice pick, if such an instrument is involved in the offense

15  with the intent to commit bodily injury.

16           MR. NOHRIA:  Yes, that's correct, Your Honor.

17           THE COURT:  Okay.

18           And I take it your whole argument on intent to

19  cause bodily injury is that Mr. Fisher has admitted that he

20  pushed a chair into the victim; and that one intends the

21  natural consequences of what one does.  And if you push a

22  chair into somebody, the natural consequence is that you're

23  going to cause bodily injury, and, therefore, he must have

24  caught -- intended to cause bodily injury.  Is that

25  essentially your argument?

1          MR. NOHRIA:  Yes, Your Honor.

2          Not only just the fact of pushing the chair into.

3          Again, what I was saying earlier is that, let's

4    say Mr. Fisher had slid the chair, you know, 5 feet in front

5    of the officer, I think then there could be a closer call.

6          Here when he's taking the chair and specifically

7    moving forward into the officer in a very narrow hallway as

8    the officer is running down and then continues to grapple

9    with the officer, the intent to cause injury -- well,

10   I guess the intent to obstruct the officer from apprehending

11   the rioter through essentially physical force to the officer

12   is clear.

13         THE COURT:  Okay.

14         So why don't I hear from the -- unless you have

15   anything else, I'll hear from the defense on this one, I'll

16   resolve the issue, and then we'll see what that means with

17   respect to any other issues that you have regarding the

18   Guidelines calculations.  But it probably makes sense to --

19         MR. NOHRIA:  That makes sense, Your Honor.  Thank

20   you.

21         THE COURT:  All right.

22         Mr. Hanye.

23         MR. HANYE:  Thank you, Your Honor.

24         Well, so we have to start with the burden.

25   The government bears the burden of proving the enhancement

1  by a preponderance.  So if it's unclear in any way, that is

2  a way to decide the decision -- to make the decision right

3  there, which is the enhancement doesn't apply, and that's

4  our position, the government hasn't proven this.

5           Obviously, a defendant's intent is always a

6  fact-specific question.  The way I just heard the government

7  articulate the test it's offering to the Court, I think

8  would result in the dangerous-weapon enhancement applying

9  any time an ordinary object is used as a weapon in any way

10  and sort of read -- I heard the government to say that,

11  if there's contact made, then that must include an intent to

12  cause bodily injury.

13           And here we have very specific facts that show

14  that Mr. Fisher was not intending to cause bodily injury

15  because of the way he committed it.  He slides the chair,

16  rather than picking it up and throwing it or continuing to

17  push it into the officer.

18           We also have the context of the fact that we know

19  that he was in the Capitol for 15 minutes beforehand without

20  seeking to confront officers, sort of wandering around

21  aimlessly.

22           He did not come with weapons or protective gear.

23  Certainly if he had an intent to injure officers, he had

24  ample opportunity, as many other defendants did that day.

25           The assault, while serious and dangerous, just

1    simply doesn't qualify under the plain language of the

2    Guidelines, because we have a clear inference of his intent

3    to interfere with the officer, which the government agrees

4    with.

5           I mean, you can't watch the video and not

6    understand that's what Mr. Fisher's intending to do.  They

7    would have to be arguing that Mr. Fisher also, in that

8    moment, intended to injure the officer.

9           But that doesn't square with the facts, because

10   this is a reaction in a manner of a few moments to this

11   altercation that occurs off camera.  And he doesn't stand in

12   front of the officer, he doesn't swing at the officer,

13   he slides the chair.

14          To the extent the government argued that the very

15   brief altercation that occurs after they're grabbing each

16   other, I watched that video many times, I see this as the

17   officer's natural and appropriate reaction of getting up and

18   grabbing Mr. Fisher, and Mr. Fisher grabs back and there is

19   a brief assault at that point.  But that's not evidence that

20   his initial intent was to injure the officer.  He obviously

21   lets go and doesn't keep going.

22          Because this arises so quickly -- and we know that

23   the intent, because of what we see on the video, was to

24   obstruct the officer --

25          THE COURT:  Just to make sure I understand.

1           Is this because the officer was chasing somebody

2   and he was trying to prevent the officer from chasing that

3   person?

4           MR. HANYE:  Right.

5           THE COURT:  Okay.

6           MR. HANYE:  So while it's dangerous, that's just

7   not the test.

8           The Commission included a separate enhancement for

9   when it's used in a particular way and where the government

10  has failed to prove that his intent was to injure the

11  officer, for all those facts means that the enhancement

12  shouldn't apply.

13          *Denney* -- real briefly on *Denney*.

14          When the defense offered the argument that the

15  intent of swinging the pipe at the officer was to -- the

16  word we'll use was "dislodge" the pepper spray, that means

17  make the officer drop the pepper spray, which I think

18  includes -- there's an in-between step, which is, make the

19  officer feel pain to drop it.

20          I don't think -- I think it's clear that there's

21  no effort from Mr. Fisher to make the officer feel pain.

22  That is not the same thing as saying it's not dangerous --

23  it's a dangerous act.  It's something for the Court to

24  consider under the nature and circumstances of the offense

25  under 3553(a), but he didn't use it in a way that makes it a

1    dangerous weapon, particularly the government hasn't proven

2    that by a preponderance.

3              THE COURT:  Okay.  Anything else?

4              MR. HANYE:  No, not on that point, Your Honor.

5    Thank you.

6              THE COURT:  All right.  Mr. Nohria, do you want to

7    have the final word on this?

8              MR. NOHRIA:  No, Your Honor.

9              THE COURT:  Can I ask you one other question,

10   which is:  Has anyone asked the officer whether he was,

11   in fact, injured, or asked the officer what happened and how

12   hard the chair hit him?

13             MR. NOHRIA:  The officer in one of his interviews

14   had indicated that he remembers having been struck by a

15   chair.  But he essentially said that he was assaulted so

16   many times that day that he couldn't recall the specifics of

17   this particular event.

18             THE COURT:  Right.  Okay.

19             All right.  Well, I do think this is a very close

20   question that, to my mind, does get resolved because of the

21   burden of proof.  It is only a preponderance burden, but

22   I'm not convinced that the government has carried its burden

23   of demonstrating that Mr. Fisher acted with the intent to

24   commit bodily injury.

25             I do think that there are oftentimes, and *Denney*

1    may be an example of this, and I've had certainly other

2    cases like this, where somebody shoves an officer, hits an

3    officer, and one can infer "intent," because people are

4    presumed to intend the natural consequences of their

5    actions.

6              And I think had Mr. Fisher lifted the chair off

7    the ground, had he thrown the chair, I think that

8    it would be fair to assume that he intended the natural

9    consequences of that to be to inflict an injury.  The fact

10   that he kept it on the ground and slid it across the ground

11   in a way that obstructed the officer as he was chasing the

12   individual, I just can't conclude by a preponderance of the

13   evidence that his intent was to actually cause injury to the

14   officer where "bodily injury" is defined to mean

15   "significant injury, that is, an injury that is painful and

16   obvious," while -- "or is of a type for which medical

17   attention ordinarily would be sought."

18             That may have been his intent.

19             But because Mr. Fisher pled to the Indictment and

20   there's just been less evidence in this case than other

21   cases and then because I can see in the video what

22   Mr. Fisher is doing but I can't see how -- I can't see the

23   contact with the officer with the chair and see actually how

24   hard the officer was hit, there's an insufficient basis for

25   me to conclude that Mr. Fisher would have intended the

1    natural consequences of his action, because I don't actually

2    see the consequences.

3            I can guess what the consequences were from seeing

4    what Mr. Fisher is doing, but I really can't see how hard he

5    actually hit the officer, I can't see where he hit the

6    officer, whether it was in front of the officer in ways that

7    obstructed his chasing the individual or whether it was

8    slammed into the officer in some violent way, and that just

9    doesn't appear to me on the video.

10           I will note as well that there's not anything else

11   in Mr. Fisher's behavior from that day, other than his

12   interaction with that officer, where they do wrestle with

13   each other and Mr. Fisher ends up on the ground, that

14   indicates that Mr. Fisher came prepared for violence or had

15   an intent to hurt anybody.

16           You know, others obviously came with weapons, came

17   with battle gear, came with body armor.  And Mr. Fisher was

18   wandering around in his winter coat fairly aimlessly when

19   this happened.  I have no doubt that what he did was a

20   serious, serious mistake and that he did, in fact, interfere

21   with and impede the officer in what he was doing.  But I

22   conclude the government comes close on this but doesn't

23   quite meet its burden with respect to whether Mr. Fisher --

24   whether it has shown that Mr. Fisher acted with an intent to

25   actually cause bodily injury; that is, injury that is

24

1   painful and obvious or is of a type for which medical

2   attention ordinarily would be sought.  So I will not apply

3   that enhancement.

4          Where does that leave us, Mr. Nohria, with respect

5   to the other issues you have?

6          MR. NOHRIA:  Yes, Your Honor.

7          I believe -- I think we still need to resolve the

8   other issues in terms of the cross-reference and the

9   grouping.

10         THE COURT:  Okay.  Why don't you come up and

11  address those then.

12         It was unclear to me that the groupings made any

13  difference, but you can explain to me why, because I didn't

14  think, under any scenario, you ended up with adding a point.

15  But -- and I didn't even see in your calculation you're

16  adding a point because of the groupings, so I wasn't sure

17  that made a difference.  But if it did, you should explain

18  it to me.

19         MR. NOHRIA:  Yes, Your Honor.

20         I think if the Court were to apply the

21  cross-reference for one of the 1752 counts, (a)(1) or (a)(2)

22  or both, would be the government's position, to civil

23  disorder, essentially that Mr. Fisher, when he entered and

24  remained inside the Capitol Building or when he was engaging

25  in disorderly conduct, was with the intent to commit the

```
1    felony offense of civil disorder.

2              That would lead to the cross-reference level of

3    14 for what would then be cross -- count Group 2.

4              And then without -- do you want me to go on?

5              THE COURT:  Go ahead.

6              MR. NOHRIA:  Okay.

7              And then without the dangerous weapon enhancement

8    or adjustment, there is no common special -- or specific

9    offense characteristic that leads to grouping since a

10   cross-reference does not apply as a specific offense

11   characteristic.

12             And so then the difference between the main group,

13   which would be offense level 20 and Count Group 2 would be

14   14, which would be 6 difference, which would lead to a

15   one-half unit increase, and then an increase in the total

16   combined offense level of 1.

17             THE COURT:  I see.

18             I'm pausing over here.  The oddity of it is, the

19   1752 counts are all misdemeanors --

20             MR. NOHRIA:  Uh-huh.

21             THE COURT:  -- and so they're all capped at no

22   more than one year of incarceration.

23             And the theory with the cross-reference is --

24   takes you to a 14 under the Guidelines, right?

25             MR. NOHRIA:  Yes, Your Honor.
```

1           THE COURT:  Which is 15 to 21 months, which is

2    higher than the statutory maximum.

3           And the Guidelines then, you would then cap the

4    offense level -- or the offense at the statutory maximum.

5    And what I don't know the answer to is whether that means

6    that you would move it down to a 13 or whether it stays at a

7    14, but you just don't oppose a sentence above the statutory

8    maximum, if you follow.

9           MR. NOHRIA:  Yes, Your Honor.

10          I've encountered this in other cases, and it's

11   always been that, it would -- there would be no reason that

12   the offense level would go down to match the statutory

13   maximum; it's just that the maximum sentence for that

14   particular count would be capped.

15          THE COURT:  So I know there's a provision in the

16   Guidelines, I don't have it in front of me at the moment,

17   that talks about what you do when the Guidelines exceed the

18   statutory max.  Do you know what that one is offhand?

19          MR. NOHRIA:  I do not, Your Honor.

20          THE COURT:  Does anyone -- do you know?

21          I'm interested in Probation's views on this

22   question as well.

23          PROBATION OFFICER:  I could find it, but I do not

24   know right offhand.

25

1          THE COURT:  Why don't you come up.

2          What's your view on the question of how I should

3    go about thinking about this question more generally?

4          I mean, this is all based on the factual

5    predicate, obviously, but I find that he entered for

6    purposes of civil disorder, but put that aside.

7          PROBATION OFFICER:  Correct, Your Honor.

8          So Andre Wilson from Probation.

9          THE COURT:  Thank you for being here.

10         PROBATION OFFICER:  I know the reference you're

11   talking about, but I can't recall it offhand from the

12   Guideline manual.

13         And what's the second question?

14         THE COURT:  Well, just more generally, if I were

15   to conclude that, as a factual matter, that Mr. Fisher did

16   commit the 1752(a) violations, one more of them, two -- or

17   with the purpose of committing another crime, that is, civil

18   disorder, would I then apply an enhancement because of that,

19   and if so, how would that affect the grouping analysis and

20   whether I had added any additional points?

21         PROBATION OFFICER:  If the Court found that that

22   applies, you could apply the enhancement.

23         I would have to go back and look at it to see how

24   the grouping -- if the groupings would change in the report.

25

1              THE COURT:  Okay.

2              Well, if you wouldn't mind just taking a look at

3    it while we're talking about this other stuff.

4              PROBATION OFFICER:  Okay.

5              THE COURT:  And if you happen to cross that

6    provision that we're talking about, I'd appreciate you

7    bringing that to my attention, the one that talks about

8    capping it.  I just don't know whether that means you reduce

9    the Guidelines or whether the Guidelines stay the same but

10   you just reduce the sentence.

11             PROBATION OFFICER:  I know you just reduce the

12   sentence, I just don't know the citation.

13             THE COURT:  Okay.

14             PROBATION OFFICER:  So the offense level and

15   everything would stay the same.

16             THE COURT:  I see.

17             Okay.  Thank you.

18             All right.  Mr. Nohria, anything else on this

19   issue?

20             Which counts are you talking about applying this

21   to, is it all the 1752 counts or just some of them?

22             MR. NOHRIA:  Just the 1752(a)(1) and (a)(2).

23             The government's view is that 18 U.S.C.

24   1752(a)(4), for that, the victim is the officer, since he's

25   engaging in an act of violence.

1          THE COURT:  Right.

2          MR. NOHRIA:  And so that one would group

3    essentially with the count Group 1, if you call it, which is

4    the 111, and then the civil disorder.

5          THE COURT:  And with respect to Count 3 --

6    so I guess Count 3, everyone agrees that I group separately.

7          Count 4, you think I should group with Count 3,

8    and Probation and the defense think I should group that with

9    the felony counts?

10          MR. NOHRIA:  Yes, Your Honor.

11          The government had filed -- had included this in

12    our objection to the PSR, where essentially because the

13    government believes that Congress, not law enforcement,

14    is the victim for Count 4 --

15          THE COURT:  Right.

16          MR. NOHRIA:  -- since the restricted perimeter is

17    established by the Secret Service to ensure the protection

18    of the members of Congress and the Vice President.

19          And that when Mr. Fisher pled guilty to Count 4,

20    it was with the intent to impede or disrupt the orderly

21    conduct of government business or official functions.

22          THE COURT:  All right.

23          Well, I'm not sure that matters, whether -- where

24    Count 4 ends up, because -- as long as Count 3 ends up in a

25    separate grouping --

1           MR. NOHRIA:  Yes.

2           THE COURT:  -- it's not going to make a

3    difference, right?

4           MR. NOHRIA:  That's correct, Your Honor.

5           THE COURT:  Okay.

6           And so, again, I think I can boil this down to a

7    fairly simple factual question, if I have this right, which

8    is, the question of whether the enhancement applies for

9    purposes of Count 3 or potentially Count 4 turns on whether

10   the offense was committed with the intent to commit a

11   felony; in this case, the government argues, civil disorder.

12          And if it was -- if it was committed with the

13   intent to commit another felony, then the Base Offense Level

14   becomes 14, although I am not applying the dangerous weapon

15   enhancement, so I think we would just stay -- it would be --

16   it would just stay at a total of 14; is that right?

17          MR. NOHRIA:  Yes, Your Honor.

18          THE COURT:  And then 14.

19          And then I've got to flip back to what it was.

20          MR. NOHRIA:  And then for count Group 1,

21   it would be 20.

22          THE COURT:  20.  Right.

23          And so it's a six-point difference.  Okay.

24          All right.  So let me hear from Mr. Hanye on this.

25          MR. NOHRIA:  And, Your Honor, just very quickly.

1          I found the section, it's 5G1.2, and that's

2    sentencing on multiple counts of conviction.

3          THE COURT:  Yes.

4          MR. NOHRIA:  And it says -- I think the main point

5    of it is essentially, if the sentence imposed on the highest

6    statutory maximum is adequate, then they run concurrently.

7    If it's not, then the sentences can run consecutively.

8          THE COURT:  Yeah.

9          No, that's a different provision from the one I'm

10   talking about.

11         MR. NOHRIA:  Oh, okay.

12         THE COURT:  The one I'm talking about is the

13   provision that says, where the Guidelines calculation comes

14   in with a recommended sentence above the statutory maximum,

15   you reduce the sentence to the top end of the statutory

16   range.

17         MR. NOHRIA:  Okay.

18         Understood, Your Honor.

19         THE COURT:  Yeah.  Okay.

20         All right, Mr. Hanye.

21         MR. HANYE:  Thank you, Your Honor.

22         Well, we think this is a little bit less

23   complicated because the Court shouldn't apply the

24   cross-reference.

25         And that's because the two counts we're talking

1    about, 3 and 4, are the entering and remaining and the

2    disorderly and disruptive.

3                THE COURT:  Right.

4                MR. HANYE:  And there's no evidence that

5    Mr. Fisher intended the civil disorder at the time he

6    committed those crimes.  The civil disorder doesn't actually

7    come into play until the assault on the officer.

8                THE COURT:  But he was remaining at that time.

9                He didn't leave.  He could have -- when things

10   turned really ugly in that corridor down there and officers

11   started being assaulted, at that point in time, Mr. Fisher

12   could have left.

13               MR. HANYE:  That's true.

14               And he obviously should have.

15               He left shortly after the assault.

16               THE COURT:  Right.

17               But so doesn't that qualify as "remaining" for

18   purposes of committing civil disorder?

19               He -- rather -- he had a choice.

20               When he saw the officer chasing the other

21   individual, he could have walked away and left the building

22   or he could have turned around and pushed the chair into the

23   officer.  And he elected to do the latter, which is -- which

24   is civil disorder.  And he's pled to that.  And so wasn't he

25   remaining in the building for that purpose?

1          MR. HANYE:  May I have a moment to just review the

2    joint statement of --

3          THE COURT:  Yeah, that's fine.

4          MR. NOHRIA:  And, Your Honor, I just wanted to add

5    one quick note.

6          THE COURT:  Sure.

7          MR. NOHRIA:  And so even if the Court were to

8    reduce the offense level for the 1752 to 13, the result

9    would still be the same, which is, because it's less than

10   nine levels' difference, it would still add the half unit,

11   which would then lead to an increase of one in the combined

12   offense level.

13         THE COURT:  What is the provision on grouping?

14         MR. NOHRIA:  3D1.4.

15         And specifically subsection B.

16         THE COURT:  Okay.  I see your point.

17         You're welcome to make your argument, yes.

18         MR. HANYE:  Is it my turn?

19         So my argument is that the remaining could be

20   committed with the intent to commit the civil disorder, but

21   that it's not necessarily shown in this case by Mr. Fisher's

22   actions.

23         So we don't have -- there's nothing in the

24   Joint Statement of Offense that he admits that that was --

25   intent at the time.

1          I understand that that is one possible inference.

2     I don't think it's an inference by a preponderance based on

3     his conduct of aimlessly walking around until he reacts to

4     that other incident.  And that's the moment when it becomes

5     much more serious because of his reaction because of his

6     conduct.

7          So certainly you can commit Counts 3 and 4,

8     both 1752(a) counts, without the intent to commit another

9     felony, and our position is that Mr. Fisher did so, and that

10    to rely on the assault essentially would merge the offenses.

11         These offenses are all so very closely related.

12    I understand that they are legally distinct because they're

13    separate elements.  But there's just not evidence that he

14    committed the two 1752 offenses with the intent to commit

15    the civil disorder, because that's something that developed

16    while he was in -- and to draw the inference that he

17    remained after seeing things get ugly just beforehand,

18    I don't think gets the government over the hump of a

19    preponderance.

20              THE COURT:  Okay.

21         All right.  Anything else from the government on

22    this one?

23              MR. NOHRIA:  Only very briefly, Your Honor.

24              Just that Mr. Fisher -- and I know this is a very

25    small moment of time, we're talking about, you know,

1    30 seconds here, but Mr. Fisher not only was there for the

2    course of the day -- or, you know, for the minutes he was

3    under the Capitol Building, but did position himself behind

4    that pillar, wait for the officer to be running past, and

5    then strike him.

6          So in terms of the "or remaining," there is even

7    indications that, for the specific incident, he was

8    remaining in that position in the restricted perimeter and

9    in the Capitol Building to strike the officer.

10          MR. HANYE:  May I make one more point?

11          THE COURT:  Please, come on up.  You need to be at

12   a microphone.

13          As long as you have a microphone.

14          The court reporter can't hear you if you're not at

15   a microphone.

16          MR. HANYE:  I just wanted to point out that

17   Probation did respond to the government's objection within

18   the presentence report.

19          And obviously the Court needs to farm these out to

20   get the assistance of other probation departments, and that

21   it's not the probation officer who's present who wrote this.

22          But on page 26 of the Presentence Report is the

23   probation officer's response, which essentially is -- was my

24   argument, that there's not sufficient evidence that he

25   intended the other felony in committing those offenses.

1          And I think the way this is written --

2          THE COURT:  Yeah, although this is talking about

3    entering the building versus remaining.

4          MR. HANYE:  Right.

5          THE COURT:  And I think you're right with respect

6    to entering.  I'm less convinced you're right with respect

7    to remaining.

8          MR. HANYE:  I understand.  I just wanted to point

9    out that we -- Probation's position was stated in the

10   Presentence Report.

11         THE COURT:  Okay.  I appreciate that.

12         But do you have any disagreement with the

13   government's legal analysis or reading of the Guidelines or

14   is it just this factual question?

15         MR. HANYE:  It's the factual question about

16   whether the enhancement applies.

17         THE COURT:  Right.

18         MR. HANYE:  But in terms of -- I agree that the

19   statutory max doesn't change the offense level, that it just

20   changes what the actual Guidelines are for that offense.

21         THE COURT:  Okay.  I appreciate that.  Thank you.

22         Yes.

23         PROBATION OFFICER:  So regarding the statutory

24   maximum, it's in 5G1.2(b).  And then Application Note 3

25   gives it a little more clarification.

1          Basically, the Court shall determine the total

2    punishment -- it should impose the total punishment on each

3    count except to the extent otherwise required by law.

4          THE COURT:  Yep.

5          PROBATION OFFICER:  And then if you go to

6    Application Note 3, it further says, "Except to the extent

7    otherwise required by law, such as where a statutorily

8    required minimum sentence or a statutorily authorized

9    maximum sentence is required."

10          THE COURT:  Okay.

11          And so that just pushes you down to the statutory

12    max then?

13          PROBATION OFFICER:  Correct.

14          THE COURT:  All right.

15          Well, on this one, I'm persuaded that the

16    government is right and it has carried its burden by a

17    preponderance of the evidence and that I think the evidence

18    does show that Mr. Fisher did stay or remain in the Capitol

19    for the purpose of engaging in civil disorder.  He could

20    have left when things got as ugly as they did in the

21    corridor where the officers were being assaulted; and rather

22    than leaving, he chose to stay.

23          And as Mr. Nohria notes, he waited behind the

24    pillar for the officer to come by in order to push the chair

25    into him to obstruct the officer, but also to participate in

1    the civil disorder to which he has pled guilty.

2              And so I conclude that the enhancement -- that the

3    enhancement does apply.  I realize that 14 does push us

4    above the statutory maximum, because we're talking about a

5    misdemeanor here, but I don't think I have to resolve the

6    question about whether I should apply the lower Guidelines

7    level of 13, which includes a sentence of a year, because

8    I agree with the government that it ultimately doesn't make

9    a difference and that I have to add the additional half

10   unit, which does result in a one-point increase in the

11   Guidelines Range.

12             (Pause)

13             THE COURT:  All right.

14             So with all that in mind, I think where that

15   leaves me is that the adjusted offense level is 21.

16             Because we start at 14.  We add 6 because of the

17   official victim.

18             And we then add 1 based on the grouping analysis

19   that I just went to, which leads to 21.

20             Everyone agrees that Mr. Fisher is entitled to a

21   3-point reduction because of his acceptance of

22   responsibility under 3E1.1(a) and (b).

23             And so that leads us to a total offense level of

24   18 and a Criminal History Category of zero.

25             And so the recommended Guidelines Range is

1    27 to 30 months.

2              Any disagreement with any of that?

3              MR. NOHRIA:  No, Your Honor.

4              THE COURT:  Mr. Hanye.

5              MR. HANYE:  Your Honor, I agree that that's the

6    right calculation according to the Court's ruling.  I just

7    would preserve our objection to the application of the

8    cross-reference for Counts 3 and 4.

9              THE COURT:  That's fine.

10             Just so I understand it, that was based on the

11   factual question about whether Mr. Fisher remained in the

12   building for purposes of committing civil disorder.

13             MR. HANYE:  That's correct, Your Honor.

14             THE COURT:  Okay.  All right.  Thank you.

15             All right.  So give me one second.  I've just got

16   to see what that does to the fine range.

17             (Pause)

18             THE COURT:  So at an offense level of 18, the

19   recommended fine under the Guidelines is between $10,000 and

20   $100,000.

21             And then for Counts 3 through 5, because the

22   Guidelines don't apply, the only guidance to the Court is

23   that I cannot impose a sentence of greater than six months

24   and that I have to rely on the 3553(a) factors, which I will

25   do for purposes of sentencing.

1          Under 18 U.S.C. Section 3583(b)(2), the Court may

2    impose a term of supervised release of up to three years.

3          And the Guidelines recommend a term of supervised

4    release in between one and three years for Counts 1 and 2;

5    and one year for Counts 3 through 5.

6          And as I mentioned, the Guidelines don't apply to

7    Counts 6 through 8.  And, in addition, as the D.C. Circuit

8    has held, the Court cannot impose a split sentence with

9    respect to the Class B misdemeanor counts.

10          Under 18 U.S.C. Section 3561(c)(1), the defendant

11    is eligible for between one and five years of probation,

12    because the offense is a felony.

13          And the Guidelines don't recommend a sentence of

14    probation because the offense is in zone level D.

15          And under 18 U.S.C. Section 3013(a)(2)(A), the

16    Courts needs to impose mandatory special assessments of $100

17    for Counts 1 and 2; $25 for Counts 3, 4, and 5; and $10 for

18    Counts 6, 7, and 8, which all comes to a total of $305.

19          Restitution is appropriate pursuant to 18 U.S.C.

20    Section 3663(a)(3).

21          And as I understand it, the defense does not

22    object to an order of $2,000 of restitution;

23    is that correct?

24          MR. HANYE:  That's correct.

25          And we would also agree with Probation's

1    recommendation of a $2,000 fine as well.  I didn't make that

2    clear in the sentencing memo.

3                THE COURT:  Okay.  Thank you.

4                Anything else that the government wants to add or

5    clarify with respect to the relevant Guidelines or legal

6    considerations relating to sentencing?

7                MR. NOHRIA:  No, Your Honor.

8                THE COURT:  And, Mr. Hanye, anything that you need

9    to clarify or correct in anything I've said so far?

10               MR. HANYE:  No, nothing else.  Thank you.

11               THE COURT:  All right.

12               So then the next question for me is to determine

13   whether to impose a departure.

14               And I don't think either side has given me notice

15   that they're seeking a departure in this case;

16   is that correct?

17               MR. NOHRIA:  No, Your Honor.

18               MR. HANYE:  That's correct, Your Honor.

19               THE COURT:  Okay.

20               And I don't see a basis for a departure in this

21   case.  That's not to say that a variance wouldn't be

22   appropriate, but I don't see a basis for a departure.

23               I note that the Probation Office has recommended a

24   sentence of 24 months' imprisonment, two years of supervised

25   release, no fine, and a Special Assessment of $305.  And

1    that recommendation was based on the facts set forth in the

2    Presentence Report, as well as the Guidelines calculation

3    set forth in that document.

4          I now need to consider the relevant factors that

5    Congress has specified in 18 U.S.C. 3553(a) and I have to

6    impose a sentence that is sufficient but not greater than

7    necessary to comply with the purposes of sentencing, and

8    those purposes include:

9          The need for the sentence imposed to reflect the

10   seriousness of the offense; to promote respect for the law;

11   and to provide just punishment for the offense.

12         The sentence should also afford adequate

13   deterrence to criminal conduct, protect the public from

14   future crimes of the defendant and promote rehabilitation.

15         In addition to the Guidelines and policy

16   statements, the Court's required to consider the nature and

17   circumstances of the offense, the history and

18   characteristics of the defendant, the need for the sentence

19   imposed, the Guidelines Range, the need to avoid unwarranted

20   sentencing disparity among defendants with similar records

21   who have been found guilty of similar conduct, and the types

22   of sentences available.

23         Mr. Nohria, would the government like to be heard

24   with respect to the sentencing factors?

25         MR. NOHRIA:  Yes, Your Honor.

43

1          THE COURT:  Okay.

2          MR. NOHRIA:  Your Honor, the government's

3  maintaining its request for -- that the Court sentence

4  Mr. Fisher to 46 months of incarceration, three years of

5  supervised release, and $2,000 in restitution.  The

6  government will defer to the Court with respect to any fine.

7          Mr. Fisher attended then-President Trump's rally

8  on the National Mall.  After the rally, he could have left,

9  but he didn't.  He kept going with thousands of others to

10  continue on to the Capitol Building.

11          Once he reached the Capitol Building, he made his

12  way to the Senate wing door and was present within the first

13  ten minutes of the breach into the Capitol Building.

14          He's present as people around him are smashing

15  glass, as they're climbing through windows to enter the

16  Capitol Building.  Again, he doesn't turn around;

17  he continues forward.

18          Mr. Fisher helps a rioter clear tear gas from his

19  face, and then he enters the building while the emergency

20  exit alarm is clearly blaring.

21          He's present inside the Capitol Building as other

22  rioters throw chairs, trash cans, and poles at officers.

23          He's present as they scream things like "You're

24  scared now, motherfucker," at the officers.  And, again, he

25  doesn't turn around; he continues on.

1          Mr. Fisher, when he's outside the visitors lobby,

2     observes an officer chasing the rioter, as we've discussed.

3          He goes and positions himself behind the pillar to

4     catch the officer unaware.  There is a clear intent when

5     he's positioning himself behind that pillar, and it's

6     because the officer can't see him coming, can't prepare.

7          And then as soon as the officer is passing by,

8     Mr. Fisher takes that chair and he slides it into the

9     officer.

10         Now, again, we don't know exactly the amount of

11    force, but we know that it was sufficient enough to achieve

12    Mr. Fisher's intent:  To prevent the officer from catching

13    that rioter.

14         Even after striking the officer, Mr. Fisher

15    doesn't apologize, he doesn't back away, he doesn't raise

16    his hands.  Him and the officer continue to grapple back and

17    forth as another rioter comes up and hits the officer from

18    behind.  On January 6th, Mr. Fisher chose a violent mob over

19    his fellow officers again and again and again.

20         Now, I'd like to address the government's,

21    essentially, argument that Mr. Fisher should be sentenced

22    either at the top of the applicable Guidelines Range or

23    there should be an upward variance to 46 months of

24    incarceration.

25         And that's in the context of two things; one is

1    Mr. Fisher's actions in that specific moment of the assault,

2    and then Mr. Fisher's actions in the context of the day.

3            So with respect to Mr. Fisher's actions in the

4    moment of the assault, under 3C1.1, a defendant who

5    willingly obstructs or impedes an investigation or

6    prosecution of a case will have their offense level

7    increased by two points.

8            For example, someone -- and the reason for this is

9    because the intent behind an action is important.  Someone

10   who assaults another individual is bad; someone who assaults

11   another individual to prevent them from testifying or

12   showing up to court is worse.

13           Now, the government isn't asking for that

14   enhancement here.

15           But the idea behind the adjustment should play a

16   part, essentially that Mr. Fisher did not flail out and make

17   incidental contact.  He didn't just shove an officer

18   randomly in a fit of rage.  He is a former police officer.

19           He saw a chase where an officer was chasing a

20   rioter, and he decided to intervene in a chaotic situation

21   with a violent mob inside the Capitol Building.  And he

22   pushed that chair into the officer with that intent, to

23   prevent the officer from apprehending that rioter.  And so

24   the intent of his actions is not only to assault the

25   officer, but it's also assist someone else in getting away

1    after they've committed a crime.

2          With respect to the context of Mr. Fisher's

3    actions on the day, it's worth noting that if Mr. Fisher had

4    assaulted a Capitol Police officer inside the

5    Capitol Building on any random day, his offense level would

6    have been the same as we're currently calculating it.

7          It doesn't account for the fact that on

8    January 6th, there was the electoral certification, and that

9    the general intent of both the mob and Mr. Fisher, after

10   they've attended then-President Trump's Stop the Steal

11   rally, is to disrupt the electoral certification and the

12   peaceful transfer of power for the first time in our

13   nation's history.  Again, that is not accounted for in the

14   current Guidelines Range.

15         And so for all those reasons, the government

16   requests the Court sentence Mr. Fisher to 46 months of

17   incarceration, three years of supervised release, and $2,000

18   in restitution.

19         THE COURT:  Okay.  Thank you.

20         Mr. Hanye.

21         MR. HANYE:  Your Honor, the defense is

22   recommending a sentence of six months' incarceration,

23   two years of supervised release, with a special condition

24   that the first six months be spent in home detention, along

25   with $2,000 in restitution, $2,000 in a fine.

1          We'll also be asking the Court to give a judicial

2     recommendation that Mr. Fisher be placed at FMC Devens,

3     which is the only federal facility in Massachusetts.  It's a

4     place where I'm aware that other law enforcement officers

5     have been designated.  It's also a medical facility, and

6     Mr. Fisher does have some medical needs.

7          But obviously the meat of the issue before the

8     Court is how much incarceration to impose here.

9          And I want to start with the point that, any

10    period of incarceration is going to be more difficult for

11    Joseph Fisher than many defendants because of the particular

12    circumstances here.

13          One of those circumstances is that he's a

14    first-time offender.

15          And I think the first period of incarceration,

16    particularly at Mr. Fisher's age, is going to have more

17    sting because he's never been through it before.

18          He's never had to share cramped facilities, endure

19    invasive searches, have his clothes and his meals picked out

20    for him, have a complete inability to exercise any

21    independence.  And he's never had forced separation from his

22    family.

23          And so when we recommend six months of

24    incarceration, we don't believe that that is necessarily a

25    light or an easy sentence.

1           Another specific circumstance that we think is

2    going to make it harder for him is because he's a former

3    police officer.

4           That is not a career that's going to be welcomed

5    by most inmates.  I think it's fair to infer that the

6    Bureau of Prisons will have to take some steps to keep him

7    safe, which likely would include some periods in segregation

8    until protective custody beds are available.  It's certainly

9    a risk that he's likely to feel being among longtime

10   recidivist offenders, given his long history as a police

11   officer.

12          Mr. Fisher also suffers from Posttraumatic Stress

13   Disorder, as detailed in the Presentence Report.

14          He experiences anxiety, panic attacks.  People who

15   suffer from PTSD and those specific symptoms, generally try

16   to avoid large public, social areas.  That is not something

17   that Mr. Fisher will be able to do while he's in prison

18   because of the need to be around so many other inmates in

19   what is often a loud and chaotic situation.

20          He is also 52 with medical conditions.

21          In addition to the normal physical difficulties

22   that come with aging, he also has a traumatic foot injury

23   that's documented in the Presentence Report that makes it

24   hard for him to stand for a long period of time, prevents

25   him from lifting heavy objects.  You can see that he walks

49

1    with a limp.

2           These are the reasons that it's -- a sentence for

3    Joseph Fisher is going to be particularly hard.

4           And what that means is that the goals of

5    sentencing will be accomplished more quickly than for

6    someone without those conditions.  So those are relevant

7    under 3553(a).

8           And it becomes easy, I think sometimes, to just

9    see the numbers as -- the Guidelines as numbers, rather than

10   actual experience of incarceration.

11          In its recommendation, Probation noted that

12   Mr. Fisher's law enforcement career is both mitigating and

13   aggravating, and we would agree with that general statement.

14   But there are particular facts of his career that we believe

15   make it much -- presents much more mitigation than

16   aggravation based on the particular career that he led,

17   which was an exemplary one.

18          We submitted numerous commendations that includes

19   experiences where he was -- as an officer, he was being run

20   down by a car and was forced to discharge his weapon at a

21   fleeing suspect; of having to respond to individuals in

22   mental health crisis who were attempting to commit suicide

23   and trying to apprehend them only so that they could be

24   taken for appropriate care.

25          There are reports of his good work in forming

50

1   relationships with people in the community to try to

2   identify suspects and reduce crime in particular areas.

3          There's examples of him helping people in need,

4   including the letters from the citizens who came down as

5   visitors from Montreal and had -- couldn't find a place to

6   stay, and Mr. Fisher went above and beyond in trying to

7   assist them, as well as to one woman who had a flat tire and

8   was so impressed by his assistance that she wrote to his

9   supervisors.

10          It includes Mr. Fisher's response to the Boston

11   Marathon bombing, both to the scene on Boylston Street,

12   where three people were killed and scores of people lost

13   limbs as a result of that terrorist attack.  It also --

14   Mr. Fisher responded to the scene in Watertown a few days

15   later when they apprehended the suspects who were still

16   throwing pipe bombs and discharging weapons.

17          Now, when Mr. Fisher was responding to those, when

18   Officer Fisher was responding to those incredibly traumatic

19   incidents, he was already experiencing his own trauma, which

20   is something that had begun with that first incident when a

21   fleeing suspect drove at him at a vehicle and he fired to

22   protect himself.

23          So responding to those incidents is an act of

24   heroism, but Mr. Fisher was doing that while he's also

25   trying to manage his own trauma.  That's because he was

51

1    committed, and it's because he devoted his life to public

2    service.  And that matters.

3           It also matters, the government's right to point

4    out that he should have known better; that the kind trauma

5    he experienced is shamefully the kind of trauma that he's

6    now caused for other officers.

7           But it bears noting the particular circumstances

8    that led to his commission of this offense, because the

9    physical and emotional consequences of his career in law

10   enforcement left him vulnerable in a particular way that

11   I think is borne out by all the facts before the Court and

12   as reported in the Presentence Report.

13          Which is that, after his serious foot injury when

14   he fell from a ladder in approximately 2015, he was

15   immobile, he was spending much of his time watching TV at

16   the exact time when there was a lot of misinformation being

17   provided about the election and the consequences.  This is

18   obviously years before the 2020 election, but this is the

19   field, the environment in which Mr. Fisher begins to receive

20   his news.

21          His wife notes that at that time, she noted a

22   change in his behavior; that he became to be obsessed with a

23   series of activities that included doomsday prepping.

24          This is clearly indications of the anxiety, of his

25   PTSD, of his being a captive audience to just constant

52

1    negative information, often false information, but also

2    likely in a -- having the effects of repeated head injuries,

3    which were not diagnosed at the time because it's only

4    recently that we've started to see the connection between

5    even what appear to be mild brain traumas and long-term

6    effects.

7            And so Mr. Fisher became a person who was

8    convinced that there was something that was wrong; that he

9    needed to do something about it, all based on falsehoods;

10   but he was a person who was particularly vulnerable because

11   of those conditions; and I think that all those factors

12   coalesce on video at the Capitol on January 6th.

13           He's angry about something that wasn't true.

14   But as the Court noted, he goes in and he's aimlessly

15   wandering.  And what that shows is that he wants something

16   to be different but he has no plan about what that's

17   supposed to be.

18           And then with he gets inside, 15 minutes of just

19   walking around and then maybe one minute of committing a

20   serious assault against the officer here and why he winds up

21   in this particular situation.

22           So none of that makes his conduct okay, it doesn't

23   excuse it, but it shows that his particular conditions,

24   I would think it's clear that they contributed to the

25   offense, and I think, in a way, that matters as to how much

53

1    incarceration is necessary at this point.

2          Many January 6th defendants appear to be defiant

3    or insincerely remorseful.  I don't think that's true of

4    Mr. Fisher at all.  He wrote a letter to the Court in which

5    he expresses his clear remorse.  He has been open with his

6    family.  They note his remorse in talking to them directly,

7    his understanding the harm that he has caused to so many

8    people.

9          I think the Court can actually see that in one of

10   the videos where his assault appears to jolt him into some

11   recognition of what he was doing, because, while he's in

12   there for 15 minutes beforehand, he leaves within a few

13   minutes afterwards.

14         And then he winds up sitting down on the steps and

15   smoking in what I see as exhaustion, as sort of bewilderment

16   at what he brought himself to, and he left.

17         And then when he was charged, he ultimately pled

18   guilty to all the charges, and he's here recommending what

19   we believe is a sufficient sentence.

20         The Court has information that Mr. Fisher doesn't

21   present a risk of any further crimes for pretty much all the

22   factors; his age, his employment history, his education, his

23   very strong family support.

24         I want to point out that he has supporters who

25   made the trip down from Massachusetts.  His wife's here,

1    three of his sisters are here, and his niece is here as

2    well.

3                THE COURT:  Thank you for being here.

4    I appreciate you being here.

5                MR. HANYE:  So one of the purposes of sentencing

6    is to protect the public from further crimes of the

7    defendant.  I don't think that that is a particularly strong

8    reason for incarceration in this case.  He acknowledges that

9    just punishment is probably the strongest reason for

10   incarceration here.

11               But for all those reasons, Your Honor, the

12   particular sentence we're recommending of six months --

13   six more months at home, supervised release, restitution to

14   pay his fair share of the damage.  Even though he didn't

15   himself cause any damage, he acknowledges that he

16   contributed to it so that that would be appropriate, as the

17   government has requested.

18               And in light of some sentences in other cases that

19   we believe are similarly situated, those being the *Bruno*

20   case and the *Lockwood* case where the sentences -- I believe

21   Your Honor imposed a year and a day in both of those cases.

22               THE COURT:  Yeah.

23               You know, those cases, I think, are not terribly

24   analogous.

25               I mean, Bruno Cua, I believe, was the youngest

1    person convicted of a felony on that day.  And what he did

2    was really awful, but he was a little more than a child.

3          The case that actually neither of you have

4    mentioned, which I think is actually most analogous to this

5    one, is another case I had, the *Buteau* case, where I

6    actually suspect that Mr. Fisher probably saw Mr. Buteau

7    commit his assault, because as the chair is coming down --

8    I mean, as the barrier is coming down to protect the

9    officers who were fleeing, Mr. Buteau threw a chair, it

10   bounced off the wall and hit an officer.  And that was the

11   only violence that he engaged in that day, so it strikes me

12   as a fairly similar case.

13         MR. HANYE:  I'm not familiar with that case.

14   I'm scared to ask what the sentence was.

15         THE COURT:  Yeah.

16         It was 22 months.

17         MR. HANYE:  Okay.

18         THE COURT:  And I'll tell you the other thing that

19   was very similar about that case to this case, 22 months was

20   a light sentence in that case.

21         One of the things that was similar to this case

22   was, and where I'm sure you're getting to this and I'm happy

23   to hear from others too if they want to address it, but

24   Mr. Buteau was somebody who had done an awful lot to

25   contribute to his community, and was, quite frankly,

1    somebody who I think was a very decent person who did a very

2    bad thing, and that does strike me to have some similarities

3    to this case as well.

4          MR. HANYE:  Well, so I think that's a perfect way

5    to describe Mr. Fisher.

6          I think for all the specific reasons in his

7    history, about the quality of the work he did as an officer,

8    the seriousness of it, the way it affected him personally,

9    all the other collateral consequences he'll suffer for his

10   first felony conviction, that it all supports a significant

11   variance downward from the Guidelines, certainly not the

12   46 months the government is recommending.

13         THE COURT:  All right.

14         Anything else you want to add?

15         MR. HANYE:  No, thank you, Your Honor.

16         THE COURT:  Would Mr. Fisher like to address the

17   Court?

18         Mr. Fisher, it's your right.

19         THE DEFENDANT:  Sure.

20         THE COURT:  And I'm also happy to hear from anyone

21   else who's here; if they want to address the Court, they're

22   welcome to.

23         MR. HANYE:  Your Honor, that's not the practice in

24   Massachusetts, so I hadn't prepared them.

25         THE COURT:  It's up to you.

1          MR. HANYE:  I'll talk to them after Mr. Fisher

2    speaks.

3          THE COURT:  Okay.  No, that's fine.

4          I regard this as a fairly informal proceeding.

5          And if there's anything anyone wanted to say,

6    I'd be happy to hear it.

7          But I also will not hold it against somebody if

8    they don't feel prepared and they're not ready to do that

9    today; that's fine too.

10          THE DEFENDANT:  Good afternoon, Your Honor.

11          THE COURT:  Good afternoon.

12          THE DEFENDANT:  Firstly, Your Honor, I want to

13    make my apology to the officer that was involved with this

14    particular incident.

15          Of all the people that I could have or may have

16    been involved with that day, to be involved with a police

17    officer working his activities, simply doing his job, is an

18    abomination for me being a former police officer.

19          Knowing that that officer was involved in a

20    situation that was riotous at best with his family at home

21    watching TV wondering what was going on, what was happening

22    with him.

23          I heard the government refer to the officer

24    stating that he had been assaulted so many times that day

25    that he had lost count.  I find that egregious.  And I find

1   my behavior and my activity towards that officer egregious

2   that day as well.

3          So my apologies, heartfelt, to the officer.

4   I don't know if he's-- I don't think he's here today, but I

5   do want to apologize to him.

6          THE COURT:  So that reminds me.

7          I did want to ask the government whether notice

8   was provided to the victim.

9          MR. NOHRIA:  Yes, Your Honor, it was.

10          THE COURT:  Okay.  Thank you.

11          THE DEFENDANT:  My second apology, Your Honor,

12   would be to the country and to the citizens of Washington,

13   D.C.

14          I used to have a saying when I was a police

15   officer when I'd catch somebody or find somebody doing

16   something inside the city and they didn't live in the city.

17   And I'd make a point to say to them, would you do this in

18   your town?  Would you do this where you live?

19          And here I am on January the 6th, I came to

20   Washington, D.C., and I disrespected the City of Washington,

21   D.C.

22          My activities and my actions discredited my oath

23   to the Constitution and to the country, and for that I'm

24   highly embarrassed as well.

25          I'd like to apologize to my family.  I thank them

1   for being here today; their support has been unwavering.

2   Something I'm not very proud of, to have stained my family

3   reputation with my actions and my activity.

4           So to my wife and my two beautiful children, who

5   couldn't be here today because they're at home helping out,

6   and to my sisters, my niece that made the trip down here to

7   support me, I say "thank you," and I apologize for any

8   discredit and disservice I've done to our family name.

9           Finally, Your Honor, I just would like to touch on

10  going forward.

11          After you impose your sentence today, I know I'll

12  be incarcerated; I know I will have to go through something

13  that I never thought I would in my life.

14          But when it's over, Your Honor, I'd like to get

15  back to the life that I knew before January 6th:  12 years

16  of sobriety from alcohol, mental health counseling to try

17  and better and further my life, the love of my family,

18  time spent with my family I will miss, and I will miss my

19  family while I'm away.  But I'll look forward to all those

20  things.

21          And I'll also look forward to returning to an

22  accepted member of society after the conclusion of my

23  incarceration.

24          Thank you, Your Honor.

25          THE COURT:  I appreciate that.  Thank you.

1            Do you want to take a moment to see if anyone else

2    wants to talk or say anything to the Court?

3            (Pause)

4            THE COURT:  I've read your letters, so feel no

5    obligation.

6            MR. HANYE:  Your Honor, that was what Mr. Fisher's

7    family expressed to me; that they felt like they had

8    expressed themselves in the letters.

9            THE COURT:  That's fine.

10           And they're here as well.  I appreciate that.

11           Anything else then from the defense, Mr. Hanye?

12           MR. HANYE:  No, Your Honor.  Thank you.

13           THE COURT:  All right.

14           Anything else, Mr. Nohria?

15           MR. NOHRIA:  No, Your Honor.

16           THE COURT:  All right.

17           Give me just a minute; I want to think about this

18   and then I will come back out and impose sentence.

19           COURTROOM DEPUTY:  All rise.

20           This Court is in recess.

21           (Recess from 4:30 p.m. to 4:36 p.m.)

22           COURTROOM DEPUTY:  All rise.  This Honorable Court

23   is again in session.  Please be seated and come to order.

24           THE COURT:  All right.

25           Well, I have assessed the particular facts of this

1    case in light of the relevant 3553(a) factors, including the

2    Sentencing Guidelines.

3            And I want to provide some remarks for the record,

4    and for you, Mr. Fisher, about why my consideration of those

5    factors, and in particular, the nature of the offense and

6    your history and your characteristics.

7            This case, to me, is just emblematic of how tragic

8    the events of January 6th were.

9            There were a lot of lives that were destroyed on

10   that day, and your life and your family's life is included

11   in that.

12           And you did some bad things that day and, the

13   consequences are harsh as a result of that.  But it's all,

14   to my mind, very tragic across the board.

15           And Mr. Hanye referred to your listening to the

16   news and misinformation that you were receiving in the news.

17           And there were a lot of people who contributed to

18   the events of that day.  And some of those people may have

19   done so for their own profit motives or for their own

20   self-interests.  It's pretty clear that it was not for the

21   interest of the country, what was going on that day.  And

22   there were a lot of people that were influenced, and you're

23   among those folks.

24           And it's very hard to remind yourself and to put

25   these cases in context, because you take people, who I think

1    are fundamentally decent people, and maybe better than

2    fundamentally decent people, people who have done a lot to

3    help people in their lives, and you put them in this

4    circumstance where they commit a bad act.  And they commit a

5    bad act in a context which is, and will be, marked in

6    history as one of the low points in our nation.

7              And I've commented at past sentencings about the

8    fact that, not even in the midst of the Civil War when

9    Lincoln had his second inaugural, did anything like this

10   happen.  The country was at war.

11             And I recently came across an exchange of letters

12   from even before the Civil War.

13             And the country was in a state of unraveling at

14   that point.

15             And the country -- and our country currently is

16   not in good shape; we're not in as bad of shape,

17   thank goodness, as the country was on the eve of the

18   Civil War.

19             And Abraham Lincoln had been elected President.

20             There was concern about how Lincoln could get to

21   the District of Columbia, how he could take the oath,

22   whether -- and there were plots, as we know, to assassinate

23   Lincoln, because people just didn't like the result of the

24   election.  And they didn't like what had happened, and so

25   they were looking for some ways to stop this.

1          And William Seward, who was to become a member of

2    Lincoln's cabinet, wrote to Lincoln late December of 1860.

3          And he wrote to him.  And he said, "There's a

4    feverish excitement here, which awakens all kinds of

5    apprehensions of popular disturbance and disorder connected

6    with your assumption of the government.

7          "I do not entertain these apprehensions myself.

8    But it is worth consideration, a peculiar circumstance that

9    accidents elsewhere may aggravate opinion here.

10          "Habit has accustomed the public to anticipate the

11    arrival of the President-Elect in the city about the middle

12    of February" --

13          The inauguration was later at that point;

14    it wasn't until March, I believe.

15          "And even my persons could expect to organize

16    their demonstration for that time.

17          "I beg leave to suggest whether it would not be

18    well for you keeping your own counsel to be prepared to drop

19    into the city a week or ten days earlier; the effect would

20    probably be reassuring and soothing."

21          And Lincoln writes back to Seward, and he says,

22    "My dear sir, yours without signature was received last

23    night;" his letter.

24          "I have been considering your suggestion as to my

25    reaching Washington somewhat earlier than is usual.

1           "It seems to me the inauguration is not the most

2    dangerous point for us.  Our adversaries have us now clearly

3    at a disadvantage.

4           "On the second Wednesday of February when the

5    votes should be officially counted," that is, the

6    certification of the election, "if the two Houses refuse to

7    meet at all or meet without a quorum of each, where shall we

8    be?  I do not think this counting is constitutionally

9    essential to the election, but how are we to proceed in the

10   absence of it?"

11          So Abraham Lincoln, on the eve of the Civil War,

12   where he knows that there are plots to assassinate him, his

13   greatest concern at that moment is what will happen with the

14   certification of the vote, and what would happen if for some

15   reason Congress wasn't able or didn't meet and didn't

16   certify the vote, what would and come of the country?

17          And one has to step back and think about what

18   happened that day.  Not that day.  It didn't happen,

19   in fact.  The country didn't sink to that low back in 1861,

20   but we did sink to that low on January 6th.

21          And so I think, as decent and as otherwise good

22   people who assembled that day may be, they participated in

23   something that is just staggering in its proportion.

24          As I said, it was Lincoln's greatest worry at that

25   point that something like this might happen.

65

1        And what would have happened in this country had

2    their been greater success in the attacks on the Capitol

3    that day?

4        And what does it say about our country?  And what

5    does it say to the rest of the world on what sort of country

6    we have and how do we go and convince countries around the

7    world that democracy is the way forward when this is the way

8    people in this country behaved?

9        And I don't put all of this on your shoulders.

10    Not only were there many, many people there and there were

11    people who engaged in conduct that was far worse than your

12    conduct, and there were people there who engaged in conduct

13    that was not that bad -- not as bad as yours.

14        And there were people who were responsible who

15    were not there at all, who may have been feeding the false

16    stories about the election, feeding the frenzy for their own

17    personal benefits.

18        But it was, and will remain, one of the low points

19    in this country's history.

20        And I think we hopefully can step back from this

21    and take some lessons and remember that what it means to be

22    patriotic, what it means to love your country, what it means

23    to be a citizen is to avoid those type of situations.

24        We all disagree about many things.  We disagree

25    about elections, we disagree about court cases.  There are

1    lots of things we disagree about.  But what make us

2    Americans and what makes us part of a single community is

3    that we agree to disagree.

4           And we agree to accept results of elections,

5    we agree to accept results of judicial proceedings, and,

6    without that, the country falls apart; we don't actually

7    have a country anymore.  And those are the stakes of what we

8    are talking about.

9           When I preside over the naturalization ceremonies

10   here at the court, I define "citizenship" for those who are

11   becoming citizens.  And I say the word "citizenship" means

12   being part of a community.

13          And we're a community of over 300 million people.

14   And we have to learn how to live together in that community

15   and not to take violence as a means of promoting our own

16   interests, but, rather, to think more fundamentally about

17   the community.

18          Turning to the characteristics of the offender

19   here, Mr. Fisher, the letters that I received on behalf of

20   Mr. Fisher are among the most impressive that I've received

21   in these cases on January 6th.  I don't know if they were

22   the very most, but they're certainly among the most

23   impressive.

24          I think as Mr. Hanye himself recognized, that

25   Mr. Fisher's service as a law enforcement officer cuts two

1   ways.

2          I don't know how easily they give out

3   accommodations in Boston, but you sure had quite a few of

4   them and were highly respected as a law enforcement.

5          And I was struck by how far you went out of your

6   way as a law enforcement to be caring and considerate of

7   other human beings, which was so different from the person

8   that we saw on January 6th.

9          But also the letters from family members and

10  others.

11         And I know you've had your difficulties along the

12  way.

13         I have no doubt that you suffer from Posttraumatic

14  Stress Disorder, and that may well have contributed to your

15  actions that day.

16         And I know that you've struggled with alcoholism

17  and that it's a continuing struggle for you.  And I'm sure

18  there have been low points for you and your family and

19  dealing with that addiction.

20         But I also was very much struck by the love and

21  respect that you've engendered in your community, and the

22  number of times you've gone out of your way just to help

23  people, the fine children you seem to have raised, and all

24  of that is something that you should be proud of.

25         With respect to the types of sentences that are

1    available, as I indicated, the Guidelines Range is between

2    27 and 30 months.

3            And the government has recommended a sentence of

4    46 months.  Your lawyer has recommended that I impose six

5    months' incarceration, followed by a period of supervised

6    release, which would include, as a condition of supervised

7    release, six months of home incarceration.

8            I've thought long about this decision, and I think

9    it is a very difficult one.

10           I've also tried my best to be as consistent as

11   I can, and I think the other judges have done as well

12   in sentencing, in these cases.

13           And what I'm going to do is I am going to impose a

14   sentence of 22 months of incarceration, followed by two

15   years of supervised release, along with an order of $2,000

16   of restitution and the special assessment.

17           And I have to say, it pains me to impose a

18   sentence that is that long, because I know it will be

19   difficult for you and for your family, and that this was one

20   bad moment in a life that has otherwise been well lived.

21           But I have to both think about consistency, and as

22   I will tell you, in the *Buteau* case, I had a similar

23   reaction to it, where I felt that Mr. Buteau had made a

24   mistake that day but otherwise had been -- lived a very good

25   life and had been somebody who had contributed a lot to his

1    community and done a lot for others.

2            And although his Guidelines Range was a little bit

3    higher because I did apply the enhancement based on the

4    dangerous weapon and because he actually threw the chair,

5    it's not clear to me how much -- he did hit an officer with

6    the chair; it bounced the off the wall before it hit him.

7            But I also, on the other hand, have to consider

8    the fact that your actions with respect to the officer here

9    was a little bit more directed at that particular officer,

10   was directed at actually impeding him in trying to protect

11   the Capitol.  And also the fact that you're somebody who, as

12   a police officer, a former police officer, appreciates the

13   difficulty that all those police officers were facing that

14   day.  So I think, as a matter of fairness, that the same

15   sentence, on balance, is the right sentence to impose.

16           And I think it's also -- although I believe and

17   certainly hope far more necessary to ensure that you don't

18   engage any future criminal conduct, I think that the general

19   deterrence here is essential and that people have to

20   understand that there will be harsh consequences for actions

21   of this nature.

22           So with respect to Counts 1 and 2, the Court

23   imposes a sentence of 22 months of incarceration.

24           With respect to Counts 3 through 5, I impose a

25   sentence of 12 months' incarceration.

1          And Counts 6 through 8, I impose a sentences of

2    six months of incarceration.

3          All of those sentences shall run concurrently.

4          I also impose a sentence on Counts 1 and 2 of

5    24 months of supervised release; on Counts 3 through 5,

6    I impose a sentence of 12 months of supervised release.

7          I'll order that you pay a Special Assessment of

8    $305, and I order that you pay restitution in the amount of

9    $2,000.

10          I will recommend that you serve your period of

11    incarceration at FMC Devens.

12          While on supervision, you shall abide by the

13    following mandatory conditions, as well as all discretionary

14    conditions recommended by the Probation Office in part D

15    sentencing options of the Presentence Report, which are

16    imposed to establish the basic expectations for your conduct

17    while on supervision.

18          The mandatory conditions include:

19          You must not commit another federal, state,

20    or local crime;

21          You must not unlawfully possess a controlled

22    substance;

23          You must refrain from any unlawful use of a

24    controlled substance;

25          You must submit to one drug test within 15 days of

1    placement on supervision, and at least two periodic drug

2    tests thereafter as determined by the Court;

3              You must cooperate in the collection of DNA as

4    directed by the probation officer;

5              And you must make restitution in accordance with

6    18 U.S.C. Sections 3663 and 3663(a) or any other statute

7    authorizing a sentence of restitution.

8              You should comply with the following special

9    conditions:

10             Mental health assessment and treatment;

11             You must participate in a mental health assessment

12   and treatment program and follow the rules and regulations

13   of that program.

14             The probation officer, in consultation with the

15   treatment provider, will supervise your participation in the

16   program.

17             Financial information disclosure.  You must

18   provide the probation officer access to any requested

19   financial information and authorize the release of any

20   financial information.

21             The Probation Office shall share financial

22   information with the United States Attorney's Office.

23             I'm not going to order that you pay a fine.

24             You're ordered to make restitution in the amount

25   of $2,000.  The Court determines that you do not have the

1    ability to pay interest, and, therefore, I waive any

2    interest or penalties that may accrue on the balance.

3             You must pay the balance of any restitution owed

4    at a rate of not less than -- do you have a suggestion?

5             MR. HANYE:  Is -- like a monthly payment?

6             THE COURT:  Yes, I'm sorry.

7             How much per month?

8             MR. HANYE:  May I have a moment?

9             THE COURT:  Yes.

10            (Defense counsel and the defendant conferred off

11   the record.)

12            MR. HANYE:  Mr. Fisher intends to pay that upfront

13   as soon as possible.

14            THE COURT:  Okay.

15            Well, I'll just say then $500 each month.

16            MR. HANYE:  Okay.

17            THE COURT:  That's fine.

18            The restitution payment shall be made to the Clerk

19   of the Court for the United States District Court in the

20   District of Columbia for disbursement to the following

21   victim:  Architect of the Capitol, Office of the Chief

22   Financial Officer, Ford House Office Building, Room H205B,

23   Washington, D.C. 20015.

24            The financial obligations are immediately payable

25   to the Clerk of the Court for the United States

73

1  District Court at 333 Constitution Avenue, Northwest,

2  Washington, D.C. 20001.

3       Within 30 days of any change of address, you shall

4  notify the Clerk of the Court of the change until such time

5  as the financial obligation is paid in full.

6       The Probation Office shall release the Presentence

7  Investigation Report to all appropriate agencies, which

8  includes the United States Probation Office, in the approved

9  district of residence in order to execute the sentence of

10 the Court.

11      Treatment agencies shall return the Presentence

12 Report to the probation officer upon the defendant's

13 completion or termination from treatment.

14      (Pause)

15      THE COURT:  I don't think I've ever done this

16 before.

17      But I know once I leave the bench, that my

18 sentence is final, and I really am very moved by

19 Mr. Fisher's true sense of remorse, and I actually am going

20 to impose a sentence of 20 months instead of the 22 months.

21      I know that two months may not seem like a lot,

22 but I also know that every day that you're in jail is a day

23 that you're away from your family.

24      And I do feel as though that Mr. Fisher is

25 fundamentally remorseful about his actions that day in a

1    manner that does deserve some additional credit than what I

2    previously gave.

3            So I'm going to actually make the sentence

4    20 months of incarceration, but everything else will stay

5    the same of what I've said.

6            You can appeal your conviction to the U.S.

7    Court of Appeals for the D.C. Circuit if you believe that

8    your guilty plea was somehow unlawful or involuntarily or if

9    there's some other fundamental defect in the proceeding that

10   was not waived by your guilty plea.

11           Pursuant to 18 U.S.C. Section 3742(a), you also

12   have a statutory right to appeal your sentence to the

13   D.C. Circuit under certain circumstances, including if you

14   think the sentence was imposed in violation of the law, was

15   imposed as a result of incorrect application of the

16   Sentencing Guidelines or is more severe than the maximum

17   established in the Guidelines Range.  You also may appeal

18   your sentence if you believe that you received ineffective

19   assistance of counsel at sentencing.

20           And pursuant to 28 U.S.C. Section 2255, you also

21   have a right to challenge the conviction that the Court's

22   entered and the sentence impose to the extent permitted by

23   statute.

24           Any notice of appeal must be filed within 14 days

25   of entry of judgment or within 14 days of the filing of a

1    notice of appeal by the government.

2              If you are unable to afford the cost of an appeal,

3    you may request permission from the Court to file an appeal

4    without cost to you.

5              And on appeal, you may also apply for

6    court-appointed counsel.

7              For the record, I just want to note that my

8    reasons for varying downward are the defendant's

9    substantial, and, I believe, heartfelt remorse.

10             Oftentimes people are remorseful because of the

11   consequences of what they've done to themselves and their

12   family, and I feel as though that, in Mr. Fisher's case,

13   that remorse really does extend to what he did to the

14   officer that day and that he truly is heartbroken about what

15   he did that day, and I think it also truly extends to the

16   country.

17             And so remorse is a substantial consideration for

18   me, but I've also considered Mr. Fisher's health conditions

19   in reaching that conclusion of substantial family support.

20             And although, as I've indicated, I think that his

21   service as a police officer cuts both ways, I think that his

22   service as a police officer was extraordinary and that he

23   deserves some additional credit for that, and so those are

24   my reasons for the downward variance.

25             Pursuant to the D.C. Circuit's decision in

1    *United States versus Hunter*, I need to ask whether there are

2    any objections to the sentence imposed that have not already

3    been noted for the record.

4            Does the government have any objections not noted

5    for the record?

6            MR. NOHRIA:  No, Your Honor.

7            I would only inquire as to Count 3, if the

8    Court -- cross-reference -- if the Court would have come to

9    the same conclusion of understanding --

10           THE COURT:  I would -- I don't think it matters.

11           MR. NOHRIA:  I know but...

12           THE COURT:  And let me just think about this for a

13   second.

14           Well, Count 3, I did apply -- I mean, I agreed

15   with you as to Count 3.

16           I think it was Count 4 where it was the question,

17   right?

18           MR. NOHRIA:  Well, that's what I would be asking,

19   which is, with respect to Count 3, you applied the

20   cross-reference.

21           THE COURT:  I did, yes.

22           MR. NOHRIA:  And whether you would have imposed

23   the same sentence even if you had not applied the

24   cross-reference.

25           THE COURT:  I see.

```
1              Yes.

2              So the answer is yes, I would have imposed the

3    same sentence even had I not done that.

4              And even if I had not applied the -- maybe this is

5    the question you're asking, I was getting ready to say this

6    as well, is, regardless of whether I applied that additional

7    point or not under the Guidelines, my sentence would be

8    exactly the same.

9              And I think that it's fairly clear from the

10   reasons that I've given and the explanation in particular,

11   the comparison to the Buteau case, which I think, to my

12   mind, is important, and where he was in a higher range.

13             So I would have imposed the same sentence even

14   without that additional point.

15             MR. NOHRIA:  Thank you, Your Honor.

16             The government has no objections.

17             THE COURT:  Okay.  Thank you.

18             Any objections from the defense?

19             MR. HANYE:  No objections that we've not

20   previously argued.

21             THE COURT:  Okay.

22             Anything else that you would like to address

23   before we adjourn?

24             MR. HANYE:  No, thank you, Your Honor.

25             THE COURT:  And any objection to allowing the
```

```
 1  defendant to self-surrender?

 2            MR. NOHRIA:  No, Your Honor.

 3            THE COURT:  Okay.

 4            So I will direct then, Mr. Fisher, that you remain

 5  subject to the same conditions of your release that you've

 6  been subject to prior to sentencing, and those will remain

 7  in place pending your incarceration.

 8            And the Probation Office, I think, will be in

 9  touch with you about the details of what -- the surrender;

10  is that the way it will work?

11            PROBATION OFFICER:  Yes, Your Honor.  I'll talk to

12  him right after the hearing.

13            THE COURT:  Okay.

14            Anything else then?

15            MR. NOHRIA:  Not from the government, Your Honor.

16            MR. HANYE:  No, thank you, Your Honor.

17            THE COURT:  All right.

18            Well, I wish you luck, Mr. Fisher.

19            These are painful cases, and this is, to my mind,

20  in particular, a painful one.

21            So hopefully, as a country, we move past this and

22  we don't have the same thing like this ever again.

23            So thank you.

24            THE DEFENDANT:  Thank you, Your Honor.

25            COURTROOM DEPUTY:  All rise.
```

1          This Court is adjourned.

2          (Proceedings concluded at 5:03 p.m.)

## C E R T I F I C A T E

I, William P. Zaremba, RMR, CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.


Date:__September 26, 2024___    _____

William P. Zaremba, RMR, CRR

COURTROOM
DEPUTY: [4] 3/2 60/19
60/22 78/25
MR. HANYE: [43] 3/10
5/3 6/16 6/22 7/1 10/13
17/23 20/4 20/6 21/4
31/21 32/4 32/13 33/1
33/18 35/10 35/16 36/4
36/8 36/15 36/18 39/5
39/13 40/24 41/10
41/18 46/21 54/5 55/13
55/17 56/4 56/15 56/23
57/1 60/6 60/12 72/5
72/8 72/12 72/16 77/19
77/24 78/16
MR. NOHRIA: [58] 3/7
4/22 5/1 6/13 10/16
11/1 11/5 11/7 11/18
11/20 12/5 13/1 14/15
14/22 16/4 16/6 16/16
17/1 17/19 21/8 21/13
24/6 24/19 25/6 25/20
25/25 26/9 26/19 28/22
29/2 29/10 29/16 30/1
30/4 30/17 30/20 30/25
31/4 31/11 31/17 33/4
33/7 33/14 34/23 39/3
41/7 41/17 42/25 43/2
58/9 60/15 76/6 76/11
76/18 76/22 77/15 78/2
78/15
PROBATION
OFFICER: [11] 26/23
27/7 27/10 27/21 28/4
28/11 28/14 36/23 37/5
37/13 78/11
THE COURT: [123]
THE DEFENDANT: [9]
7/5 7/7 7/10 7/13 56/19
57/10 57/12 58/11
78/24

$

$1,000 [2] 8/20 8/25
$10 [1] 40/17
$10,000 [1] 39/19
$100 [1] 40/16
$100,000 [3] 8/15 9/1
39/20
$2,000 [9] 40/22 41/1
43/5 46/17 46/25 46/25
68/15 70/9 71/25
$25 [1] 40/17
$250,000 [2] 8/5 8/10
$305 [3] 40/18 41/25
70/8
$5,000 [1] 7/25
$500 [1] 72/15

0

02130 [1] 1/19

1

111 [4] 3/21 8/8 12/11
29/4
12 [2] 59/15 69/25
12 months [1] 70/6
14 [9] 9/12 25/14 25/24
26/7 30/14 30/16 30/18
38/3 38/16
14 days [2] 74/24
74/25
14 for [1] 25/3
15 [5] 18/19 26/1 52/18
53/12 70/25
16th [1] 6/8
17 [2] 10/7 10/9
1752 [16] 3/24 4/2 4/5
8/13 8/19 8/24 9/19
24/21 25/19 27/16
28/21 28/22 28/24 33/8
34/8 34/14
18 [4] 3/20 8/23 38/24
39/18
18 U.S.C [18] 3/17 3/23
4/1 4/4 6/3 8/3 8/8 8/13
8/19 9/19 28/23 40/1
40/10 40/15 40/19 42/5
71/6 74/11
1860 [1] 63/2
1861 [1] 64/19
1B1.1 [3] 11/8 16/5
16/12

2

20 [5] 9/15 25/13 30/21
30/22 73/20
20 months [1] 74/4
20001 [3] 1/15 2/6 73/2
20015 [1] 72/23
2015 [1] 51/14
202 [2] 1/16 2/7
2020 [1] 51/18
2024 [3] 1/5 6/8 80/7
21 [3] 26/1 38/15 38/19
22 [5] 55/16 55/19
68/14 69/23 73/20
223-8061 [1] 1/19
2255 [1] 74/20
23-305 [2] 1/4 3/3
231 [2] 3/18 8/3
24 [3] 1/5 10/10 41/24
24 months [1] 70/5
26 [2] 35/22 80/7
27 [1] 68/2
28 [1] 74/20
2A2.2 [1] 16/11

3

3-point [1] 38/21
30 [3] 10/10 39/1 68/2
30 days [1] 73/3
30 seconds [1] 35/1
300 [1] 66/13
3013 [1] 40/15
305 [2] 1/4 3/3
3249 [1] 2/7
333 [2] 2/6 73/1
344-5763 [1] 1/16
354-3249 [1] 2/7
3553 [6] 6/4 20/25
39/24 42/5 49/7 61/1
3561 [1] 40/10
3583 [1] 40/1

14 [9] 9/12 25/14 25/24
71/6
3742 [1] 74/11
3:07 [1] 1/6
3C1.1 [1] 45/4
3D1.4 [1] 33/14
3E1.1 [1] 38/22

4

40 [3] 4/7 4/9 4/12
46 [4] 43/4 44/23 46/16
68/4
46 months [1] 56/12
4:30 [1] 60/21
4:36 [1] 60/21

5

51 [1] 1/18
5104 [3] 4/7 4/10 4/13
52 [1] 48/20
5763 [1] 1/16
5:03 [1] 79/2
5G1.2 [2] 31/1 36/24

6

6.713 [1] 1/15
601 [1] 1/14
617 [1] 1/19
6th [10] 44/18 46/8
52/12 53/2 58/19 59/15
61/8 64/20 66/21 67/8

8

8061 [1] 1/19

A

abide [1] 70/12
ability [1] 72/1
able [4] 5/10 13/17
48/17 64/15
abomination [1] 57/18
about [48] 5/9 5/17
7/12 9/7 11/15 26/17
27/3 27/3 27/11 28/3
28/6 28/7 28/20 31/10
31/12 32/1 34/25 36/2
36/15 38/4 38/6 39/11
51/17 52/9 52/13 52/16
55/19 56/7 60/17 61/4
62/7 62/20 63/11 64/17
65/4 65/16 65/24 65/25
65/25 66/1 66/8 66/16
68/8 68/21 73/25 75/14
76/12 78/9
above [5] 26/7 31/14
38/4 50/6 80/4
above-titled [1] 80/4
Abraham [2] 62/19
64/11
absence [1] 64/10
accept [3] 7/16 66/4
66/5
acceptance [1] 38/21
accepted [2] 10/2
59/22
access [1] 71/18
accidents [1] 63/9
accommodations [1]
67/3

accomplishment [1]
71/5
accordance [1] 71/5
according [3] 9/17
10/6 39/6
account [1] 46/7
accounted [1] 46/13
accrue [1] 72/2
accustomed [1] 63/10
achieve [4] 13/13
13/20 14/2 44/11
acknowledges [2] 54/8
54/15
across [3] 22/10 61/14
62/11
act [5] 20/23 28/25
50/23 62/4 62/5
acted [2] 21/23 23/24
action [4] 13/3 14/5
23/1 45/9
actions [14] 15/15 22/5
33/22 45/1 45/2 45/3
45/24 46/3 58/22 59/3
67/15 69/8 69/20 73/25
activities [1] 51/23
57/17 58/22
activity [2] 58/1 59/3
acts [1] 4/8
actual [2] 36/20 49/10
actually [21] 6/5 11/25
12/3 13/8 15/19 16/10
22/13 22/23 23/1 23/5
23/25 32/6 53/9 55/3
55/4 55/6 66/6 69/4
69/10 73/19 74/3
add [8] 9/24 33/4 33/10
38/9 38/16 38/18 41/4
56/14
added [1] 27/20
addiction [1] 67/19
adding [2] 24/14 24/16
addition [3] 40/7 42/15
48/21
additional [7] 4/24
27/20 38/9 74/1 75/23
77/6 77/14
address [8] 5/25 24/11
44/20 55/23 56/16
56/21 73/3 77/22
addressed [1] 17/6
adequate [2] 31/6
42/12
adjourn [1] 77/23
adjourned [1] 79/1
adjusted [3] 9/15 9/22
38/15
adjustment [4] 10/6
10/19 25/8 45/15
admits [1] 33/24
admitted [2] 12/4
12/11 16/19
adversaries [1] 64/2
advisory [1] 7/20
affect [1] 27/19
affected [1] 56/8
afford [2] 42/12 75/2
after [13] 15/16 19/15
32/15 34/17 43/8 44/14
46/1 46/9 51/13 57/1

afternoon [7] 3/7 3/9
3/10 3/13 3/15 57/10
57/11
afterwards [1] 53/13
again [13] 15/4 15/13
17/3 30/6 43/16 43/24
44/10 44/19 44/19
44/19 46/13 60/23
78/22
against [6] 13/7 13/8
14/3 14/25 52/20 57/7
age [2] 47/16 53/22
agencies [2] 73/7
73/11
aggravate [1] 63/9
aggravating [2] 5/21
49/13
aggravation [1] 49/16
aging [1] 48/22
agree [10] 10/12 10/24
36/18 38/8 39/5 40/25
49/13 66/3 66/4 66/5
agreed [1] 76/14
agrees [4] 10/1 19/3
29/6 38/20
ahead [1] 25/5
aided [1] 2/8 10/2
aimlessly [4] 18/21
23/18 34/3 52/14
alarm [1] 43/20
alcohol [1] 59/16
alcoholism [1] 67/16
all [60] 3/13 5/4 5/8
6/17 6/23 15/20 15/24
17/21 20/11 21/6 21/19
25/19 25/21 27/4 28/18
28/21 29/22 30/24
31/20 34/11 34/21
37/14 38/13 38/14
39/14 39/15 40/18
41/11 46/15 51/11 52/9
52/11 53/4 53/18 53/21
54/11 56/6 56/9 56/10
56/13 57/15 59/19
60/13 60/16 60/19
60/22 60/24 61/13 63/4
64/7 65/9 65/15 65/24
67/20 68/10 69/7 69/11
69/16 70/4 73/22 74/11
74/17 74/20 75/5 75/15
75/18
alcohol [1] 59/16
All right [4] 6/17 17/21
39/14 78/17
allocution [1] 12/3
allowing [1] 77/25
along [3] 46/24 67/11
68/15
already [2] 50/19 76/2
also [37] 12/9 12/20
12/22 15/15 16/12
18/18 19/7 37/25 40/25
42/12 45/25 47/1 47/5
48/12 48/20 48/22
50/13 50/24 51/3 52/1
56/20 57/7 59/21 67/9
67/20 68/10 69/7 69/11
69/16 70/4 73/22 74/11
74/17 74/20 75/5 75/15
75/18

**A**

altercation [2] 19/11 19/15
although [5] 30/14 36/2 69/2 69/16 75/20
always [2] 18/5 26/11
am [6] 10/11 30/14 58/19 68/13 73/18 73/19
AMERICA [2] 1/3 3/4
Americans [1] 66/2
among [5] 42/20 48/9 61/23 66/20 66/22
amount [3] 44/10 70/8 71/24
ample [1] 18/24
analogous [2] 54/24 55/4
analysis [2] 27/19 36/13 38/18
Andre [2] 2/2 27/8
angry [1] 52/13
another [10] 15/20 27/17 30/13 34/8 44/17 45/10 45/11 48/1 55/5 70/19
answer [2] 26/5 77/2
anticipate [1] 63/10
anxiety [2] 48/14 51/24
anxious [1] 5/6
any [42] 4/24 5/9 5/14 5/21 6/10 6/11 6/20 6/20 9/7 9/24 10/8 11/8 17/17 18/11 18/9 18/9 24/12 24/14 27/20 46/5 47/9 47/20 53/21 54/15 59/7 69/18 70/23 71/6 71/18 71/19 72/1 72/3 73/3 74/24 76/2 76/4 77/18 77/25
anybody [1] 23/15
anymore [1] 66/7
anyone [6] 5/25 21/10 26/20 56/20 57/5 60/1
anything [16] 17/15 21/3 23/10 28/18 34/21 41/4 41/8 41/9 56/14 57/5 60/2 60/11 60/14 62/9 77/22 78/14
apart [1] 66/6
apologies [1] 58/3
apologize [4] 44/15 58/5 58/25 59/7
apology [2] 57/13 58/11
appeal [8] 74/6 74/12 74/17 74/24 75/1 75/2 75/3 75/5
Appeals [1] 74/7
appear [3] 23/9 52/5 53/2
APPEARANCES [2] 1/12 2/1
appears [1] 53/10
applicable [1] 44/22
application [9] 10/18 11/8 13/5 13/18 15/13

applied [4] 76/19 76/23 77/4 77/6
applies [3] 27/22 30/8 36/16
apply [18] 5/20 7/21 7/22 18/3 20/12 24/2 24/20 25/10 27/18 27/22 31/23 38/3 38/6 39/22 40/6 69/3 75/5 76/14
applying [5] 13/12 14/3 18/8 28/20 30/14
appointed [1] 75/6
appreciate [6] 28/6 36/11 36/21 54/4 59/25 60/10
appreciates [1] 49/12
apprehend [2] 15/17 49/23
apprehended [1] 50/15
apprehending [3] 13/24 17/10 45/23
apprehensions [2] 63/5 63/7
approach [1] 3/5
appropriate [7] 5/17 19/17 40/19 41/22 49/24 54/16 73/7
approved [1] 73/8
approximately [1] 51/14
Architect [1] 72/21
are [42] 4/24 5/3 5/9 5/16 6/10 7/8 9/3 15/2 21/25 22/3 25/19 28/20 32/1 34/11 34/12 36/20 43/14 48/8 49/2 49/6 49/14 49/25 54/1 54/19 54/23 61/13 62/1 64/9 64/12 65/25 66/7 66/8 66/10 66/20 67/25 70/15 72/24 75/2 75/8 75/10 75/23 76/1 78/19
areas [2] 48/16 50/2
argued [2] 19/14 77/20
argues [1] 30/11
arguing [2] 13/12 19/7
argument [9] 12/10 12/15 16/18 16/25 20/14 33/17 33/19 35/24 44/21
arises [1] 19/22
armor [1] 23/17
around [11] 13/10 18/20 23/18 32/22 34/3 43/14 43/16 45/25 48/18 52/19 65/6
arrival [1] 63/11
articulate [1] 18/7
as [115]
aside [1] 27/6
ask [5] 6/10 21/9 55/14 58/7 76/1
asked [2] 21/10 21/11
asking [5] 4/21 45/13 47/1 76/18 77/5
assassinate [2] 62/22

assault [11] 18/25 19/19 32/7 32/15 34/10 45/1 45/4 45/24 52/20 53/10 55/7
assaulted [5] 21/15 32/11 37/21 46/4 57/24
assaulting [2] 3/19 8/6
assaults [2] 45/10 45/10
assembled [1] 64/22
assessed [1] 60/25
assessment [5] 41/25 68/16 70/7 71/10 71/11
assessments [1] 40/16
assist [3] 15/23 45/25 50/7
assistance [4] 7/9 35/20 50/8 74/19
assume [1] 22/8
assumption [1] 63/6
attack [1] 50/13
attacks [2] 48/14 65/2
attempting [1] 49/22
attended [2] 43/7 46/10
attention [3] 22/17 24/2 28/7
Attorney's [2] 1/14 71/22
audience [1] 51/25
authorize [1] 71/19
authorized [1] 37/8
authorizing [1] 71/7
available [3] 42/22 48/8 68/1
Avenue [2] 2/6 73/1
avoid [3] 42/19 48/16 65/23
avoiding [1] 10/4
awakens [1] 63/4
aware [1] 47/4
away [5] 32/21 44/15 45/25 59/19 73/23
awful [2] 55/2 55/24

**B**

back [16] 14/7 14/24 15/11 15/12 15/19 19/18 27/23 30/19 44/15 44/16 59/15 60/18 63/21 64/17 64/19 65/20
bad [9] 45/10 56/2 61/12 62/4 62/5 62/16 65/13 65/13 68/20
balance [6] 69/15 72/2 72/3
barrier [1] 55/8
base [4] 9/11 9/12 9/19 30/13
Base Offense [1] 9/12
based [10] 5/20 9/24 27/4 34/2 38/18 39/10 42/1 49/16 52/9 69/3
basic [1] 70/16
basically [3] 11/1 12/10 37/1

basis [3] 27/24 41/22 41/22
bat [1] 13/16
battle [1] 23/17
be [73] 3/2 5/10 5/12 9/10 9/12 9/12 10/10 10/18 17/5 19/7 22/1 22/8 22/9 22/17 24/2 24/22 25/3 25/13 25/13 25/14 26/11 26/14 30/15 30/21 33/9 33/19 35/4 35/11 41/21 42/23 44/21 44/23 46/24 47/1 47/2 47/10 48/4 48/17 48/18 49/3 49/5 49/23 51/22 52/5 52/16 52/17 53/2 54/16 57/6 57/16 58/12 59/5 59/12 60/23 62/5 63/17 63/18 63/20 64/5 64/8 64/22 65/21 65/23 67/6 67/24 68/10 68/18 69/20 72/18 74/24 76/14 76/18 77/7 78/8
bears [2] 17/25 51/7
beautiful [1] 59/4
became [2] 51/22 52/7
because [62] 7/23 9/10 9/13 9/20 9/23 10/19 12/3 12/10 12/23 13/5 13/14 18/15 19/2 19/9 19/22 19/23 20/1 21/20 22/3 22/19 22/21 23/1 24/13 24/16 27/18 29/12 29/24 31/23 31/25 33/9 34/5 34/5 34/12 34/15 38/4 38/7 38/16 38/16 38/21 39/21 40/12 40/14 44/6 45/9 47/11 47/17 48/2 48/18 50/25 51/1 51/8 52/3 52/10 53/11 55/7 59/5 61/25 62/23 68/18 69/3 69/4 75/10
become [1] 63/1
becomes [3] 30/14 34/4 49/8
becoming [1] 66/11
beds [1] 48/8
been [22] 21/14 22/18 22/20 26/11 42/21 46/6 47/5 47/17 53/5 57/16 57/24 59/1 62/19 63/24 65/2 65/15 67/18 68/20 68/24 68/25 76/3 78/6
before [11] 1/10 5/11 47/7 47/17 51/11 51/18 59/15 62/12 69/6 73/16 77/23
beforehand [3] 18/19 34/17 53/12
beg [1] 63/17
begins [1] 51/19
begun [1] 50/20
behalf [3] 3/8 3/12 66/19
behaved [1] 65/8
behavior [3] 23/11 51/22 58/1

behind [10] 13/21 15/6 15/20 35/3 37/23 44/3 44/5 44/18 45/9 45/15
being [17] 6/17 12/16 13/7 13/17 27/9 32/11 37/21 48/9 49/19 51/16 51/25 54/3 54/4 54/19 57/18 59/1 66/12
beings [1] 67/7
believe [12] 24/7 47/24 49/14 53/19 54/19 54/20 54/25 63/14 69/16 74/7 74/18 75/9
believes [2] 14/1 29/13
bench [1] 73/17
benefits [1] 75/1
best [2] 57/20 68/10
better [3] 51/4 59/17 62/1
between [8] 10/10 20/18 25/12 39/19 40/4 40/11 52/4 68/1
bewilderment [1] 53/15
beyond [1] 50/6
bit [4] 12/1 31/22 66/9 69/9
blaring [1] 43/20
block [2] 12/13 15/23
board [1] 61/14
bodily [16] 11/12 11/17 12/13 12/17 12/22 13/11 15/21 16/15 16/19 16/23 16/24 18/12 18/14 21/24 22/14 23/25
body [3] 13/5 14/3 23/17
boil [1] 30/6
bombing [1] 50/11
bombs [1] 50/16
borne [1] 51/11
Boston [3] 1/19 50/10 67/3
both [10] 6/18 15/2 24/22 34/8 46/9 49/12 50/11 54/21 68/21 75/21
both 1752 [1] 34/8
bottom [1] 5/7
bounced [2] 55/10 69/6
Boylston [1] 50/11
brain [1] 52/5
breach [1] 43/13
brief [2] 19/15 19/19
briefly [2] 20/13 34/23
bringing [1] 28/7
brings [1] 9/2
brought [1] 53/16
Bruno [2] 54/19 54/25
building [26] 3/23 4/1 4/4 4/6 4/9 4/12 8/12 8/18 8/23 9/21 24/24 32/21 32/25 35/3 35/9 36/3 39/12 43/10 43/11 43/13 43/16 43/19 43/21 45/21 46/5 72/22

**B**

**burden [7]** 17/24 17/25 21/21 21/21 21/22 23/23 37/16
**Bureau [1]** 48/6
**business [1]** 29/21
**Buteau [5]** 55/5 55/6 55/9 55/24 68/22 68/23 77/11

**C**

**cabinet [1]** 63/2
**calculating [1]** 46/6
**calculation [9]** 5/17 6/9 7/20 9/5 9/8 24/15 31/13 39/6 42/2
**calculations [2]** 10/12 17/18
**call [2]** 17/5 29/3
**came [7]** 23/14 23/16 23/16 23/17 50/4 58/19 62/11
**camera [3]** 15/1 15/8 19/11
**can [16]** 9/6 14/6 14/13 21/9 22/3 22/21 23/3 24/13 30/6 31/7 34/7 48/25 53/9 65/20 68/11 74/6
**can't [12]** 13/10 14/13 19/5 22/12 22/22 22/22 23/4 23/5 27/11 35/14 44/6 44/6
**cannot [2]** 39/23 40/8
**cans [1]** 43/22
**cap [1]** 26/3
**Capitol [20]** 4/6 4/8 4/12 18/19 24/24 35/3 35/9 37/18 43/10 43/11 43/13 43/16 43/21 45/21 46/4 46/5 52/12 65/2 69/11 72/22
**Capitol Building [12]** 4/6 4/12 24/24 35/3 35/9 43/10 43/11 43/13 43/16 43/21 45/21 46/5
**capped [2]** 25/21 26/14
**capping [1]** 28/8
**captive [1]** 51/25
**car [3]** 11/10 16/13 49/20
**care [1]** 49/24
**career [5]** 48/4 49/12 49/14 49/16 51/9
**caring [1]** 67/6
**carried [2]** 21/22 37/16
**case [31]** 3/3 5/20 7/9 7/21 11/21 11/25 13/17 22/20 30/11 33/21 41/15 41/21 45/6 54/8 54/20 54/20 55/3 55/5 55/5 55/12 55/13 55/19 55/19 55/20 55/21 56/3 61/1 61/7 68/22 75/12 77/11
**cases [11]** 22/2 22/21 26/10 54/18 54/21 54/23 61/25 65/25

**catch [2]** 44/4 58/15
**catching [2]** 15/24 44/12
**Category [1]** 38/24
**caught [1]** 16/24
**cause [16]** 11/24 12/17 12/22 13/11 13/13 13/16 15/21 16/19 16/23 16/24 17/9 18/12 18/14 22/13 23/25 54/15
**caused [2]** 51/6 53/7
**causing [1]** 14/2
**cement [1]** 13/22
**ceremonies [1]** 66/9
**certain [3]** 3/20 8/7 74/13
**certainly [7]** 18/23 22/1 34/7 48/8 56/11 66/22 69/17
**certification [4]** 46/8 46/11 64/6 64/14
**Certified [1]** 2/4
**certify [2]** 64/16 80/2
**chair [34]** 11/10 11/16 13/7 13/16 13/25 14/8 14/17 14/18 14/25 15/2 15/5 15/7 15/14 16/13 16/20 16/22 17/2 17/4 17/6 18/15 19/13 21/12 21/15 22/6 22/7 22/23 32/22 37/24 44/8 45/22 55/7 55/9 69/4 69/6
**chairs [1]** 43/22
**challenge [1]** 74/21
**chance [1]** 7/3
**change [5]** 27/24 36/19 51/22 73/3 73/4
**changes [1]** 36/20
**chaotic [2]** 45/20 48/19
**characteristic [2]** 25/9 25/11
**characteristics [3]** 42/18 61/6 66/18
**charged [1]** 53/17
**charges [1]** 53/18
**chase [1]** 45/19
**chasing [7]** 20/1 20/2 22/11 23/7 32/20 44/2 45/19
**chemical [1]** 12/21
**Chief [1]** 72/21
**child [1]** 55/2
**children [2]** 59/4 67/23
**choice [1]** 32/19
**chose [2]** 37/22 44/18
**Circuit [5]** 12/9 13/9 40/7 74/7 74/13
**Circuit's [1]** 75/25
**circumstance [3]** 48/1 62/4 63/8
**circumstances [6]** 20/24 42/17 47/12 47/13 51/7 74/13
**citation [1]** 28/12
**citizen [1]** 65/23
**citizens [3]** 50/4 58/12

**citizenship [2]** 66/10 66/11
**city [5]** 58/16 58/16 58/20 63/11 63/19
**civil [21]** 3/17 8/2 24/22 25/1 27/6 27/17 29/4 30/11 32/5 32/6 32/18 32/24 33/20 34/15 37/19 38/1 39/12 62/8 62/12 64/11
**Civil War [2]** 62/8 62/18
**clarification [1]** 36/25
**clarify [2]** 41/5 41/9
**Class [2]** 7/23 40/9
**clear [14]** 13/23 14/1 15/15 17/12 19/20 20/20 41/2 43/18 44/4 52/24 53/5 61/20 69/5 77/9
**clearly [3]** 43/20 51/24 64/2
**Clerk [3]** 72/18 72/25 73/4
**climbing [1]** 43/15
**close [2]** 21/19 23/22
**closely [1]** 34/11
**closer [1]** 17/5
**clothes [1]** 47/19
**coalesce [1]** 52/12
**coat [1]** 23/18
**collateral [1]** 56/9
**collection [1]** 71/3
**COLUMBIA [4]** 1/1 2/5 62/21 72/20
**combined [2]** 25/16 33/11
**come [13]** 10/15 15/4 18/22 24/10 27/1 32/7 35/11 37/24 48/22 60/18 60/23 64/16 76/8
**comes [6]** 11/15 15/11 23/22 31/13 40/18 44/17
**coming [1]** 44/6 55/7 55/8
**commendations [2]** 4/20 49/18
**comment [1]** 15/25
**commentary [2]** 16/1 16/11
**commented [1]** 62/7
**commission [2]** 20/8 51/8
**commit [17]** 11/12 12/12 16/15 21/24 24/25 27/16 30/10 30/13 33/20 34/7 34/8 34/14 49/22 55/7 62/4 62/4 70/19
**committed [8]** 18/15 30/10 30/12 32/8 33/20 34/14 46/1 51/1
**committing [5]** 27/17 32/18 35/25 39/12 52/19
**common [1]** 25/8
**community [9]** 50/1

**66/14 66/17 67/21 69/1
comparison [1]** 77/11
**complete [1]** 47/20
**completion [1]** 73/13
**complicated [1]** 31/23
**comply [2]** 42/7 71/8
**computer [1]** 2/8
**computer-aided [1]** 2/8
**concern [2]** 62/20 64/13
**conclude [5]** 22/12 22/25 23/22 27/15 38/2
**concluded [1]** 79/2
**conclusion [3]** 59/22 75/19 76/9
**concurrently [2]** 31/6 70/3
**condition [2]** 46/23 68/6
**conditions [10]** 48/20 49/6 52/11 52/23 70/13 70/14 70/18 71/9 75/18 78/5
**conduct [15]** 3/25 4/6 8/17 24/25 29/21 34/3 34/6 42/13 42/21 52/22 65/11 65/12 65/12 69/18 70/16
**conferred [1]** 72/10
**confront [1]** 18/20
**Congress [5]** 6/2 29/13 29/18 42/5 64/15
**connected [1]** 63/5
**connection [1]** 52/4
**consecutively [1]** 31/7
**consequence [1]** 16/22
**consequences [13]** 13/3 16/21 22/4 22/9 23/1 23/2 23/3 51/9 51/17 56/9 61/13 69/20 75/11
**consider [6]** 4/25 11/21 20/24 42/4 42/16 69/7
**considerate [1]** 67/6
**consideration [3]** 61/4 63/8 75/17
**considerations [1]** 41/6
**considered [1]** 75/18
**considering [2]** 5/21 63/24
**consistency [1]** 68/21
**consistent [1]** 68/10
**constant [1]** 51/25
**Constitution [2]** 2/6 58/23 73/1
**constitutionally [1]** 64/8
**consultation [1]** 71/14
**contact [3]** 18/11 22/23 45/17
**context [6]** 18/18 44/25 45/2 46/2 61/25 62/5
**continue [2]** 43/10

**CONTINUED [1]** 2/1
**continues [1]** 17/8 43/17 43/25
**continuing [2]** 18/16 67/17
**contribute [1]** 55/25
**contributed [5]** 52/24 54/16 61/17 67/14 68/25
**controlled [2]** 70/21 70/24
**convicted [1]** 55/1
**conviction [5]** 9/14 31/2 56/10 74/6 74/21
**convince [1]** 65/6
**convinced [2]** 21/22 36/6 52/8
**cooperate [1]** 71/3
**correct [13]** 10/11 10/13 16/16 27/7 30/4 37/13 39/13 40/23 40/24 41/9 41/16 41/18 80/3
**corridor [2]** 32/10 37/21
**cost [2]** 75/2 75/4
**could [17]** 5/22 12/24 17/5 26/23 27/22 32/9 32/12 32/21 32/22 33/19 37/19 43/8 49/23 57/15 62/20 62/21 63/15
**couldn't [3]** 21/16 50/5 59/5
**counsel [7]** 3/5 3/6 6/19 63/18 72/10 74/19 75/6
**counseling [1]** 59/16
**count [36]** 3/17 3/19 3/22 3/25 4/3 4/8 4/11 8/6 8/11 8/16 8/21 9/16 9/18 25/3 25/13 26/14 29/3 29/5 29/6 29/7 29/7 29/14 29/19 29/24 29/24 30/9 30/9 30/20 37/3 57/25 76/7 76/14 76/15 76/16 76/19
**Count 1 [2]** 3/17 9/16
**Count 2 [2]** 3/19 8/6
**Count 3 [12]** 3/22 8/11 9/18 29/5 29/6 29/7 29/24 30/9 76/7 76/14 76/15 76/19
**Count 4 [6]** 3/25 8/16 29/14 29/19 29/24 30/9
**Count 5 [2]** 4/3 8/21
**Count 6 [1]** 4/6
**Count 8 [1]** 4/11
**counted [1]** 64/5
**counting [1]** 64/8
**countries [1]** 65/6
**country [19]** 58/12 58/23 61/21 62/10 62/13 62/15 62/15 62/17 64/16 64/19 65/2 65/4 65/5 65/8 65/22

**country...** [4] 66/6 66/7 75/16 78/21

**country's** [1] 65/19

**counts** [27] 3/16 7/22 9/9 9/11 24/21 25/19 28/20 28/21 29/9 31/2 31/25 34/7 34/8 39/8 39/21 40/4 40/5 40/7 40/9 40/17 40/17 40/18 69/22 69/24 70/1 70/4 70/5

**Counts 1** [4] 9/9 40/4 40/17 69/22

**Counts 3** [4] 39/21 40/5 69/24 70/5

**Counts 6** [2] 7/22 40/18

**course** [3] 12/7 13/6 35/2

**court** [53] 1/1 2/3 2/4 2/5 5/25 6/7 9/24 12/9 18/7 20/23 24/20 27/21 31/23 33/7 35/14 35/19 37/1 39/22 40/1 40/8 43/3 43/6 45/12 46/16 47/1 47/8 51/11 52/14 53/4 53/9 53/20 56/17 56/21 60/2 60/20 60/22 65/25 66/10 69/22 71/2 71/25 72/19 72/19 72/25 73/1 73/4 73/10 74/7 75/3 75/6 76/8 76/8 79/1

**court reporter** [1] 35/14

**Court's** [3] 39/6 42/16 74/21

**court-appointed** [1] 75/6

**Courts** [1] 40/16

**CR** [1] 1/4

**cramped** [1] 47/18

**credit** [2] 74/1 75/23

**crime** [4] 27/17 46/1 50/2 70/20

**crimes** [4] 32/6 42/14 53/21 54/6

**criminal** [6] 3/3 5/20 10/8 38/24 42/13 69/18

**crisis** [1] 49/22

**cross** [12] 24/8 24/21 25/2 25/3 25/10 25/23 28/5 31/24 39/8 76/8 76/20 76/24

**cross-reference** [10] 24/8 24/21 25/2 25/10 25/23 31/24 39/8 76/8 76/20 76/24

**CRR** [2] 80/2 80/8

**Cua** [1] 54/25

**current** [1] 46/14

**currently** [2] 46/6 62/15

**custody** [1] 48/8

**cuts** [2] 66/25 75/21

---

**D.C** [8] 1/5 1/15 2/6 58/13 58/20 58/21 72/23 73/2

**D.C.** [4] 40/7 74/7 74/13 75/25

**D.C. Circuit** [3] 40/7 74/7 74/13

**D.C. Circuit's** [1] 75/25

**damage** [2] 54/14 54/15

**dangerous** [15] 10/18 11/7 11/22 12/4 12/8 18/8 18/25 20/6 20/22 20/23 21/1 25/7 30/14 64/2 69/4

**dangerous-weapon** [1] 18/8

**Date** [1] 80/7

**day** [29] 18/24 21/16 23/11 35/2 45/2 46/3 46/5 54/21 55/1 55/11 57/16 57/24 58/2 61/10 61/12 61/18 61/21 64/18 64/18 64/22 65/3 67/15 68/24 69/14 73/22 73/22 73/25 75/14 75/15

**days** [6] 50/14 63/19 70/25 73/3 74/24 74/25

**dealing** [1] 67/19

**dear** [1] 63/22

**December** [1] 63/2

**decent** [4] 56/1 62/1 62/2 64/21

**decide** [1] 18/2

**decided** [1] 45/20

**decision** [4] 18/2 18/2 68/8 75/25

**defect** [1] 74/9

**defendant** [10] 1/7 1/17 11/21 40/10 42/14 42/18 45/4 54/7 72/10 78/1

**defendant's** [4] 13/19 18/5 73/12 75/8

**defendants** [4] 18/24 42/20 47/11 53/2

**DEFENDER** [2] 1/18 3/11

**defense** [9] 14/23 17/15 20/14 29/8 40/21 46/21 60/11 72/10 77/18

**defer** [1] 43/6

**defiant** [1] 53/2

**define** [1] 66/10

**defined** [1] 22/14

**definition** [2] 16/1 16/2

**democracy** [1] 65/7

**demonstrating** [2] 4/11 21/23

**demonstration** [1] 63/16

**Denney** [9] 10/22 11/21 11/25 12/2 12/19 13/9 20/13 20/13 21/25

**Denney's** [1] 12/10

---

**departure** [5] 5/22 41/13 41/15 41/20 41/22

**describe** [1] 56/5

**deserve** [1] 74/1

**deserves** [1] 75/23

**designated** [1] 47/5

**destroyed** [1] 61/9

**detailed** [1] 48/13

**details** [1] 78/9

**detention** [1] 46/24

**determinations** [1] 10/21

**determine** [4] 5/12 5/19 37/1 41/12

**determined** [1] 71/2

**determines** [1] 71/25

**deterrence** [2] 42/13 69/19

**developed** [1] 34/15

**Devens** [2] 47/2 70/11

**devoted** [1] 51/1

**diagnosed** [1] 52/3

**did** [25] 18/22 18/24 23/19 23/20 24/17 27/15 34/9 35/3 35/17 37/18 37/20 45/16 55/1 56/1 56/7 58/7 61/12 62/9 64/20 69/3 69/5 75/13 75/15 76/14 76/21

**didn't** [15] 20/25 24/13 24/15 32/9 41/1 43/9 45/17 54/14 58/16 62/23 62/24 64/15 64/15 64/18 64/19

**difference** [9] 9/23 24/13 24/17 25/12 25/14 30/3 30/23 33/10 38/9

**different** [3] 31/9 52/16 67/7

**difficult** [3] 47/10 68/9 68/19

**difficulties** [2] 48/21 67/11

**difficulty** [1] 69/13

**direct** [2] 15/13 78/4

**directed** [3] 69/9 69/10 71/4

**directly** [2] 13/5 53/6

**disadvantage** [1] 64/3

**disagree** [5] 65/24 65/24 65/25 66/1 66/3

**disagreement** [3] 5/10 36/12 39/2

**disagreements** [3] 5/9 9/3 9/7

**disbursement** [1] 72/20

**discharge** [1] 49/20

**discharging** [1] 50/16

**disclosure** [1] 71/17

**discredit** [1] 59/8

**discredited** [1] 58/22

**discretionary** [1] 70/13

**discuss** [1] 7/6

**dislodge** [4] 11/23 12/14 12/21 20/16

**disorder** [20] 3/17 8/3 24/23 25/1 27/6 27/18 29/4 30/11 32/5 32/6 32/18 32/24 33/20 34/15 37/19 38/1 39/12 48/13 63/5 67/14

**disorderly** [5] 3/25 4/6 8/17 24/25 32/2

**disparity** [1] 42/20

**dispute** [1] 11/14

**disputes** [1] 5/17

**disrespected** [1] 58/20

**disrupt** [2] 29/20 46/11

**disruptive** [3] 3/25 8/17 32/2

**disservice** [1] 59/8

**distinct** [1] 34/12

**district** [10] 1/1 1/1 1/10 2/5 2/5 62/21 72/19 72/20 73/1 73/9

**District Court** [1] 73/1

**disturbance** [1] 63/5

**DNA** [1] 71/3

**do** [31] 5/18 7/8 9/4 19/6 21/6 21/19 21/25 23/12 25/4 26/17 26/18 26/19 26/20 26/23 32/23 36/12 39/25 48/17 52/9 57/8 58/5 58/17 58/18 60/1 63/7 64/8 65/6 68/13 71/25 72/4 73/24

**do you have** [1] 72/4

**do you know** [2] 26/18 26/20

**document** [1] 42/3

**documented** [1] 48/23

**does** [18] 16/21 21/20 24/4 25/10 26/20 37/18 38/3 38/3 38/10 39/16 40/21 47/6 56/2 65/4 65/5 74/1 75/13 76/4

**doesn't** [23] 9/24 15/16 15/17 18/3 19/1 19/9 19/11 19/12 19/21 23/9 23/22 32/6 32/17 36/19 38/8 43/16 43/25 44/15 44/15 44/15 46/7 52/22 53/20

**doing** [8] 14/13 22/22 23/4 23/21 50/24 53/11 57/17 58/15

**don't** [40] 7/22 9/4 9/4 10/11 13/4 17/14 20/20 23/1 24/10 26/5 26/7 26/16 27/1 28/8 32/10 33/23 34/2 34/18 38/5 39/22 40/6 40/13 41/14 41/20 41/22 44/10 47/24 53/3 54/7 57/8 58/4 58/4 65/9 66/6 66/21 67/2 69/17 73/15 76/10 78/22

**done** [1] 11/16 55/24 59/8 61/19 62/2 68/11

**doomsday** [1] 51/23

**door** [1] 43/12

**doubt** [2] 23/19 67/13

**down** [14] 11/15 17/8 26/6 26/12 30/6 32/10 37/11 49/20 50/4 53/14 53/25 55/7 55/8 59/6

**downward** [3] 56/11 75/8 75/24

**draw** [1] 34/16

**drop** [3] 20/17 20/19 63/18

**drove** [1] 50/21

**drug** [2] 70/25 71/1

---

**E**

**e.g** [1] 16/13

**each** [5] 19/15 23/13 37/2 64/7 72/15

**earlier** [3] 17/3 63/19 63/25

**eases** [1] 10/20

**easier** [1] 12/1

**easily** [1] 67/2

**easy** [2] 47/25 49/8

**education** [1] 53/22

**effect** [1] 63/11

**effects** [2] 52/2 52/6

**effort** [2] 12/20 20/21

**egregious** [2] 57/25 58/1

**eight** [2] 3/16 8/8

**either** [2] 41/14 44/22

**Elect** [1] 63/11

**elected** [2] 32/23 62/19

**election** [6] 51/17 51/18 62/24 64/6 64/9 65/16

**elections** [2] 65/25 66/4

**electoral** [2] 46/8 46/11

**elements** [1] 34/13

**eligible** [1] 46/11

**else** [18] 5/3 5/25 17/15 21/3 23/10 28/18 34/21 41/4 41/10 45/25 56/14 56/21 60/1 60/11 60/14 74/4 77/22 78/14

**elsewhere** [1] 63/9

**Email** [2] 1/16 1/20

**embarrassed** [1] 58/24

**emblematic** [1] 61/7

**emergency** [1] 43/19

**emotional** [1] 51/9

**employee** [1] 9/14

**employment** [1] 53/22

**encountered** [1] 26/10

**end** [1] 31/15

**ended** [1] 24/14

**ends** [3] 23/13 29/24 29/24

**endure** [1] 47/18

**enforcement** [7] 29/13 47/4 49/12 51/10 66/25 67/4 67/6

**engage** [1] 69/18

**engaged** [3] 55/11

**E**

engaged... [2] 65/11 65/12
engaging [6] 4/3 8/17 8/22 24/24 28/25 37/19
engendered [1] 67/21
enhancement [19] 9/13 9/20 11/4 17/25 18/3 18/8 20/8 20/11 24/3 25/7 27/18 27/22 30/8 30/15 36/16 38/2 38/3 45/14 69/3
enough [3] 7/11 14/1 44/11
ensure [2] 29/17 69/17
enter [2] 10/3 43/15
entered [3] 24/23 27/5 74/22
entering [5] 3/22 8/12 32/1 36/3 36/6
enters [1] 43/19
entertain [1] 63/7
entitled [1] 38/20
entry [1] 74/25
environment [1] 51/19
equally [1] 6/18
essential [2] 64/9 69/19
essentially [22] 12/13 13/10 13/11 13/14 13/21 13/23 14/2 14/7 15/3 15/16 15/23 16/25 17/11 21/15 24/23 29/3 29/12 31/5 34/10 35/23 44/21 45/16
establish [1] 70/16
established [2] 29/17 74/17
eve [2] 62/17 64/11
even [13] 24/15 33/7 35/6 44/14 52/5 54/14 62/8 62/12 63/15 76/23 77/3 77/4 77/13
event [1] 21/17
events [2] 61/8 61/18
ever [2] 73/15 78/22
every [1] 73/22
everyone [4] 3/2 10/1 29/6 38/20
everything [2] 28/15 74/4
evidence [8] 19/19 22/13 22/20 32/4 34/13 35/24 37/17 37/17
exact [2] 14/5 51/16
exactly [1] 11/18 44/10 77/8
example [3] 11/10 22/1 45/8
examples [1] 50/3
exceed [1] 26/17
except [2] 37/3 37/6
exchange [1] 62/11
excitement [1] 63/4
excuse [1] 52/23
execute [1] 73/9
exemplary [1] 49/17
exercise [1] 47/20

exhaustion [1] 53/1
exhibits [1] 4/18
exit [1] 43/20
expect [1] 63/15
expectations [1] 70/16
experience [1] 49/10
experienced [1] 51/5
experiences [2] 48/14 49/19
experiencing [1] 50/19
explain [2] 24/13 24/17
explanation [1] 77/10
expressed [2] 60/7 60/8
expresses [1] 53/5
extend [1] 75/13
extends [1] 75/15
extent [4] 19/14 37/3 37/6 74/22
extraordinary [1] 75/22

**F**

face [1] 43/19
facilities [1] 47/18
facility [2] 47/3 47/5
facing [1] 69/13
fact [12] 7/18 17/2 18/6 18/18 21/11 22/9 23/20 46/7 62/8 64/19 69/8 69/11
fact-specific [1] 18/6
factors [9] 5/21 6/2 39/24 42/4 42/24 52/11 53/22 61/1 61/5
facts [9] 5/10 7/17 18/13 19/9 20/11 42/1 49/14 51/11 60/25
factual [8] 6/11 6/21 27/4 27/15 30/7 36/14 36/15 39/11
failed [1] 20/10
fair [5] 6/2 11/17 22/8 48/5 54/14
fairly [5] 23/18 30/7 55/12 57/4 77/9
fairness [1] 69/14
falls [1] 66/6
false [2] 52/1 65/15
falsehoods [1] 52/9
familiar [1] 55/13
family [17] 47/22 53/6 53/23 57/20 58/25 59/2 59/8 59/17 59/18 59/19 60/7 67/9 67/18 68/19 73/23 75/12 75/19
family's [1] 61/10
far [4] 41/9 65/11 67/5 69/17
farm [1] 35/19
fashion [1] 6/1
favor [1] 10/20
fd.org [1] 1/20
February [2] 63/12 64/4
federal [4] 1/18 3/11 4/13 11/11
feeding [2] 65/15 65/16

48/9 57/8 60/4 73/24 75/12
feet [2] 15/6 17/4
fell [1] 51/14
fellow [1] 44/19
felony [9] 25/1 29/9 30/11 30/13 34/9 35/25 40/12 55/1 56/10
felt [2] 60/7 68/23
feverish [1] 63/4
few [5] 15/6 19/10 50/14 53/12 67/3
field [1] 51/19
figure [1] 16/2
file [1] 75/3
filed [2] 6/7 29/11 74/24
filing [1] 74/25
final [3] 6/1 21/7 73/18
Finally [1] 59/9
financial [7] 71/17 71/19 71/20 71/21 72/22 72/24 73/5
find [6] 26/23 27/5 50/5 57/25 57/25 58/15
finding [3] 12/2 12/10 13/11
findings [1] 7/7
fine [21] 7/25 8/5 8/9 8/15 8/20 8/25 16/8 33/3 39/9 39/16 39/19 41/1 41/25 43/6 46/25 57/3 57/9 60/9 67/23 71/23 72/17
fired [1] 50/21
first [8] 5/12 43/12 46/12 46/24 47/14 47/15 50/20 56/10
first-time [1] 47/14
Firstly [1] 57/12
FISHER [85]
Fisher's [20] 12/16 13/20 14/24 15/21 19/6 23/11 33/21 44/12 45/1 45/2 45/3 46/2 47/16 49/12 50/10 60/6 66/25 73/19 75/12 75/18
fit [1] 45/18
five [2] 8/4 40/11
flail [1] 45/16
flat [1] 50/7
fleeing [3] 49/21 50/21 55/9
flip [1] 30/19
FMC [2] 47/2 70/11
folks [1] 61/23
follow [2] 26/8 71/12
followed [2] 65/8 68/14
following [3] 70/13 71/8 72/20
foot [2] 48/22 51/13
force [10] 11/22 13/5 13/12 13/18 14/1 14/3 14/25 15/14 17/11 44/11
forced [2] 47/21 49/20
Ford [1] 72/22

foreseeable [1] 13/2
former [4] 45/18 48/2 57/18 69/12
forming [1] 49/25
forth [8] 6/3 6/12 6/21 9/5 15/19 42/1 42/3 44/17
forward [1] 15/5 17/7 43/17 59/10 59/19 59/21 65/7
found [4] 12/18 27/21 31/1 42/21
frame [1] 14/6 14/6 15/4 15/11 15/12
frankly [1] 55/25
frenzy [1] 65/16
front [5] 14/18 17/4 19/12 23/6 26/16
full [1] 73/5
functions [1] 29/21
fundamental [1] 74/9
fundamentally [4] 62/1 62/2 66/16 73/25
further [4] 37/6 53/21 54/6 59/17
future [2] 42/14 69/18

**G**

gas [1] 43/18
gave [1] 74/2
gear [2] 18/22 23/17
general [3] 46/9 49/13 69/18
generally [3] 27/3 27/14 48/15
get [7] 5/7 13/10 21/20 34/17 35/20 59/14 62/20
gets [2] 34/18 52/18
getting [4] 19/17 45/25 55/22 77/5
give [4] 39/15 47/1 60/17 67/2
given [4] 11/8 41/14 48/10 77/10
gives [1] 36/25
glass [1] 43/15
go [15] 5/7 7/13 13/2 15/16 15/17 15/20 19/21 25/4 25/5 26/12 27/3 27/23 37/5 59/12 65/6
Go ahead [1] 25/5
goal [4] 13/17 13/20 14/2 15/22
goals [1] 49/4
goes [7] 12/6 13/10 13/20 13/21 15/8 44/3 52/14
going [21] 5/5 14/22 15/19 16/6 16/23 19/21 30/2 43/9 47/10 47/16 48/2 48/4 49/3 57/21 59/10 61/21 68/13 68/13 71/23 73/19 74/3
gone [1] 67/22
good [10] 3/7 3/9 3/10

49/25 57/10 57/11 62/16 64/21 68/24
goodness [1] 62/17
got [3] 30/19 37/20 39/15
government [42] 1/13 3/6 4/18 5/24 6/10 6/11 9/13 10/14 10/21 17/25 18/4 18/6 18/10 19/3 19/14 20/9 21/1 21/22 23/22 29/11 29/13 29/21 30/11 34/18 34/21 37/16 38/8 41/4 42/23 43/6 45/13 46/15 54/17 56/12 57/23 58/7 63/6 68/3 75/1 76/4 77/16 78/15
government's [9] 10/17 10/20 24/22 28/23 35/17 36/13 43/2 44/20 51/3
grab [1] 16/6
grabbing [3] 15/18 19/15 19/18
grabs [1] 19/18
grapple [2] 17/8 44/16
grappling [2] 15/12 15/18
greater [3] 39/23 42/6 65/2
greatest [2] 64/13 64/24
ground [4] 22/7 22/10 22/10 23/13
grounds [8] 3/23 4/1 4/4 4/9 8/12 8/18 8/23 9/21
group [10] 9/17 25/3 25/12 25/13 29/2 29/3 29/6 29/7 29/8 30/20
grouped [2] 9/10 9/11
grouping [4] 9/25 24/9 25/9 27/19 27/24 29/25 33/13 38/18
groupings [3] 24/12 24/16 27/24
guess [4] 13/2 17/10 23/3 29/6
guidance [1] 39/22
Guideline [1] 27/12
Guidelines [42] 5/18 5/19 6/9 7/20 7/22 9/2 9/5 10/10 11/4 17/18 19/2 25/24 26/3 26/16 26/17 28/9 28/9 31/13 36/13 36/20 38/6 38/11 38/25 39/19 39/22 40/3 40/6 40/13 41/5 42/2 42/15 42/19 44/22 46/14 49/9 56/11 61/2 68/1 69/2 74/16 74/17 77/7
Guidelines calculation [1] 31/13
Guidelines Range [6] 5/18 6/9 7/20 38/25 44/22 46/14
guilty [9] 3/16 8/2 10/4

**G**

guilty... [6] 29/19 38/1
42/21 53/18 74/8 74/10
gun [1] 12/21

**H**

H205B [1] 72/22
Habit [1] 63/10
had [41] 7/3 7/11 12/11
14/23 17/4 18/23 18/23
21/14 22/1 22/6 22/7
23/14 27/20 29/11
29/11 32/19 46/3 47/18
47/21 50/5 50/7 50/20
55/5 55/24 57/24 57/25
60/7 62/9 62/19 62/24
65/1 67/3 67/11 68/22
68/23 68/24 68/25
68/25 76/23 77/3 77/4
hadn't [2] 12/12 56/24
half [3] 25/15 33/10
38/9
hallway [1] 17/7
hand [2] 14/24 69/7
hands [4] 11/23 12/14
12/22 44/16
hanye [21] 1/17 1/20
3/11 5/2 6/15 6/15 6/16
6/17 6/20 6/24 10/11
14/23 17/22 30/24
31/20 39/4 41/8 46/20
60/11 61/15 66/24
happen [6] 28/5 62/10
64/13 64/14 64/18
64/25
happened [5] 21/11
23/19 62/24 64/18 65/1
happening [1] 57/21
happy [3] 55/22 56/20
57/6
hard [8] 12/2 14/10
21/12 22/24 23/4 48/24
49/3 61/24
harder [1] 48/2
harm [1] 53/7
harsh [1] 61/13 69/20
has [33] 6/3 6/11 8/2
10/1 10/2 10/8 10/9
11/7 16/19 20/10 21/10
21/22 23/24 37/16 38/1
40/8 41/14 41/23 42/5
48/22 52/16 53/5 53/7
53/20 53/24 54/17 59/1
63/10 64/17 68/3 68/4
68/20 77/16
hasn't [2] 18/4 21/1
have [91]
having [4] 13/19 21/14
49/21 52/2
he [147]
he continues [1] 43/17
he didn't [3] 32/9
45/17 54/14
he had [1] 12/11
he said [1] 63/3
he slides [1] 19/13
he'll [1] 56/9
he's [27] 3/16 14/1

32/24 43/14 43/21
43/23 44/1 44/5 47/13
47/17 47/18 47/21 48/2
48/9 48/17 50/24 51/5
52/13 52/14 53/11
53/18 58/4 58/4
head [1] 52/2
health [6] 49/22 59/16
71/10 71/11 75/18
hear [12] 5/23 5/24
5/24 9/6 10/14 17/14
17/15 30/24 35/14
55/23 56/20 57/6
heard [4] 18/6 18/10
42/23 57/23
hearing [2] 4/17 78/12
heartbroken [1] 75/14
heartfelt [2] 58/3 75/9
heavily [1] 10/21
heavy [1] 48/25
held [1] 40/8
help [3] 15/16 62/3
67/22
helping [2] 50/3 59/5
helps [1] 43/18
here [35] 3/15 11/14
12/16 13/4 16/3 17/6
18/13 25/18 27/9 35/1
38/5 45/14 47/8 47/12
52/20 53/18 53/25 54/1
54/1 54/3 54/4 54/10
56/21 58/4 58/19 59/1
59/5 59/6 60/10 63/4
63/9 66/10 66/19 69/8
69/19
heroism [1] 50/24
higher [3] 26/2 69/3
77/12
highest [1] 31/5
highly [2] 58/24 67/4
him [29] 7/12 11/24
13/13 13/22 15/7 15/18
21/12 35/5 37/25 43/14
44/6 44/16 47/20 48/2
48/6 48/24 48/25 50/3
50/21 51/10 53/10 56/8
57/22 58/5 63/3 64/12
69/6 69/10 78/12
himself [8] 12/24 35/3
44/3 44/5 50/22 53/16
54/15 66/24
his [79] 10/3 10/10
13/6 13/23 15/6 15/15
15/15 15/22 19/2 19/20
20/10 21/13 22/13
22/18 23/1 23/7 23/11
23/18 34/3 34/5 34/5
38/21 43/11 43/18
44/16 44/19 45/24 46/5
47/19 47/19 47/21
48/10 49/19 49/20
49/25 50/8 50/8 50/19
50/25 51/1 51/8 51/9
51/13 51/15 51/20
51/21 51/22 51/24
51/25 52/22 52/23 53/5
53/5 53/6 53/7 53/10

53/22 53/25 54/1 54/1
54/14 55/7 55/25 56/6
56/9 57/17 57/17 57/20
62/9 63/23 64/12 68/25
69/2 73/25 75/20 75/21
history [11] 5/20 10/8
38/24 42/17 46/13
48/10 53/22 56/7 61/6
62/6 65/19
hit [10] 12/20 13/15
15/19 21/12 22/24 23/5
23/5 55/10 69/5 69/6
hits [2] 22/2 44/17
hold [1] 57/7
holding [1] 13/9
home [5] 46/24 54/13
57/20 59/5 68/7
Honor [70] 3/7 3/10 5/1
5/3 6/13 6/16 6/22 7/5
7/7 7/10 7/13 10/13
10/16 11/5 11/18 11/20
12/5 13/1 14/15 16/16
17/1 17/19 17/23 21/4
21/8 24/6 24/19 25/25
26/9 26/19 27/7 29/10
30/4 30/17 30/25 31/18
31/21 33/4 34/23 39/3
39/5 39/13 41/7 41/17
41/18 42/25 43/2 46/21
54/11 54/21 56/15
56/23 57/10 57/12 58/9
58/11 59/9 59/14 59/24
60/6 60/12 60/15 76/6
77/15 77/24 78/2 78/11
78/15 78/16 78/24
HONORABLE [2] 1/10
60/22
hope [1] 69/17
hopefully [2] 65/20
78/21
House [1] 72/22
Houses [1] 64/6
how [21] 5/20 13/10
21/11 22/22 22/23 23/4
27/2 27/19 27/23 47/8
52/25 61/7 62/20 62/21
64/9 65/6 66/14 67/2
67/5 69/5 72/7
huh [1] 25/20
human [1] 67/7
hump [1] 34/18
Hunter [1] 76/1
hurt [1] 23/15

**I**

I agree [1] 36/18 38/8
I also [4] 57/7 67/20
70/4 73/22
I am [3] 30/14 58/19
68/13
I apologize [1] 59/7
I appreciate [1] 54/4
I believe [6] 24/7 54/20
54/25 63/14 69/16 75/9
I can [5] 9/6 22/21 23/3
30/6 68/11
I cannot [1] 39/23

76/14
I didn't [2] 24/15 41/1
I don't [16] 13/4 20/20
23/1 26/5 34/2 34/18
38/5 41/14 53/24 58/7
58/4 58/4 65/9 66/21
73/15 76/10
I don't have [1] 26/16
I guess [2] 13/2 17/10
I had [4] 27/20 55/5
68/22 77/4
I have [13] 4/14 4/19
7/1 33/1 38/5 38/9
39/24 42/5 60/25 63/24
68/17 68/21 72/8
I impose [1] 70/6
I just [8] 18/6 22/12
28/12 35/16 36/8 38/19
39/6 75/7
I know [11] 5/16 26/15
28/11 34/24 59/11
59/12 67/11 67/16
68/18 73/21 76/11
I mean [5] 12/18 19/5
54/25 55/8 76/14
I say [2] 59/7 66/11
I should [3] 27/2 29/7
29/8
I think [49] 10/20 10/23
11/20 12/6 12/9 12/15
13/9 13/23 14/5 14/9
14/16 14/23 17/5 18/7
20/20 22/6 22/7 24/7
24/20 30/6 31/4 36/1
37/17 38/14 47/15 48/5
49/8 51/11 52/11 52/25
53/9 54/23 56/1 56/4
56/6 61/25 65/20 66/24
68/8 68/11 69/16 69/18
75/15 75/20 77/10
I understand [6] 15/22
34/1 34/12 36/8 39/10
40/21
I want [4] 11/6 47/9
53/24 57/12
I was [3] 58/14 67/5
77/5
I will [11] 7/16 23/10
24/2 39/24 59/12 59/18
59/18 60/18 68/22
70/10 78/4
I would [8] 27/23 52/24
59/13 76/7 76/10 76/18
77/2 77/13
I'd [7] 28/6 44/20 57/6
58/15 58/17 58/25
59/14
I'd be [1] 57/6
I'll [12] 5/18 6/4 17/15
17/15 55/18 57/1 59/11
59/19 59/21 70/7 72/15
78/11
I'll look [1] 59/19
I'm [28] 5/6 6/17 11/6
16/2 16/5 16/6 21/22
25/18 26/21 29/23 31/9

76/14
I'm going [1] 68/13
I'm just [2] 16/2 16/6
I'm not [4] 21/22 55/13
59/2 71/23
I'm not sure [1] 29/23
I'm scared [1] 55/14
I'm sorry [1] 72/6
I'm sure [2] 5/6 55/22
I've [17] 14/11 22/1
26/10 30/19 39/15 41/9
59/8 60/4 62/7 66/20
68/8 68/10 73/15 74/5
75/18 75/20 77/10
ice [2] 11/10 16/14
idea [1] 45/15
identified [1] 10/8
identify [1] 50/2
immediately [3] 15/8
15/16 72/24
immobile [1] 51/15
impede [2] 23/21 29/20
impedes [1] 45/5
impeding [3] 3/19 8/7
69/10
important [4] 11/21
14/9 45/9 77/12
impose [22] 5/11 6/5
37/2 39/23 40/2 40/8
40/16 41/13 42/6 47/8
59/11 60/18 68/4 68/13
68/17 69/15 69/24 70/1
70/4 70/6 73/20 74/22
imposed [11] 31/5 42/9
42/19 54/21 70/16
74/14 74/15 76/2 76/22
77/2 77/13
imposes [1] 69/23
impressed [1] 50/8
impressive [2] 66/20
66/23
imprisonment [1]
41/24
inability [1] 47/20
inaugural [1] 62/9
inauguration [2] 63/13
64/1
incarcerated [1] 59/12
incarceration [24] 8/4
25/22 43/4 44/24 46/17
46/22 47/8 47/10 47/15
47/24 49/10 53/1 54/8
54/10 59/23 68/5 68/7
68/14 69/23 69/25 70/2
70/11 74/4 78/7
incident [4] 34/4 35/7
50/20 57/14
incidental [1] 45/17
incidents [2] 50/19
50/23
include [5] 18/11 42/8
48/7 68/6 70/18
included [5] 9/5 20/8
29/11 51/23 61/10

**I**

**includes [9]** 4/18 4/20 11/8 16/12 20/18 38/7 49/18 50/10 73/8
**including [3]** 50/4 61/1 74/13
**incompetent [1]** 6/18
**incorrect [1]** 74/15
**increase [4]** 25/15 25/15 33/11 38/10
**increased [1]** 45/7
**incredibly [1]** 50/18
**independence [1]** 47/21
**indicated [3]** 21/14 68/1 75/20
**indicates [1]** 23/14
**indications [2]** 35/7 51/24
**Indictment [1]** 22/19
**individual [5]** 22/12 23/7 32/21 45/10 45/11
**individuals [1]** 49/21
**ineffective [1]** 74/18
**infer [2]** 22/3 48/5
**inference [4]** 19/2 34/1 34/2 34/16
**inflict [2]** 11/17 22/9
**influenced [1]** 61/22
**informal [1]** 57/4
**information [7]** 52/1 52/1 53/20 71/17 71/19 71/20 71/22
**initial [1]** 19/20
**injure [4]** 18/23 19/8 19/20 20/10
**injured [1]** 21/11
**injuries [1]** 52/2
**injury [26]** 11/12 11/17 11/24 12/13 12/17 12/23 13/11 13/13 15/21 16/15 16/19 16/23 16/24 17/9 18/12 18/14 21/24 22/9 22/13 22/14 22/15 22/25 23/25 23/25 48/22 51/13
**inmates [2]** 48/5 48/18
**inquire [1]** 76/7
**inside [6]** 24/24 43/21 45/21 46/4 52/18 58/16
**insincerely [1]** 53/3
**instead [1]** 73/20
**instrument [4]** 11/9 11/11 16/12 16/14 16/14
**insufficient [1]** 22/24
**intend [1]** 22/4
**intended [8]** 11/22 12/22 16/24 19/8 22/8 22/25 32/5 35/25
**intending [2]** 18/14 19/6
**intends [2]** 16/20 72/12
**intent [45]** 10/3 11/12 11/16 12/10 12/12 12/16 13/11 13/12 13/15 13/20 13/23 15/15 15/21 16/15

/10 16/21 /10 18/11 18/23 19/2 19/20 19/23 20/10 20/15 21/23 22/3 22/13 22/18 23/15 23/24 24/25 29/20 30/10 30/13 33/20 33/25 34/8 34/14 44/4 44/12 45/9 45/22 45/24 46/9
**intentionally [1]** 8/17
**interaction [1]** 23/12
**interest [1]** 61/21 72/1 72/2
**interested [1]** 26/21
**interests [2]** 61/20 66/16
**interfere [2]** 19/3 23/20
**intervene [1]** 45/20
**interviews [1]** 21/13
**invasive [1]** 47/19
**investigation [2]** 45/5 73/7
**involuntarily [1]** 74/8
**involve [1]** 9/10
**involved [6]** 11/11 16/14 57/13 57/16 57/16 57/19
**irritant [1]** 12/21
**is [214]**
**is five [1]** 8/4
**is that correct [2]** 40/23 41/16
**Is that fair [1]** 11/17
**is that right [1]** 30/16
**is the [1]** 29/14
**isn't [2]** 15/4 45/13
**issue [5]** 10/17 13/4 17/16 28/19 47/7
**issues [5]** 5/14 9/3 17/17 24/5 24/8
**it [121]**
**it wasn't [1]** 63/14
**it would be [3]** 22/8 30/15 30/21
**it's [55]** 6/16 10/23 11/7 11/20 12/8 13/23 14/1 14/9 14/10 14/17 14/18 15/9 15/25 16/10 18/1 18/7 20/6 20/9 20/20 20/22 20/23 20/23 26/10 26/13 30/2 30/23 31/1 31/7 33/9 33/21 34/2 35/21 36/15 36/24 44/5 45/25 46/3 47/3 47/5 48/5 48/8 49/2 51/1 52/3 52/24 56/18 56/25 59/14 61/13 61/20 61/24 67/17 69/5 69/16 77/9
**item [5]** 11/23 12/6 12/7 12/14 13/7
**its [6]** 21/22 23/23 37/16 43/3 49/11 64/23

**J**

**jail [1]** 73/22
**January [10]** 44/18 46/8 52/12 53/2 58/19

67/8
**January 6th [9]** 44/18 46/8 52/12 53/2 59/15 61/8 64/20 66/21 67/8
**job [1]** 57/17
**joint [5]** 4/16 14/16 15/9 33/2 33/24
**Joint Statement [1]** 33/24
**jolt [1]** 53/10
**JOSEPH [4]** 1/6 3/4 47/11 49/3
**Josh [1]** 3/11
**Josh Hanye [1]** 3/11
**joshua [2]** 1/17 1/20
**JUDGE [1]** 1/10
**judges [1]** 68/11
**judgment [1]** 74/25
**judicial [2]** 47/1 66/5
**just [58]** 5/7 6/2 10/19 12/19 12/24 13/18 16/2 16/6 17/2 18/6 18/25 19/25 20/6 22/12 22/20 23/8 26/7 26/13 27/14 28/2 28/8 28/10 28/11 28/12 28/21 28/22 30/15 30/16 30/25 33/1 33/4 34/13 34/17 34/24 35/16 36/8 36/14 36/19 37/11 38/19 39/6 39/10 39/15 42/11 45/17 49/8 51/25 52/18 54/9 59/9 60/17 61/7 62/23 64/23 67/22 72/15 75/7 76/12

**K**

**keep [2]** 19/21 48/6
**keeping [1]** 63/8
**kept [2]** 22/10 43/9
**killed [1]** 50/12
**kind [2]** 51/4 51/5
**kinds [1]** 63/4
**knew [1]** 59/15
**know [39]** 5/8 5/16 9/2 14/24 15/1 15/7 15/9 17/4 18/18 19/22 23/16 26/5 26/15 26/18 26/20 26/24 27/10 28/8 28/11 28/12 34/24 34/25 35/2 44/10 44/11 54/23 58/4 59/11 59/12 62/22 66/21 67/2 67/11 67/16 68/18 73/17 73/21 73/22 76/11
**Knowing [1]** 57/19
**knowingly [1]** 8/11 8/16 8/22
**known [1]** 51/4
**knows [1]** 64/12

**L**

**ladder [1]** 51/14
**language [2]** 11/3 19/1
**laptop [1]** 16/6
**large [1]** 48/16
**last [2]** 6/4 63/22
**late [1]** 63/2

**latter [1]** 32/23
**law [12]** 5/9 29/13 37/3 37/7 42/10 47/4 49/12 51/9 66/25 67/4 67/6 74/14
**lawyer [4]** 5/24 7/6 7/9 68/4
**lays [1]** 7/19
**lead [3]** 25/2 25/14 33/11
**leading [1]** 9/22
**leads [4]** 9/15 25/9 38/19 38/23
**lean [1]** 15/7
**learn [1]** 66/14
**least [1]** 71/1
**leave [4]** 24/4 32/9 63/17 73/17
**leaves [2]** 38/15 53/12
**leaving [1]** 37/22
**led [2]** 49/16 51/8
**left [7]** 32/12 32/15 32/21 37/20 43/8 51/10 53/16
**legal [2]** 36/13 41/5
**legally [1]** 34/12
**less [5]** 22/20 31/22 33/9 36/6 72/4
**lessons [1]** 65/21
**let [5]** 4/21 6/10 10/14 10/24 76/12
**let's [4]** 6/6 11/2 15/25 17/3
**Let's see [1]** 15/25
**lets [1]** 19/21
**letter [2]** 53/4 63/23
**letters [7]** 4/20 50/4 60/4 60/8 62/11 66/19 67/9
**level [25]** 9/12 9/12 9/15 9/19 9/20 9/22 10/7 10/9 25/2 25/13 25/16 26/4 26/12 28/14 30/13 33/8 33/12 36/19 38/7 38/15 38/23 39/18 40/14 45/6 46/5
**levels [1]** 9/24
**levels' [1]** 33/10
**life [8]** 51/1 59/13 59/15 59/17 61/10 61/10 68/20 68/25
**lifted [1]** 22/6
**lifting [1]** 48/25
**light [5]** 6/2 47/25 54/18 55/20 61/1
**like [18]** 5/25 22/2 42/23 43/23 44/20 56/16 58/25 59/9 59/14 60/7 62/9 62/23 62/24 64/25 72/5 73/21 77/22 78/22
**likely [3]** 48/7 48/9 52/2
**limbs [1]** 50/13
**limp [1]** 49/1
**Lincoln [7]** 62/9 62/19 62/20 62/23 63/2 63/21

**Lincoln's [2]** 63/2 64/24
**line [1]** 5/7
**listening [1]** 61/15
**little [1]** 12/1 31/22 36/25 55/2 69/2 69/9
**live [3]** 58/16 58/18 66/14
**lived [2]** 68/20 68/23
**lives [2]** 61/9 62/3
**lobby [1]** 44/1
**local [1]** 70/20
**Lockwood [1]** 54/20
**long [7]** 29/24 35/13 48/10 48/24 52/5 68/8 68/18
**long-term [1]** 52/5
**longtime [1]** 48/9
**look [4]** 27/23 28/2 59/19 59/21
**looked [1]** 14/11
**looking [2]** 16/1 62/25
**lost [2]** 50/12 57/25
**lot [9]** 51/16 55/24 61/9 61/17 61/22 62/2 68/25 69/1 73/21
**lots [1]** 66/1
**loud [1]** 48/19
**love [3]** 59/17 65/22 67/20
**low [5]** 62/6 64/19 64/20 65/18 67/18
**lower [1]** 38/6
**luck [1]** 78/18

**M**

**MA [1]** 1/19
**made [9]** 12/16 18/11 24/12 24/17 43/11 53/25 59/6 68/23 72/18
**main [3]** 10/17 25/12 31/4
**maintaining [1]** 14/25 43/3
**make [22]** 5/8 11/6 12/3 18/2 19/25 20/17 20/18 20/21 30/2 33/17 35/10 38/8 41/1 45/16 48/2 49/15 57/13 58/17 66/1 71/5 71/24 74/3
**makes [2]** 12/1 17/18 17/19 20/25 48/23 52/22 66/2
**Mall [1]** 43/8
**manage [1]** 50/25
**mandatory [3]** 40/16 70/13 70/18
**manner [2]** 19/10 74/1
**manual [1]** 27/12
**many [4]** 4/20 18/24 19/16 21/16 47/11 48/18 53/2 53/7 57/24 65/10 65/10 65/24
**Marathon [1]** 50/11
**March [1]** 63/14
**marked [1]** 62/5
**Massachusetts [4]**

**M**

**Massachusetts... [4]**
3/11 47/3 53/25 56/24
**match [1]** 26/12
**materials [1]** 4/25
**matter [3]** 27/15 69/14
80/4
**matters [7]** 6/11 6/21
29/23 51/2 51/3 52/25
76/10
**max [3]** 26/18 36/19
37/12
**maximum [17]** 7/24 8/2
8/6 8/11 8/16 8/21 26/2
26/4 26/8 26/13 26/13
31/6 31/14 36/24 37/9
38/4 74/16
**may [19]** 1/5 6/8 22/1
22/18 33/1 35/10 40/1
57/15 61/18 63/9 64/22
65/15 67/14 72/2 72/8
73/21 74/17 75/3 75/5
**maybe [3]** 52/19 62/1
77/4
**me [35]** 4/21 5/12 5/13
5/23 6/1 6/10 10/14
11/3 12/1 14/10 22/25
23/9 24/12 24/13 24/18
25/4 26/16 30/24 38/15
39/15 41/12 41/14
55/11 56/2 57/18 58/6
59/7 60/7 60/17 61/7
64/1 68/17 69/5 75/18
76/12
**meals [1]** 47/19
**mean [7]** 12/18 19/5
22/14 27/4 54/25 55/8
76/14
**meaning [1]** 11/8
**means [11]** 17/16
20/11 20/16 26/5 28/8
49/4 65/21 65/22 65/22
66/11 66/15
**meant [1]** 11/24
**meat [1]** 47/7
**mechanical [1]** 2/8
**medical [5]** 22/16 24/1
47/5 47/6 48/20
**meet [4]** 23/23 64/7
64/7 64/15
**member [2]** 59/22 63/1
**members [2]** 29/18
67/9
**memo [2]** 14/23 41/2
**memorandum [2]** 4/17
4/19
**mental [4]** 49/22 59/16
71/10 71/11
**mentioned [2]** 40/6
55/4
**merge [2]** 13/14 34/10
**Merit [1]** 2/3
**microphone [3]** 35/12
35/13 35/15
**middle [1]** 63/11
**midst [1]** 62/8
**might [1]** 64/25
**mild [1]** 52/5

**mind [6]** 21/20 28/2
38/14 61/14 77/12
78/19
**minimum [1]** 37/8
**minute [2]** 52/19 60/17
**minutes [6]** 18/19 35/2
43/13 52/18 53/12
53/13
**misdemeanor [2]** 38/5
40/9
**misdemeanors [2]**
7/23 25/19
**misinformation [2]**
51/16 61/16
**miss [2]** 59/18 59/18
**mistake [2]** 23/20
68/24
**mitigating [2]** 5/21
49/12
**mitigation [1]** 49/15
**mob [3]** 44/18 45/21
46/9
**moment [12]** 6/8 19/8
26/16 33/1 34/4 34/25
45/1 45/4 60/1 64/13
68/20 72/8
**moments [1]** 19/10
**month [2]** 72/7 72/15
**monthly [1]** 72/5
**months [27]** 7/24
10/10 26/1 39/1 39/23
43/4 44/23 46/16 46/24
47/23 54/12 54/13
55/16 55/19 56/12 68/2
68/4 68/7 68/14 69/23
70/2 70/5 70/6 73/20
73/20 73/21 74/4
**months' [4]** 41/24
46/22 68/5 69/25
**Montreal [1]** 50/5
**more [18]** 7/24 25/22
27/3 27/14 27/16 34/5
35/10 36/25 47/10
47/16 49/5 49/15 54/13
55/2 66/16 69/9 69/17
74/16
**MOSS [1]** 1/10
**most [7]** 10/23 48/5
55/4 64/1 66/20 66/22
66/22
**motherfucker [1]**
43/24
**motivated [1]** 9/14
**motives [1]** 61/19
**move [2]** 26/6 78/21
**moved [1]** 73/18
**moves [1]** 14/7
**moving [1]** 17/7
**Mr [1]** 3/12
**Mr. [128]**
**Mr. Buteau [4]** 55/6
55/9 55/24 68/23
**Mr. Fisher [79]** 3/16
4/20 5/5 6/25 7/3 8/2
10/1 10/9 13/21 14/6
14/13 14/17 15/5 15/11
16/19 17/4 18/14 19/7

**necessary [4]** 10/5
42/7 53/1 69/17
**need [11]** 5/10 24/7
35/11 41/8 42/4 42/9
42/18 42/19 48/18 50/3
76/1
**needed [1]** 52/9
**needs [3]** 35/19 40/16
47/6
**negative [1]** 52/1
**neither [1]** 55/3
**never [4]** 47/17 47/18
47/21 59/13
**news [3]** 51/20 61/16
61/16
**next [2]** 5/18 41/12
**niece [2]** 54/1 59/6
**night [1]** 63/23
**nine [1]** 33/10
**nk [1]** 21/25
**no [33]** 1/4 5/1 6/13
6/22 7/24 10/8 20/21
21/4 21/8 23/19 25/8
25/21 26/11 31/9 32/4
39/3 41/7 41/10 41/17
41/25 52/16 56/15 57/3
60/4 60/12 60/15 67/13
76/6 77/16 77/19 77/24
78/2 78/16
**Nohria [13]** 1/13 3/8
4/21 4/22 4/23 4/24
6/10 21/6 24/4 28/18
37/23 42/23 60/14
**none [1]** 52/22
**normal [1]** 48/21
**Northwest [1]** 73/1
**not [80]** 11/9 12/8
12/17 12/19 13/13
13/17 14/17 16/13 17/2
18/14 18/22 19/5 19/19
20/7 20/22 20/22 21/4
21/22 23/10 24/2 25/10
26/19 26/23 29/13
29/23 30/2 30/14 31/7
33/21 34/13 35/1 35/14
35/21 35/24 40/21
41/21 42/6 45/16 45/24
46/13 48/4 48/16 52/3
54/23 55/13 56/11
56/23 57/7 57/8 59/2
61/20 62/8 62/16 62/16
63/7 63/17 64/1 64/8
64/18 65/10 65/13
65/13 65/15 66/15 69/5
70/19 70/21 71/23
71/25 72/4 73/21 74/10
76/2 76/4 76/23 77/3
77/4 77/7 77/19 78/15
**note [10]** 11/8 14/9
15/25 23/10 33/5 36/24
37/6 41/23 53/6 75/7
**noted [5]** 49/11 51/21
52/14 76/3 76/4
**notes [2]** 37/23 51/21
**nothing [3]** 5/3 33/23
41/10
**notice [5]** 10/3 41/14

**notify [1]** 73/4
**noting [2]** 46/3 51/7
**now [8]** 42/4 43/24
44/10 44/20 45/13
50/17 51/6 64/2
**number [4]** 3/3 5/6
14/11 67/22
**numbers [2]** 49/9 49/9
**numerous [1]** 49/18
**NW [2]** 1/14 2/6

**O**

**oath [2]** 58/22 62/21
**object [3]** 13/16 18/9
40/22
**objection [4]** 29/12
35/17 39/7 77/25
**objections [5]** 6/11
6/20 76/2 76/4 77/16
77/18 77/19
**objective [1]** 13/14
**objects [1]** 48/25
**obligation [2]** 60/5
73/5
**obligations [1]** 72/24
**observes [1]** 44/2
**obsessed [1]** 51/22
**obstruct [2]** 12/17
17/10 19/24 37/25
**obstructed [2]** 22/11
23/7
**obstructs [1]** 45/5
**obvious [2]** 22/16 24/1
**obviously [9]** 15/1 18/5
19/20 23/16 27/5 32/14
35/19 47/7 51/18
**occurred [1]** 9/21
**occurs [2]** 19/11 19/15
**oddity [1]** 25/18
**off [7]** 15/1 15/3 19/11
22/6 55/10 69/6 72/10
**off-ramp [1]** 15/3
**offender [2]** 47/14
66/18
**offenders [1]** 48/10
**offense [42]** 4/16 9/12
9/14 9/19 9/22 9/24
10/7 10/9 11/11 14/17
15/9 16/14 20/24 25/1
25/9 25/10 25/13 25/16
26/4 26/4 26/12 28/14
30/10 30/13 33/8 33/12
33/24 36/19 36/20
38/15 38/23 39/18
40/12 40/14 42/10
42/11 42/17 45/6 46/5
51/8 52/25 61/5
**offenses [2]** 34/10
34/11 34/14 35/25
**offered [1]** 20/14
**offering [1]** 18/7
**offhand [3]** 26/18
26/24 27/11
**office [17]** 1/14 1/15
1/18 3/11 4/16 9/9 9/18
10/7 41/23 70/14 71/21
71/22 72/21 72/22 73/6

**N**

**name [2]** 3/6 59/8
**names [1]** 6/18
**narrow [1]** 17/7
**nation [1]** 62/6
**nation's [1]** 46/13
**National [1]** 43/8
**natural [6]** 16/21 16/22
19/17 22/4 22/8 23/1
**naturalization [1]** 66/9
**nature [6]** 13/19 14/5
20/24 42/16 61/5 69/21
**necessarily [2]** 33/21

**O**

office... [2] 73/8 78/8
Office's [1] 7/20
officer [119]
officer's [5] 11/23
12/14 12/21 19/17
35/23
officers [13] 3/20 8/7
18/20 18/23 32/10
37/21 43/22 43/24
44/19 47/4 51/6 55/9
69/13
official [3] 2/4 29/21
38/17
officially [1] 64/5
often [2] 48/19 52/1
oftentimes [2] 21/25
75/10
Oh [2] 16/8 31/11
okay [43] 6/14 7/2 7/15
10/25 11/13 11/19
14/21 16/17 17/13 20/5
21/3 21/18 24/10 25/6
27/25 28/4 28/13 28/17
30/5 30/23 31/11 31/17
31/19 33/16 34/20
36/11 36/21 37/10
39/14 41/3 41/19 43/1
46/19 52/22 55/17 57/3
58/10 72/14 72/16
77/17 77/21 78/3 78/13
once [2] 43/11 73/17
one [49] 8/14 8/19 8/20
8/24 8/24 10/8 12/23
16/20 16/21 17/15 21/9
21/13 22/3 24/21 25/15
25/22 26/18 27/16 28/7
29/2 31/9 31/12 33/5
33/11 34/1 34/22 35/10
37/15 38/10 39/15 40/4
40/5 40/11 44/25 47/13
49/17 50/7 52/19 53/9
54/5 55/5 55/21 62/6
64/17 65/18 68/9 68/19
70/25 78/20
one-half [1] 25/15
one-point [1] 38/10
only [12] 17/2 21/21
34/23 35/1 39/22 45/24
47/3 49/23 52/3 55/11
65/10 76/7
open [1] 53/5
opinion [1] 63/9
opportunity [1] 18/24
oppose [1] 26/7
options [1] 70/15
order [8] 37/24 40/22
60/23 68/15 70/7 70/8
71/23 73/9
ordered [1] 71/24
orderly [1] 29/20
ordinarily [5] 11/9 11/9
16/13 22/17 24/2
ordinary [2] 12/7 18/9
organize [1] 63/15
other [30] 12/18 13/14
17/17 18/24 19/16 21/9
22/1 22/20 23/11 23/13
32/20 34/4 35/20 35/25
43/21 47/4 48/18 51/6
54/18 55/18 56/9 67/7
68/11 69/7 71/6 74/9
others [5] 23/16 43/9
55/23 67/10 69/1
otherwise [5] 37/3
37/7 64/21 68/20 68/24
our [11] 18/4 29/12
34/9 39/7 46/12 59/8
62/6 62/15 64/2 65/4
66/15
out [15] 7/19 16/2
35/16 35/19 36/9 45/16
47/19 51/4 51/11 53/24
59/5 60/18 67/2 67/5
67/22
outside [2] 15/8 44/1
outstanding [1] 5/14
over [7] 15/7 25/18
34/18 44/18 59/14 66/9
66/13
owed [1] 72/3
own [7] 50/19 50/25
61/19 61/19 63/18
65/16 66/15

**P**

p.m [4] 1/6 60/21 60/21
79/2
page [1] 35/22
paid [1] 73/5
pain [2] 20/19 20/21
painful [4] 22/15 24/1
78/19 78/20
pains [1] 68/17
panic [1] 48/14
parading [1] 4/11
parcel [1] 15/24
part [7] 4/17 6/4 15/24
45/16 66/2 66/12 70/14
71/11
participate [2] 37/25
71/1
participated [1] 64/22
participation [1] 71/15
particular [18] 20/9
21/17 26/14 47/11
49/14 49/16 50/2 51/7
51/10 52/21 52/23
54/12 57/14 60/25 61/5
69/9 77/10 78/20
particularly [5] 21/1
47/16 49/3 52/10 54/7
parties [2] 9/6 10/24
passing [1] 44/7
past [3] 35/4 62/7
78/21
patriotic [1] 65/22
Pause [6] 14/20 16/9
38/12 39/17 60/3 73/14
pausing [1] 25/18
pay [7] 54/14 70/7 70/8
71/23 72/1 72/3 72/12
payable [1] 72/24
payment [2] 72/5 72/18
PCP [1] 12/20
peaceful [1] 46/12

peculiar [1] 65/8
penalties [1] 72/2
pending [1] 78/7
people [28] 22/3 43/14
48/14 50/1 50/3 50/12
50/12 53/8 57/15 61/17
61/18 61/22 61/25 62/1
62/2 62/2 62/3 62/23
64/22 65/8 65/10 65/11
65/12 65/14 66/13
67/23 69/19 75/10
pepper [2] 20/16 20/17
per [1] 72/7
perfect [1] 56/4
perimeter [2] 29/16
35/8
period [5] 47/10 47/15
48/24 68/5 70/10
periodic [1] 71/1
periods [1] 48/7
permission [1] 75/3
permitted [1] 74/22
person [6] 20/3 52/7
52/10 55/1 56/1 67/7
personal [1] 65/17
personally [1] 56/8
persons [1] 63/15
persuaded [1] 37/15
physical [9] 4/3 4/8
8/22 14/1 14/3 15/14
17/11 48/21 51/9
physically [1] 13/15
pick [3] 11/10 12/24
16/14
picked [1] 47/19
picketing [1] 4/11
picking [1] 18/16
pillar [6] 13/22 15/6
35/4 37/24 44/3 44/5
pipe [1] 12/20 20/15
50/16
place [3] 47/4 50/5
78/7
placed [1] 47/2
placement [1] 71/1
plain [1] 19/1
Plaintiff [1] 1/4
plan [1] 52/16
play [2] 32/7 45/15
plea [6] 4/17 7/17 10/3
12/3 74/8 74/10
pleaded [1] 3/16
please [4] 3/2 3/5
35/11 60/23
pled [6] 8/2 22/19
29/19 32/24 38/1 53/17
plots [2] 62/22 64/12
podium [1] 3/5
point [27] 10/6 11/3
14/22 19/19 21/4 24/14
24/16 30/23 31/4 32/11
33/16 35/10 35/16 36/8
38/10 38/21 47/9 51/3
53/1 53/24 58/17 62/14
63/13 64/2 64/25 77/7
77/14
points [6] 10/8 27/20
45/7 62/6 65/18 67/18

police [12] 45/18 46/4
48/3 48/10 57/16 57/18
58/14 69/12 69/12
69/13 75/21 75/22
policy [1] 42/15
popular [1] 63/5
portion [1] 14/11
position [7] 15/6 18/4
24/22 34/9 35/3 35/8
36/9
positioning [1] 44/5
positions [1] 44/3
possess [1] 70/21
possible [3] 34/1 72/13
Posttraumatic [2]
48/12 67/13
potentially [1] 30/9
power [1] 46/12
practice [1] 56/23
predicate [1] 27/5
prepare [2] 10/5 44/6
prepared [4] 23/14
56/24 57/8 63/18
preponderance [7]
18/1 21/2 21/21 22/12
34/2 34/19 37/17
prepping [1] 51/23
present [6] 35/21
43/12 43/14 43/21
43/23 53/21
presentence [22] 4/14
5/13 5/15 6/6 6/7 6/12
6/24 7/4 7/12 7/16 7/19
9/6 35/18 35/22 36/10
42/2 48/13 48/23 51/12
70/15 73/6 73/11
presents [1] 49/15
preserve [1] 39/7
preside [1] 66/9
President [3] 29/18
43/7 46/10 62/19 63/11
President-Elect [1]
63/11
presumed [1] 22/4
pretty [2] 53/21 61/20
prevent [5] 13/23 20/2
44/12 45/11 45/23
prevents [1] 44/12
previously [2] 74/2
77/20
primary [1] 10/17
prior [1] 78/6
prison [6] 7/25 8/8
8/14 8/19 8/24 48/17
Prisons [1] 48/6
probably [4] 17/18
54/9 55/6 63/20
probation [25] 2/2 4/15
7/19 9/9 9/18 10/7 27/8
29/8 35/17 35/20 35/21
35/23 40/11 40/14
41/23 49/11 70/14 71/4
71/14 71/18 71/21 73/6
73/8 73/12 78/8
Probation's [3] 26/21
36/9 40/25
proceed [2] 5/6 64/9

proceeding [2] 57/4
74/9
proceedings [5] 1/9
2/8 66/5 79/2 80/4
produced [1] 2/8
profit [1] 61/19
program [3] 71/12
71/13 71/16
promote [1] 42/10
42/14
promoting [1] 66/15
proof [1] 21/21
proper [2] 5/19 6/9
proportion [1] 64/23
prosecution [2] 10/2
45/6
protect [6] 12/23 42/13
50/22 54/6 55/8 69/10
protection [1] 29/17
protective [2] 18/22
48/8
proud [2] 59/2 67/24
prove [1] 20/10
proven [2] 18/4 21/1
provide [3] 42/11 61/3
71/18
provided [2] 51/17
58/8
provider [1] 71/15
providing [1] 10/3
proving [1] 17/25
provision [5] 26/15
28/6 31/9 31/13 33/13
PSR [1] 29/12
PTSD [2] 48/15 51/25
public [5] 42/13 48/16
51/1 54/6 63/10
punishment [4] 37/2
37/2 42/11 54/9
purpose [2] 27/17
32/25 37/19
purposes [10] 7/12
12/12 27/6 30/9 32/12
39/12 39/25 42/7 42/8
54/5
pursuant [4] 40/19
74/11 74/20 75/25
pursue [1] 13/18
pursuit [1] 13/6
push [5] 15/7 16/21
18/17 37/24 38/3
pushed [6] 14/17 14/18
15/2 16/20 32/22 45/22
pushes [2] 14/8 37/11
pushing [2] 11/15 17/2
put [42] 27/6 61/24 62/3
65/9
Putting [1] 6/8

**Q**

qualify [2] 19/1 32/17
quality [1] 56/7
question [17] 11/15
18/6 21/9 21/20 26/22
27/2 27/3 27/13 30/7
30/8 36/14 36/15 38/6
39/11 41/12 76/16 77/5
questions [1] 6/8

**Q**

quick [2]  16/7 33/5
quickly [3]  19/22 30/25
49/5
quite [2]  23/23 55/25
67/3
quorum [1]  64/7

**R**

rage [1]  45/18
raise [1]  44/15
raised [2]  14/23 67/23
rally [3]  43/7 43/8
46/11
ramp [1]  15/3
RANDOLPH [1]  1/10
random [1]  46/5
randomly [1]  45/18
range [16]  5/18 5/19
6/9 7/20 10/10 31/16
38/11 38/25 39/16
42/19 44/22 46/14 68/1
69/2 74/17 77/12
rate [1]  72/4
rather [5]  18/16 32/19
37/21 49/9 66/16
reached [1]  43/11
reaching [3]  13/24
63/25 75/19
reaction [4]  19/10
19/17 34/5 68/23
reacts [1]  34/3
read [2]  18/10 60/4
reading [1]  36/13
ready [2]  57/8 77/5
real [1]  20/13
realize [1]  38/3
really [7]  14/14 16/7
23/4 32/10 55/2 73/18
75/13
Realtime [1]  2/4
reason [5]  26/11 45/8
54/8 54/9 64/15
reasons [7]  46/15 49/2
54/11 56/6 75/8 75/24
77/10
reassuring [1]  63/20
recall [2]  21/16 27/11
receive [1]  51/19
received [5]  4/14 63/22
66/19 66/20 74/18
receiving [1]  61/16
recently [2]  52/4 62/11
recess [2]  60/20 60/21
recidivist [1]  48/10
recognition [1]  53/11
recognized [1]  66/24
recollection [1]  12/19
recommend [4]  40/3
40/13 47/23 70/10
recommendation [5]
4/15 41/1 42/1 47/2
49/11
recommended [7]
31/14 38/25 39/19
41/23 68/3 68/4 70/14
recommending [4]
46/22 53/18 54/12

record [7]  3/6 61/3
72/11 75/7 76/3 76/5
80/3
recorded [1]  2/8
records [1]  42/20
reduce [6]  28/8 28/10
28/11 31/15 33/8 50/2
reduction [1]  38/21
refer [1]  57/23
reference [11]  24/8
24/21 25/2 25/10 25/23
27/10 31/24 39/8 76/8
76/20 76/24
referred [1]  61/15
refers [1]  16/11
reflect [1]  42/9
refrain [1]  70/23
refuse [1]  64/6
regard [1]  57/4
regarding [2]  17/17
36/23
regardless [1]  77/6
Registered [1]  2/3
regulations [1]  71/12
rehabilitation [1]  42/14
related [1]  34/11
relating [1]  6/9 41/6
relationships [1]  50/1
release [20]  8/5 8/9
8/14 8/20 8/25 40/2
40/4 41/25 43/5 46/17
46/23 54/13 68/6 68/7
68/15 70/5 70/6 71/19
73/6 78/5
relevant [6]  5/9 8/1
41/5 42/4 49/6 61/1
relies [1]  10/21
rely [2]  34/10 39/24
relying [1]  16/11
remain [4]  37/18 65/18
78/4 78/6
remained [3]  24/24
34/17 39/11
remaining [12]  3/22
8/12 15/6 32/1 32/8
32/17 32/25 33/19 35/6
35/8 36/3 36/7
remarks [1]  61/3
remember [1]  65/21
remembers [1]  21/14
remind [1]  61/24
reminds [1]  58/6
remorse [6]  53/5 53/6
73/19 75/9 75/13 75/17
remorseful [3]  53/3
73/25 75/10
repeated [1]  52/2
report [23]  4/15 5/13
5/15 6/6 6/7 6/12 6/25
7/4 7/12 7/16 7/19 9/6
27/24 35/18 35/22
36/10 42/2 48/13 48/23
51/12 70/15 73/7 73/12
reported [1]  51/12
reporter [5]  2/3 2/3 2/4
2/4 35/14
reports [1]  49/25

reputation [1]  42/24
request [3]  4/25 43/3
75/3
requested [2]  54/17
71/18
requests [1]  46/16
required [5]  37/3 37/7
37/8 37/9 42/16
residence [1]  73/9
resisting [2]  3/19 8/7
resolve [5]  5/11 5/14
17/16 24/7 38/5
resolved [4]  10/18
10/19 14/16 21/20
resources [1]  10/4
respect [23]  5/14 6/18
9/7 12/11 17/17 23/23
24/4 29/5 36/5 36/6
40/9 41/5 42/10 42/24
43/6 45/3 46/2 67/21
67/25 69/8 69/22 69/24
76/19
respected [1]  67/4
respond [2]  35/17
49/21
responded [1]  50/14
responding [3]  50/17
50/18 50/23
response [2]  35/23
50/10
responsibility [2]  10/2
38/22
responsible [1]  65/14
rest [2]  10/20 65/5
restitution [18]  40/19
40/22 43/5 46/18 46/25
54/13 68/16 70/8 71/5
71/7 71/24 72/3 72/18
73/18
restricted [9]  3/22 4/1
4/4 8/12 8/18 8/22 9/21
29/16 35/8
result [7]  18/8 33/8
38/10 50/13 61/13
62/23 74/15
results [2]  66/4 66/5
return [1]  73/11
returning [1]  59/21
review [2]  7/4 33/1
reviewed [4]  4/14 4/19
5/13 6/24
right [50]  3/13 5/4 6/17
6/23 11/3 14/24 17/21
18/2 20/4 21/6 21/18
21/19 25/24 26/24
28/18 29/1 29/15 29/22
30/3 30/7 30/16 30/22
30/24 31/20 32/3 32/16
34/21 36/4 36/5 36/6
36/17 37/14 37/16
38/13 39/6 39/14 39/15
41/11 51/3 56/13 56/18
60/13 60/16 60/24
69/15 74/12 74/21
76/17 78/12 78/17
rioter [13]  13/18 13/24
15/17 15/20 15/23
15/24 17/11 43/18 44/2
44/13 44/17 45/20

rioters [1]  43/22
riotous [1]  57/20
rise [3]  60/19 60/22
78/25
risk [2]  48/9 53/21
RMR [2]  80/2 80/8
Robert [1]  1/17
Room [1]  72/22
rules [1]  71/12
ruling [1]  39/6
run [4]  31/6 31/7 49/19
70/3
running [5]  13/22 17/8
35/4

**S**

safe [1]  48/7
said [5]  21/15 41/9
63/3 64/24 74/5
same [15]  9/10 20/22
28/9 28/15 33/9 46/6
69/14 74/5 76/9 76/23
77/3 77/8 77/13 78/5
78/22
satisfied [1]  7/9
saw [4]  32/20 45/19
55/6 67/8
say [13]  17/4 18/10
41/21 57/5 58/17 59/7
60/2 65/4 65/5 66/11
68/17 72/15 77/5
saying [3]  17/3 20/22
58/14
says [5]  16/12 31/4
31/13 37/6 63/21
scared [2]  43/24 55/14
scenario [1]  24/14
scene [2]  50/11 50/14
scores [1]  50/12
scream [1]  43/23
searches [1]  47/19
seated [2]  3/2 60/23
second [9]  9/17 14/22
15/3 27/13 39/15 58/11
62/9 64/4 76/13
secondary [2]  13/17
15/22
seconds [1]  35/1
Secret [1]  29/17
section [22]  3/18 3/21
3/24 4/2 4/5 4/7 4/10
4/13 6/4 8/3 8/8 8/13
8/19 8/24 9/19 31/1
40/1 40/10 40/15 40/20
74/11 74/20
Section 111 [1]  3/21
Section 1752 [2]  3/24
8/24
Section 3553 [1]  6/4
Section 5104 [3]  4/7
4/10 4/13
Sections [1]  71/6
see [33]  14/6 14/10
14/13 14/14 14/21 15/7
15/25 17/16 19/16
19/23 22/21 22/22
22/22 22/23 23/2 23/4

**S**

24/15 25/17 27/23
28/16 33/16 39/16
41/20 41/22 44/6 48/25
49/9 52/4 53/9 53/15
60/1 76/25
seeing [2]  23/3 34/17
seeking [2]  18/20
41/15
seem [2]  67/23 73/21
seems [1]  64/1
segregation [1]  48/7
self [2]  61/20 78/1
self-interests [1]  61/20
self-surrender [1]  78/1
Senate [1]  43/12
sense [3]  17/18 17/19
73/19
sentence [56]  5/11 6/2
6/5 7/24 26/7 26/13
28/10 28/12 31/5 31/14
31/15 37/8 37/9 38/7
39/23 40/8 40/13 41/24
42/6 42/9 42/12 42/18
43/3 46/16 46/22 47/25
49/2 53/19 54/12 55/14
55/20 59/11 60/18 68/3
68/14 68/18 69/15
69/15 69/23 69/25 70/4
70/6 71/7 73/9 73/18
73/20 74/3 74/12 74/14
74/18 74/22 76/2 76/23
77/3 77/7 77/13
sentenced [1]  44/21
sentences [7]  31/7
42/22 54/18 54/20
67/25 70/1 70/3
sentencing [23]  1/9
3/15 4/15 4/17 4/19 5/5
7/18 14/23 31/2 39/25
41/2 41/6 42/7 42/20
42/24 49/5 54/5 61/2
68/12 70/15 74/16
74/19 78/6
sentencings [1]  62/7
separate [3]  20/8 29/25
34/13
separately [1]  29/6
separation [1]  47/21
September [1]  80/7
series [1]  51/23
serious [6]  18/25 23/20
23/20 34/5 51/13 52/20
56/8
seriousness [2]  42/10
56/8
serve [1]  70/10
service [5]  29/17 51/2
66/25 75/21 75/22
session [1]  60/23
set [5]  6/3 6/12 6/21
42/1 42/3
setting [1]  9/5
severe [1]  74/16
Seward [2]  63/1 63/21
Shalin [2]  1/13 3/8
Shalin Nohria [1]  3/8
shalin.nohria [1]  1/16
shall [9]  37/1 64/7 70/3
70/12 71/21 72/18 73/3

shall... [2] 73/6 73/11
shamefully [1] 51/5
shape [2] 62/16 62/16
share [3] 47/18 54/14
71/21
she [2] 50/8 51/21
shifts [1] 14/7
shortly [1] 32/15
should [16] 9/10 24/17
27/2 29/7 29/8 32/14
37/2 38/6 42/12 44/21
44/23 45/15 51/4 64/5
67/24 71/8
shoulders [1] 65/9
shouldn't [2] 20/12
31/23
shove [1] 45/17
shoves [2] 13/25 22/2
show [2] 18/13 37/18
showing [1] 45/12
shown [2] 23/24 33/21
shows [2] 52/15 52/23
side [2] 6/8 41/14
signature [1] 63/22
significant [2] 22/15
56/10
similar [8] 12/15 13/16
42/20 42/21 55/12
55/19 55/21 68/22
similarities [1] 56/2
similarly [1] 54/19
simple [1] 30/7
simply [3] 11/15 19/1
57/17
since [3] 25/9 28/24
29/16
single [1] 66/2
sink [2] 64/19 64/20
sir [1] 63/22
sisters [2] 54/1 59/6
sitting [1] 53/14
situated [1] 54/19
situation [6] 13/8 15/5
45/20 48/19 52/21
57/20
situations [1] 65/23
six [11] 7/24 30/23
39/23 46/22 46/24
47/23 54/12 54/13 68/4
68/7 70/2
six more [1] 54/13
six-point [1] 30/23
slammed [1] 23/8
Sleeper [1] 1/18
slid [2] 17/4 22/10
slides [3] 18/15 19/13
44/8
sliding [1] 15/5
slowly [1] 14/7
small [1] 34/25
smashing [1] 43/14
smoking [1] 53/15
so [98]
so I guess [1] 29/6
so I think [5] 15/20
16/10 30/15 64/21
69/14

sobriety [1] 59/16
social [1] 48/16
society [1] 59/22
some [21] 5/16 5/16
9/3 13/13 23/8 28/21
47/6 48/6 48/7 53/10
54/18 56/2 61/3 61/12
61/18 62/25 64/14
65/21 74/1 74/9 75/23
somebody [10] 16/22
20/1 22/2 55/24 56/1
57/7 58/15 58/15 68/25
69/11
somehow [1] 74/8
someone [6] 12/24
45/8 45/9 45/10 45/25
49/6
something [15] 12/22
20/23 34/15 48/16
50/20 52/8 52/9 52/13
52/15 58/16 59/2 59/12
64/23 64/25 67/24
sometimes [1] 49/8
somewhat [1] 63/25
soon [2] 44/7 72/13
soothing [1] 63/20
sorry [1] 72/6
sort [5] 14/6 18/10
18/20 53/15 65/5
sought [2] 22/17 24/2
speaks [1] 57/2
special [7] 25/8 40/16
41/25 46/23 68/16 70/7
71/8
specific [9] 18/6 18/13
25/8 25/10 35/7 45/1
48/1 48/15 56/6
specifically [2] 17/6
33/15
specifics [1] 21/16
specified [1] 42/5
spending [1] 51/15
spent [2] 46/24 59/18
split [1] 40/8
spray [3] 12/21 20/16
20/17
square [1] 19/9
staggering [1] 64/23
stained [1] 59/2
stakes [1] 66/7
stand [2] 19/11 48/24
standard [1] 11/3
start [9] 4/21 6/6 9/4
10/11 10/23 11/2 17/24
38/16 47/9
started [2] 32/11 52/4
starting [1] 3/6
state [3] 3/5 62/13
70/19
stated [1] 36/9
statement [7] 4/16
7/17 14/16 15/9 33/2
33/24 49/13
statements [1] 42/16
STATES [11] 1/1 1/3
1/10 1/13 3/3 3/8 71/22
72/19 72/25 73/8 76/1

meaning [1] 57/2

status [1] 9/15
statute [3] 6/3 71/6
74/23
statutes [1] 8/1
statutorily [2] 37/7
37/8
statutory [19] 7/24 8/2
8/6 8/11 8/16 8/21 26/2
26/4 26/7 26/12 26/18
31/6 31/14 31/15 36/19
36/23 37/11 38/4 74/12
stay [8] 28/9 28/15
30/15 30/16 37/18
37/22 50/6 74/4
stays [1] 26/6
Steal [1] 46/10
stenography [1] 2/8
step [5] 5/12 5/18 5/23
6/1 6/4 20/18 64/17
65/20
steps [4] 5/6 5/8 48/6
53/14
still [5] 15/18 24/7 33/9
33/10 50/15
sting [1] 47/17
stop [2] 46/10 62/25
stories [1] 65/16
Street [3] 1/14 1/18
50/11
Stress [2] 48/12 67/14
strike [3] 35/5 35/9
56/2
strikes [1] 55/11
striking [1] 44/14
strong [2] 53/23 54/7
strongest [1] 54/9
struck [3] 21/14 67/5
67/20
struggle [1] 67/17
struggled [1] 67/16
stuff [1] 28/3
subject [2] 78/5 78/6
submit [1] 70/25
submitted [2] 4/16
49/18
subsection [1] 33/15
substance [2] 70/22
70/24
substantial [4] 9/23
75/9 75/17 75/19
success [1] 65/2
such [5] 9/14 11/11
16/14 37/7 73/4
suffer [3] 48/15 56/9
67/13
suffers [1] 48/12
sufficient [5] 11/22
35/24 42/6 44/11 53/19
suggest [1] 63/17
suggestion [2] 63/24
72/4
suicide [1] 49/22
Suite [1] 1/15
supervise [1] 71/15
supervised [17] 8/4
8/9 8/14 8/20 8/25 40/2
40/3 41/24 43/5 46/17

68/15 70/5 70/6
supervision [3] 70/12
70/17 71/1
supervisors [1] 50/9
support [4] 53/23 59/1
59/7 75/19
supporters [1] 53/24
supports [1] 56/10
supposed [1] 52/17
sure [12] 5/6 5/8 11/6
16/8 19/25 24/16 29/23
33/6 55/22 56/19 67/3
67/17
surrender [2] 78/1 78/9
suspect [3] 49/21
50/21 55/6
suspects [2] 50/2
50/15
swing [1] 19/12
swinging [1] 20/15
swings [1] 14/24
symptoms [1] 48/15

T
take [8] 11/14 16/18
48/6 60/1 61/25 62/21
65/21 66/15
taken [1] 49/24
takes [2] 25/24 44/8
taking [2] 17/6 28/2
talk [4] 7/11 57/1 60/2
78/11
talking [12] 27/11 28/3
28/6 28/20 31/10 31/12
31/25 34/25 36/2 38/4
53/6 66/8
talks [2] 26/17 28/7
tear [1] 43/18
tell [2] 55/18 68/22
ten [2] 43/13 63/19
term [3] 40/2 40/3 52/5
termination [1] 73/13
terms [4] 13/6 24/8
35/6 36/18
terribly [2] 12/2 54/23
terrorist [1] 50/13
test [3] 18/7 20/7 70/25
testifying [1] 45/11
tests [1] 71/2
than [21] 7/24 18/16
22/20 23/11 25/22 26/2
33/9 37/22 39/23 42/6
47/11 49/5 49/9 49/15
55/2 62/1 63/25 65/11
72/4 74/1 74/16
thank [27] 7/14 17/19
17/23 21/5 27/9 28/17
31/21 36/21 39/14 41/3
41/10 46/19 54/3 56/15
58/10 58/25 59/7 59/24
59/25 60/12 62/17
77/15 77/17 77/24
78/16 78/23 78/24
thank goodness [1]
62/17
thank you [17] 7/14
17/23 21/5 28/17 31/21

68/15 70/5 70/6
that [455]
that's [43] 9/15 9/18
10/13 10/19 12/15
12/15 13/4 14/16 15/1
15/24 16/8 16/16 18/3
19/6 19/19 20/6 30/4
31/1 31/9 31/25 32/13
33/3 34/4 34/15 39/5
39/9 39/13 40/24 41/18
41/21 44/25 48/4 48/23
50/25 52/16 53/3 56/4
56/23 57/3 57/9 60/9
72/17 76/18
their [10] 22/4 45/6
59/1 61/19 61/19 62/3
63/16 65/2 65/16 75/11
them [25] 27/16 28/21
45/11 49/23 50/7 53/6
56/24 57/1 58/17 58/25
62/3 67/4
themselves [2] 60/8
75/11
then [58] 6/1 6/4 9/6
9/17 10/1 10/10 10/15
11/14 12/24 13/16
13/18 15/2 15/11 15/19
16/12 17/5 17/8 17/16
18/11 22/21 24/11 25/3
25/4 25/7 25/12 25/15
26/3 26/3 27/18 29/4
30/13 30/18 30/19
30/20 31/6 31/7 33/11
35/5 36/24 37/5 37/12
38/18 39/21 41/12 43/7
43/19 44/7 45/2 46/10
52/18 52/19 53/14
53/17 60/11 60/18
72/15 78/4 78/14
then-President
Trump's [2] 43/7
46/10
theory [1] 25/23
there [44] 4/24 5/9 5/10
5/16 5/16 6/10 9/3 9/12
13/22 14/7 17/5 18/3
19/18 21/25 25/8 26/11
32/10 35/1 35/6 44/4
44/23 46/8 49/14 49/25
51/16 52/8 53/12 61/9
61/17 61/22 62/20
62/22 64/12 65/10
65/10 65/10 65/12
65/12 65/14 65/15
65/25 67/18 69/20 76/1
there's [16] 9/20 18/11
20/18 20/20 22/20
22/24 23/10 26/15 32/4
33/23 34/13 35/24 50/3
57/5 63/3 74/9
thereafter [1] 71/2
thereby [1] 11/23
therefore [3] 10/4
16/23 72/1
these [9] 5/8 34/11

**T**

these... [7] 35/19 49/2 61/25 63/7 66/21 68/12 78/19
they [29] 5/20 7/21 9/7 9/10 15/2 15/4 19/6 23/12 31/6 34/12 37/20 43/23 49/23 50/15 52/24 53/6 55/23 56/21 57/8 58/16 60/7 60/7 62/4 62/4 62/24 62/25 64/22 66/21 67/2
they're [12] 7/23 15/18 19/15 25/21 34/12 41/15 43/15 56/21 57/8 59/5 60/10 66/22
they've [3] 46/1 46/10 75/11
thi [1] 21/25
thing [5] 12/18 20/22 55/18 56/2 78/22
things [10] 32/9 34/17 37/20 43/23 44/25 55/21 59/20 61/12 65/24 66/1
think [83]
thinking [1] 27/3
third [1] 5/23
this [91]
those [35] 7/23 9/3 9/11 10/12 15/20 20/11 24/11 32/6 35/25 42/8 46/15 47/13 48/15 49/6 49/6 50/17 50/18 50/23 52/11 52/11 54/11 54/19 54/21 54/23 59/19 61/4 61/18 61/23 65/23 66/7 66/10 69/13 70/3 75/23 78/6
though [4] 7/8 54/14 73/24 75/12
thought [3] 13/19 59/13 68/8
thousands [1] 43/9
three [9] 8/4 8/9 10/6 40/2 40/4 43/4 46/17 50/12 54/1
three years [1] 8/9
three-point [1] 10/6
threw [2] 55/9 69/4
through [14] 5/6 5/7 7/4 13/10 17/11 39/21 40/5 40/7 43/15 47/17 59/12 69/24 70/1 70/5
throw [1] 43/22
throwing [2] 18/16 50/16
thrown [1] 22/7
time [18] 7/11 10/4 18/9 32/5 32/8 32/11 33/25 34/25 46/12 47/14 48/24 51/15 51/16 51/21 52/3 59/18 63/16 73/4
time spent [1] 59/18
timely [1] 10/3
times [5] 14/12 19/16 21/16 57/24 67/22

titled [1] 80/4
today [6] 4/25 57/9 58/4 59/1 59/5 59/11
today's [2] 5/5 7/18
together [1] 66/14
too [2] 55/23 57/9
top [2] 31/15 44/22
total [8] 10/7 10/9 25/15 30/16 37/1 37/2 38/23 40/18
touch [2] 59/9 78/9
town [1] 58/18
tragic [2] 61/7 61/14
transcript [3] 1/9 2/8 80/3
transcription [1] 2/8
transfer [1] 46/12
trash [1] 43/22
trauma [4] 50/19 50/25 51/4 51/5
traumas [1] 52/5
traumatic [2] 48/22 50/18
treatment [5] 71/10 71/12 71/15 73/11 73/13
trespass [1] 9/21
trial [1] 10/5
tried [1] 68/10
trip [2] 53/25 59/6
true [4] 32/13 52/13 53/3 73/19
truly [2] 75/14 75/15
Trump's [2] 43/7 46/10
try [3] 48/15 50/11 59/6
trying [6] 16/2 20/2 49/23 50/6 50/25 69/10
turn [4] 12/25 33/18 43/16 43/25
turned [2] 32/10 32/22
Turning [2] 8/1 66/18
turns [1] 30/9
TV [2] 51/15 57/21
two [18] 9/12 9/20 12/24 13/14 15/3 27/16 31/25 34/14 41/24 44/25 45/7 46/23 59/4 64/6 66/25 68/14 71/1 73/21
two years [1] 46/23
two-level [2] 9/12 9/20
type [3] 22/16 24/1 65/23
types [2] 42/21 67/25

**U**

U.S [2] 2/5 74/6
U.S.C [24] 3/17 3/20 3/23 4/1 4/4 4/7 4/9 4/12 6/3 8/3 8/8 8/13 8/19 8/23 9/19 28/23 40/1 40/10 40/15 40/19 42/5 71/6 74/11 74/20
ugly [3] 32/10 34/17 37/20
Uh [1] 25/20

ultimately [2] 38/8 53/17
unable [1] 75/2
unaware [1] 44/4
unclear [2] 18/1 24/12
under [15] 19/1 10/24 20/25 24/14 25/24 35/3 38/22 39/19 40/1 40/10 40/15 45/4 49/7 74/13 77/7
understand [10] 14/15 15/22 19/6 19/25 34/1 34/12 36/8 39/10 40/21 69/20
understanding [3] 10/12 53/7 76/9
Understood [2] 13/1 31/18
unit [3] 25/15 33/10 38/10
UNITED [11] 1/1 1/3 1/10 1/13 3/3 3/8 71/22 72/19 72/25 73/8 76/1
United States [3] 71/22 72/25 76/1
units [1] 9/24
unlawful [2] 70/23 74/8
unlawfully [1] 70/21
unless [1] 17/14
unraveling [1] 62/13
until [5] 32/7 34/3 48/8 63/14 73/4
unwarranted [1] 42/19
unwavering [1] 59/1
up [26] 7/25 8/9 8/13 8/15 8/19 8/20 8/24 8/24 8/25 10/15 12/24 18/16 19/17 23/13 24/10 24/14 27/1 29/24 29/24 35/11 40/2 44/17 45/12 52/20 53/14 56/25
upfront [1] 72/12
upon [1] 73/12
upward [1] 44/23
us [8] 9/2 24/4 38/3 38/23 64/2 64/2 66/1 66/2
usdoj.gov [1] 1/16
use [4] 11/22 20/16 20/25 70/23
used [9] 11/9 11/10 12/4 13/7 13/8 16/13 18/9 20/9 58/14
useful [1] 10/23
using [2] 12/23 14/1 16/2
usual [1] 63/25

**V**

variance [4] 41/21 44/23 56/11 75/24
varying [1] 75/8
vehicle [1] 50/21
versus [3] 3/4 36/3 76/1
very [21] 14/10 17/7

30/25 34/1 34/23 34/24 53/23 55/19 56/1 56/1 59/2 61/14 61/24 66/22 67/20 68/9 68/24 73/18
Vice [1] 29/18
victim [8] 9/11 9/13 16/20 28/24 29/14 38/17 58/8 72/21
video [8] 4/18 14/11 19/5 19/16 19/23 22/21 23/9 52/12
videos [1] 53/10
view [4] 9/9 15/8 27/2 28/23
views [1] 26/21
violation [15] 3/17 3/20 3/23 4/1 4/4 4/7 4/9 4/12 8/3 8/7 8/13 8/18 8/23 9/18 74/14
violations [1] 27/16
violence [7] 4/3 4/8 8/22 23/14 28/25 55/11 66/15
violent [2] 23/8 44/18 45/21
visitors [2] 44/1 50/5
vote [2] 64/14 64/16
votes [1] 64/5
vs [1] 1/5
vulnerable [2] 51/10 52/10

**W**

wait [2] 5/18 35/4
waited [1] 37/23
waits [1] 13/22
waive [1] 72/1
waived [1] 74/10
walked [1] 32/21
walking [2] 34/3 52/19
walks [1] 48/25
wall [2] 15/10 69/6
wandering [3] 18/20 23/18 52/15
want [17] 10/15 11/3 11/6 21/6 25/4 47/9 53/24 55/23 56/14 56/21 57/12 58/5 58/7 60/1 60/17 61/3 75/7
wanted [4] 33/4 35/16 36/8 57/5
wants [3] 41/4 52/15 60/2
war [5] 62/8 62/10 62/12 62/18 64/11
warrant [1] 5/22
was [132]
Washington [9] 1/5 1/15 2/6 58/12 58/20 58/20 63/25 72/23 73/2
wasn't [8] 12/2 12/12 14/25 24/16 32/24 52/13 63/14 64/15
watch [1] 19/5
watched [1] 19/16
watching [2] 51/15

Watertown [1] 50/14
way [21] 18/1 18/2 18/6 18/9 18/15 20/9 20/25 22/11 23/8 36/1 43/12 51/10 52/25 56/4 56/8 65/7 65/7 67/6 67/12 67/22 78/10
ways [4] 23/6 62/25 67/1 75/21
we [50] 5/7 15/1 15/8 17/24 18/13 18/18 18/18 19/2 19/22 19/23 24/7 30/15 31/22 33/23 36/9 38/16 38/16 38/18 40/25 44/10 44/11 47/23 47/24 48/1 49/13 49/14 49/18 53/19 54/19 62/22 64/7 64/9 64/20 65/6 65/6 65/20 65/24 65/24 65/25 66/1 66/3 66/4 66/5 66/6 66/7 66/14 67/8 77/23 78/21 78/22
we agree [1] 66/5
we believe [3] 49/14 53/19 54/19
we'll [3] 17/16 20/16 47/1
we're [10] 3/15 28/3 28/6 31/25 34/25 38/4 46/6 54/12 62/16 66/13
we've [3] 44/2 52/4 77/19
weapon [3] 10/18 11/7 11/10 11/22 12/4 16/13 18/8 18/9 21/1 25/7 30/14 49/20 69/4
weapons [3] 18/22 23/16 50/16
Wednesday [1] 64/4
week [1] 63/19
welcome [2] 33/17 56/22
welcomed [1] 48/4
well [35] 3/14 4/19 7/16 11/2 13/12 17/9 17/24 21/19 23/10 26/22 27/14 28/2 29/23 31/22 37/15 41/1 42/2 50/7 54/2 56/3 56/4 58/2 58/24 60/10 60/25 63/18 67/14 68/11 68/20 70/13 72/15 76/14 76/18 77/6 78/18
went [3] 38/19 50/6 67/5
were [28] 23/3 24/20 27/14 33/7 37/21 49/22 50/12 50/15 52/3 55/9 61/8 61/9 61/9 61/16 61/17 61/22 61/22 62/22 62/25 65/10 65/10 65/12 65/14 65/14 65/15 66/21 67/4 69/13
what [61] 10/23 11/2 14/13 15/1 16/21 17/3

**what... [55]** 17/16 19/6
19/23 21/11 22/21 23/3
23/4 23/19 23/21 25/3
26/5 26/17 26/18 30/19
33/13 36/20 39/16
48/19 49/4 52/5 52/15
52/16 53/11 53/15
53/16 53/18 55/1 55/14
57/21 57/21 60/6 61/21
62/24 64/13 64/14
64/16 64/17 65/1 65/4
65/4 65/5 65/21 65/22
65/22 66/1 66/2 66/7
68/13 74/1 74/5 75/11
75/13 75/14 76/18 78/9
**what's [2]** 27/2 27/13
**when [33]** 13/21 13/25
15/4 15/12 17/6 20/9
20/14 23/18 24/23
24/24 26/17 29/19 32/9
32/20 34/4 37/20 44/1
44/4 47/23 50/15 50/17
50/17 50/20 51/13
51/16 53/17 58/14
58/15 59/14 62/8 64/4
65/7 66/9
**where [32]** 5/19 9/2
14/6 14/17 15/5 20/9
22/2 22/14 23/5 23/12
24/4 29/12 29/23 31/13
37/7 37/21 38/14 45/19
47/4 49/19 50/12 53/10
54/20 55/5 55/22 58/18
62/4 64/7 64/12 68/23
76/16 77/12
**whether [29]** 4/24 5/8
5/13 11/15 12/6 12/8
21/10 23/6 23/7 23/23
23/24 26/5 26/6 27/20
28/8 28/9 29/23 30/8
30/9 36/16 38/6 39/11
41/13 58/7 62/22 63/17
76/1 76/22 77/6
**which [54]** 4/16 4/18
4/18 4/20 6/3 8/1 9/15
9/18 11/1 12/16 16/11
18/3 19/3 20/17 20/18
21/10 22/16 24/1 25/13
25/14 25/14 26/1 26/1
28/20 29/3 30/7 32/23
32/23 33/9 33/11 35/23
38/1 38/7 38/10 38/19
39/24 40/18 47/3 48/7
49/17 50/19 51/13
51/19 52/3 53/4 55/4
62/5 63/4 67/7 68/6
70/15 73/7 76/19 77/11
**while [12]** 18/25 20/6
22/16 28/3 34/16 43/19
48/17 50/24 53/11
59/19 70/12 70/17
**who [31]** 35/21 42/21
45/4 45/10 45/10 48/14
49/22 50/4 50/7 50/15
52/7 52/10 53/24 55/9
55/24 56/1 56/1 59/4
61/17 61/25 62/2 63/1

65/14 65/14 65/15
66/10 68/25 69/11
**who's [2]** 35/21 56/21
**whole [1]** 16/18
**why [9]** 9/4 9/4 10/11
17/14 24/10 24/13
26/25 52/20 61/4
**wife [2]** 51/21 59/4
**wife's [1]** 53/25
**will [28]** 5/12 7/16
23/10 24/2 39/24 43/6
45/6 48/6 48/17 49/5
57/7 59/12 59/18 59/18
60/18 62/5 64/13 65/18
68/18 68/22 69/20
70/10 71/15 74/4 78/4
78/6 78/8 78/10
**William [4]** 2/3 63/1
80/2 80/8
**willingly [1]** 45/5
**Wilson [2]** 2/2 27/8
**windows [1]** 43/15
**winds [2]** 52/20 53/14
**wing [1]** 43/12
**winter [1]** 23/18
**wish [1]** 78/18
**within [7]** 35/17 43/12
53/12 70/25 73/3 74/24
74/25
**without [10]** 18/19
25/4 25/7 34/8 49/6
63/22 64/7 66/6 75/4
77/14
**woman [1]** 50/7
**wondering [1]** 57/21
**word [3]** 20/16 21/7
66/11
**work [3]** 49/25 56/7
78/10
**working [1]** 57/17
**world [2]** 65/5 65/7
**worry [1]** 64/24
**worse [2]** 45/12 65/11
**worth [2]** 46/3 63/8
**would [69]** 3/5 4/25
9/12 9/12 10/10 13/2
13/19 18/8 19/7 22/8
22/17 22/25 24/2 24/22
25/2 25/3 25/13 25/13
25/14 25/14 26/3 26/6
26/11 26/11 26/12
26/14 27/18 27/19
27/23 27/24 28/15 29/2
30/15 30/15 30/16
30/21 33/9 33/10 33/11
34/10 39/7 40/25 42/23
46/5 48/7 49/13 52/24
54/16 56/16 58/12
58/17 58/18 59/9 59/13
63/17 63/19 64/14
64/16 65/1 68/6 76/7
76/8 76/10 76/18 76/22
77/2 77/7 77/13 77/22
**wouldn't [2]** 28/2
41/21
**wrestle [1]** 23/12
**writes [1]** 63/21

**wrong [1]** 52/8
**wrote [5]** 35/21 50/8
53/4 63/2 63/3

**Y**

**Yeah [7]** 14/21 31/8
31/19 33/3 36/2 54/22
55/15
**year [10]** 8/14 8/14
8/19 8/20 8/24 8/25
25/22 38/7 40/5 54/21
**years [14]** 8/4 8/4 8/8
8/9 40/2 40/4 40/11
41/24 43/4 46/17 46/23
51/18 59/15 68/15
**Yep [1]** 37/4
**yes [28]** 7/5 7/7 7/10
7/13 10/13 10/16 11/5
12/5 16/16 17/1 24/6
24/19 25/25 26/9 29/10
30/1 30/17 31/3 33/17
36/22 42/25 58/9 72/6
72/9 76/21 77/1 77/2
78/11
**you [155]**
**you know [7]** 14/24
15/7 17/4 23/16 34/25
35/2 54/23
**you'd [1]** 5/25
**you're [19]** 5/6 16/1
16/2 16/11 16/22 24/15
27/10 33/17 35/14 36/5
36/6 43/23 55/22 61/22
69/11 71/24 73/22
73/23 77/5
**you've [6]** 5/13 67/11
67/16 67/21 67/22 78/5
**youngest [1]** 54/25
**your [118]**
**Your Honor [7]** 3/7
3/10 5/1 5/3 6/13 6/16
6/22 7/5 7/7 7/10 7/13
10/13 10/16 11/5 11/18
11/20 12/5 13/1 14/15
16/16 17/1 17/19 17/23
21/4 21/8 24/6 24/19
25/25 26/9 26/19 27/7
29/10 30/4 30/17 30/25
31/18 31/21 33/4 34/23
39/3 39/5 39/13 41/7
41/17 41/18 42/25 43/2
46/21 54/11 54/21
56/15 56/23 57/10
57/12 58/9 58/11 59/9
59/14 59/24 60/6 60/12
60/15 76/6 77/15 77/24
78/2 78/11 78/15 78/16
78/24
**yours [2]** 63/22 65/13
**yourself [1]** 61/24

**Z**

**Zaremba [3]** 2/3 80/2
80/8
**zero [1]** 38/24
**zone [1]** 40/14